**EXHIBIT E**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BANK OF COMMUNICATIONS,
NEW YORK BRANCH,                                    Case No. 07 CV 4628

                                     Plaintiffs,    **NOTICE OF MOTION FOR
                                                    DEFAULT JUDGMENT**

          - against -

OCEAN DEVELOPMENT AMERICA, INC.,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG

                                     Defendants.
-------------------------------------------------------------------X

TO:    Ocean Development America, Inc.
       13453A Brooks Drive
       Baldwin Park, California   91706

       Ocean Development America, Inc.
       3108 Willard Avenue
       Rosemead, California 91770
       Attn:   Mr. Charles Yu, Service Agent

       Hongming Li a/k/a Michael Li
       13453A Brooks Drive
       Baldwin Park, California 91706

       Xiaoming Zhang
       13453A Brooks Drive
       Baldwin Park, California 91706

       Upon the accompanying Affirmation of Allen Wu, dated October 12, 2007, Plaintiff, Bank

of Communications, New York Branch, will move this Court, before the Honorable Thomas P.

Griesa, at the United States Courthouse, 500 Pearl Street, New York, New York on October ____,

2007 at 10:00 am, for an Order granting a default judgment against defendants Ocean Development

America, Inc., Hongming Li a/k/a Michael Li and Xiaoming Zhang, pursuant to F.R.C.P. 55 and

Rule 11(a) of the Civil Rules, United States District Court for the Southern District of New York;

and, granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      October 12, 2007

                                  Allen Wu (AW-7466)
                                  WU & KAO
                                  Attorneys for Plaintiff
                                  747 Third Avenue, 22nd Floor
                                  New York, New York 10017

G:\BOCM-Ocean Dev-BOCM-\New Action\Notice for Default Judgment.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BANK OF COMMUNICATIONS,
NEW YORK BRANCH,                                    Case No. 07 CV 4628

                                    Plaintiffs,

                                                    **AFFIRMATION**

        - against -

OCEAN DEVELOPMENT AMERICA, INC.,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG

                                    Defendants.
-----------------------------------------------------------------X

        Allen Wu, an attorney admitted to practice before the courts of this State, affirms the truth

of the following statements under penalty of perjury:

        1.      I am a member of the law firm Wu & Kao, attorneys for Plaintiff Bank of

Communications, New York Branch (hereinafter "BOCM") in the captioned action.  I am fully

familiar with the proceedings herein, and submit this affirmation in support of Plaintiff's motion for

the entry of a default judgment against the Defendants, Ocean Development America, Inc.,

Hongming Li a/k/a Michael Li and Xiaoming Zhang.

        2.      As set forth in the Complaint (Exhibit A), this is an action for recovery of money

loaned and restitution, fraud and deceit, conversion and unjust enrichment against Defendants and

enforcement of the Judgment obtained in the matter entitled Bank of Communications, New York

Branch v. Ocean Development America, Inc. Index No. 603101/2003 in the New York Supreme

Court, for which a Judgment was filed and entered on August 14, 2006 against Ocean Development

America, Inc., in the amount of $4,874,210.58.

        3.      Jurisdiction of the subject matter of this action is based on 28 U.S.C. § 1332(a)(2).

4.    The Summons and Complaint was served upon Defendant Ocean Development America, Inc. on June 22, 2007 at its Premises located at 13453 A Brooks Drive, Baldwin Park, California 91706 and also upon Ocean Development America, Inc.'s Registered Agent for Service (at that time) Philip K. Yeung at 240 S. Garfield Avenue, Monterey Park, CA 91755 (see Exhibit B, California Secretary of State Registered Agent Information Sheet) on June 26, 2007. Annexed hereto as Exhibit C are the duly filed proofs of service upon Defendant, Ocean Development America, Inc.

5.    The Summons and Complaint was served upon Hongming Li a/k/a Michael Li by substitute service on June 21, 2007 at 13453 A Brooks Avenue, Baldwin Park, CA 91706, the Premises he owns which is his last known address (see Exhibit D, Proof of Service).

6.    The Summons and Complaint was served upon Xiaoming Zhang by substitute service on June 21, 2007 at 13453 A Brooks Avenue, Baldwin Park, CA 91706, the Premises she owns which is her last known address (see Exhibit E, Proof of Service).

7.    The time in which Defendants, Ocean Development America must answer or move with respect to the Complaint expired on July 22, 2007, 30 days after service of the Summons and Complaint. All of the Defendants have not answered and have not properly interposed any motions to forestall the present application for default other than the following:

8.    On August 13, 2007, the Court informed us that Defendants, after being served, wrote letters directly to the Court. Judge Griesa forwarded the letters to us and instructed us to respond directly. After sending our response letter to Defendants per the Court's instruction, on August 14, 2007, neither we, nor our client, nor the Court, have received any correspondence or contact from Defendants. Thereafter on October 10, 2007, Judge Griesa's Clerk, John Beale, informed us we could file our motion for default judgment, rather than schedule an initial conference.

9.     The Individual Defendants are not infants or incompetent persons.

10.     In light of the above, Plaintiff, Bank of Communications, New York Branch, is entitled to have judgment by default entered against the Defendants, Ocean Development America Inc., Hongming Li a/k/a Michael Li and Xiaoming Zhang, pursuant to F.R.C.P. 55 and Rule 11(a) of the Civil Rules, United States District Court for the Southern District of New York.

WHEREFORE, it is respectfully requested that the Court grant this motion for an Order directing the entry of (i) a default judgment in favor of Plaintiff, and against Defendants Ocean Development America Inc., Hongming Li a/k/a Michael Li and Xiaoming Zhang in the amount of $4,874,210.58 plus interests, costs and disbursements, (ii) a writ of attachment and/or protective order and permanent injunction against Defendants Ocean Development Inc., Hongming Li a/k/a Michael Li and Xiaoming Zhang concerning their assets, including but not limited to any bank accounts, real property located at 13453 A Brooks Drive, Baldwin Park, California, as well as any other identifiable assets and (iii) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
          October 12, 2007

_____
Allen Wu (AW-7466)
WU & KAO
Attorneys for Plaintiff
747 Third Avenue, 22nd Floor
New York, New York 10017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BANK OF COMMUNICATIONS,
NEW YORK BRANCH,                                    Case No. 07 CV 4628

                            Plaintiffs,

                                                   **ORDER**

        - against -

OCEAN DEVELOPMENT AMERICA, INC.,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG

                            Defendants.
------------------------------------------------------------------X

        This action having been commenced on June 1, 2007 by the filing of the Summons and

Complaint; and a copy of the Summons and Complaint having been served on Defendant Ocean

Development America, Inc. on June 22, 2007, at 13453 A Brooks Avenue, Baldwin Park, California

91706 and also on Ocean Development America Inc.'s Registered Agent for Service of Process (as

of that date), Philip Yeung, at 240 S. Garfield Avenue, Monterey Park, CA 91755; and having been

served on Defendant Hongming Li a/k/a Michael Li by substitute service on June 21, 2007, at 13453

A Brooks Avenue, Baldwin Park, California 91706; and by substitute service on Xiaoming Zhang

on June 21, 2007 at 13453 A Brooks Avenue, Baldwin Park, California  91706.  The Returns of

Service having been filed with the Court via ECF on July 13, 2007 and said Defendants not having

answered the Compliant or moved with respect to the Complaint and the time for answering the

Complaint having expired,  now, on the application of Wu & Kao, attorneys for Plaintiff Bank of

Communications, New York Branch, it is hereby:

        ORDERED ADJUDGED AND DECREED that Plaintiff, Bank of Communications, New

York Branch, has judgment against Defendants, Ocean Development America, Inc., Hongming Li

a/k/a Michael Li and Xiaoming Zhang in the amount of $4,874,210.58, together with interest at the legal rate from August 14, 2006, plus the costs and disbursements of this action to be taxed; and

IT IS FURTHER ORDERED that Plaintiff, Bank of Communications, New York Branch have writ of attachment, and/or protective order and permanent injunction against Defendants Ocean Development America, Inc., Hongming Li a/k/a Michael Li and Xiaoming Zhang concerning their assets, including but not limited to any bank accounts, real property (including but not limited to the Premises located at 13453-A Brooks Drive, Baldwin Park, California 91706), as well as any other identifiable assets.

So Ordered this ____ day of October 2007

_____
Thomas P. Griesa
United States District Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BANK OF COMMUNICATIONS,
NEW YORK BRANCH,

Case No. 07 CIV 4628

Plaintiff,

- against -

**COMPLAINT**

OCEAN DEVELOPMENT AMERICA, INC,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG,

Defendants.

------------------------------------------------------------------X

Bank of Communications, New York Branch ("Plaintiff"), by its attorneys, Wu & Kao, as

and for its complaint against Ocean Development America, Inc, Hongming Li a/k/a Michael Li and

Xiaoming, Zhang (collectively "Defendants"), alleges as follows:

## THE PARTIES

1.    That at all times hereinafter mentioned, Plaintiff, Bank of Communications, New York

Branch (the "Bank"), is and continues to be a federal branch of a foreign bank which is fully

authorized to conduct banking business in the State of New York, having a place of business at 55

Broadway, New York, New York 10006.

2.    That at all times hereinafter mentioned, defendant, Ocean Development America, Inc.

("Ocean Development") was and continues to be a California corporation having its principal place

of business at 13453-A Brooks Drive, Baldwin Park, CA 91706.

3.    Upon information and believe, Hongming Li a/k/a Michael Li is an officer of Ocean

Development with an address at 13453-A Brooks Drive, Baldwin Park, CA 91706.

4.    Xiaoming Zhang is the president of Ocean Development and the spouse of Hongming

Li, with an address at 13453-A Brooks Drive, Baldwin Park, CA 91706.

## JURISDICTION AND VENUE

5.      Jurisdiction is based on 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship between plaintiff and defendants and the amount in controversy exceeds the jurisdictional amount, exclusive of interest and costs.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a)(2) since this is plaintiff's place of business and is where a substantial part of the events or omissions giving rise to the claims occurred.

## FIRST CAUSE OF ACTION

### (Federal Judgment on a NY Supreme Court Money Judgment against Defendant Ocean Development)

6.      Plaintiff reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 5 with the same force and effect as if set forth herein at length.

7.      On or about May 1, 2001, Ocean Development Inc. executed and delivered a Revolving  Note ("Note") to the Bank in the principal amount of Five Million Five Hundred Thousand and 00/100 ($5,500,000.00) Dollars with interest at a fluctuating rate equal at all times to one quarter (0.25%) of one percentage point  per annum below the Prime Rate announced by the Bank from time to time for the loan (the "Interest Rate") and the default rate of five percent (5%) per annum in excess of the applicable Interest Rate ("Default Rate") (a copy of the Note and Credit Agreement that secured the Note are annexed hereto and fully incorporated herein as part of Exhibit "A").

8.  Defendant Ocean Development defaulted on the Note.

9.  In October  2003, the Bank  filed a Complaint in Supreme Court of the State of New

2

York, County of New York, under index number 603101/03 against the Defendant Ocean Development ("NY Supreme Court Action"). (See the Verified Complaint annexed hereto and fully incorporated herein as part of Exhibit "B").

10. On June 2, 2005, the Hon. Herman Cahn, JSC granted a Judgment in the amount of $4,874,210.58 against defendant Ocean Development ("NY Supreme Court Judgment").

11. The NY Supreme Court Judgment against Ocean Development was filed and entered with the NY County Clerk on August 16, 2006 (a "filed" stamped copy of the Judgment is annexed hereto as Exhibit "C").

12. There is now due and owing to Plaintiff the principal sum of $4,874,210.58 Dollars, plus interest from August 16, 2006.

13. The Bank has made due demand for payment of the Judgment to Ocean Development, and to Hongming Li and Xiaoming Zhang on Ocean Development's behalf, but has received no response or payment from defendant Ocean Development which has refused to make payment on the NY Supreme Court Judgment.

14. By reason thereof, there is now due and owing to the Bank from the defendant Ocean Development, the sum of $4,874,210.58 plus interest, no part of which has been paid, although due and duly demanded.

## SECOND CAUSE OF ACTION

### (Avoidance of Fraudulent Conveyances Per NY Debtor & Creditor Laws)

15. Plaintiff, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 14 with the same force and effect as if set forth herein at length.

3

16. The fraudulent transfers of the Premises and Monies (see below) which form the basis of this cause of action occurred in California and were by and between all defendants. (See Title Report, annexed hereto as Ex. D).

17. Upon information and belief, defendant Ocean Development owned valuable real property located at 13453-A Brooks Drive, Baldwin Park, California (the "Premises") and derived substantial rent and revenues from the Premises.

18. The Premises is more particularly described in Ex. D, the Title Report, annexed hereto and incorporated herein fully by this reference.

19. On June 24, 2004 (i.e. between October, 2003, the date of the filing of the NY Supreme Court Action and June 2, 2005, the date of the NY Supreme Court Judgment) the defendant Ocean Development by its President, defendant Xiaoming Zhang unlawfully and fraudulently conveyed the Premises to defendants Hongming Li and Xiaoming Zhang, husband and wife as joint tenants ("Conveyance of the Premises"). (See Ex. D).

20. On or about November 14, 2005 (i.e. after June 2, 2005, the date of the NY Supreme Court Judgment) the individual defendants unlawfully and fraudulently mortgaged the Premises in the amount of $500,000.00 ("Conveyance of Monies").

21. Under NY CLS Dr & Cr § 273 (2007), the Conveyances of the Premises and the Monies rendered Ocean Development insolvent as the Conveyances were made without fair consideration.

22. Under NY CLS Dr & Cr § 273-a (2007), the Conveyances of the Premises and the Monies were made without fair consideration by defendants knowing that defendant Ocean Development was a defendant and a judgment debtor in the NY Supreme Court Action.

23. Under NY CLS Dr & Cr § 276 (2007), the Conveyances of the Premises and the Monies were made with actual intent to hinder, delay and defraud defendants' creditors and with the particular intent to defraud plaintiff Bank.

24. Under NY CLS Dr & Cr § 276-a (2007), as the Conveyances of the Premises and the Monies were made with actual intent to defraud plaintiff Bank, it is entitled to its attorneys fees in the NY Supreme Court Action and the within federal proceeding and any proceedings supplemental thereto.

**WHEREFORE**, plaintiff Bank demands both temporary relief and permanent relief on all causes of action as follows:

### TEMPORARY RELIEF

(a) Entry of an order of attachment against the Premises and the Monies and all checking accounts associated with the defendants;

(b) Entry of a temporary restraining order enjoining all defendants and their agents, representatives and others acting in concert with them from transferring, assigning, encumbering or otherwise disposing of or destroying any and all assets;

(c) Entry of an order requiring defendants to immediately furnish plaintiff Bank with a documented accounting of all rental revenues from the Premises since the date of the fraudulent conveyance of the Premises;

(d) Entry of a temporary restraining order enjoining defendants and their agents, representatives and others acting in concert with them from concealing, discarding, destroying or in any way altering relevant documents;

(e) Entry of an order granting plaintiff Bank expedited discovery of defendants and any others who are believed by plaintiff Bank to have knowledge of the transfer of the Premises and the Monies; and

(f) Entry of an order appointing a temporary receiver of the rental income from the Premises.

5

## **PERMANENT RELIEF**

(a) Entry of a Federal Judgment on the NY Supreme Court Money Judgment against defendant Ocean Development (First Cause of Action);

(b) Entry of a judgment setting aside the fraudulent conveyances of the Premises and the Monies;

(c) Entry of a judgment against the individual defendants for the rental value of the Premises and interest on the Monies while they actually had the use of the fraudulently conveyed Premises and Monies, this amount to be calculated through an accounting of the rental revenues received and the interest due since these fraudulent transfers (Second Cause of Action);

(d) Compensatory damages (All Causes of Action);

(e) Punitive damages (Second Cause of Action);

(f) Costs and attorneys' fees (All Causes of Action); and

(g) Such other and further relief as the court deems proper.


Dated: New York, New York
      May 21, 2007

WU & KAO
Attorneys for Plaintiff
Bank of Communications,
New York Branch


By:     *Jacob Ginsburg*

Jacob Ginsburg, Esq. (JG-8981)
Of Counsel
747 Third Avenue, 22nd Floor
New York, New York 10017
(212) 755-8880

C:\data4.wu\Bank Communications\pleadings\final complaint and exhibits\complaint 052107.doc

6

<u>REVOLVING NOTE</u>

May 1, 2001

$5,500,000.00

FOR VALUE RECEIVED, OCEAN DEVELOPMENT AMERICA, INC., a California corporation having its principal place of business at 13453-A Brooks Drive, Baldwin Park CA 91706 (the "Borrower") promises to pay to the order of BANK OF COMMUNICATIONS, NEW YORK BRANCH (the "Bank") at the Bank's office, One Exchange Plaza, 55 Broadway, 31st & 32nd Floor New York, New York 10006, the principal sum of FIVE MILLION FIVE HUNDRED THOURSNAD and 00/100 ($5,500,000.00) DOLLARS, or, if less, the aggregate principal amount of all revolving loans made by the Bank to the Borrower pursuant to the Credit Agreement referred to below, in lawful money of the United States of America, on or before March 1, 2002 (the "Expiration Date").

The Borrower promises also to pay to the Bank interest, computed on the basis of actual days outstanding a year of 360 days, as set forth in Section 2.6 in the Credit Agreement, on the unpaid principal balance outstanding hereunder, in like money at such office, on a revolving basis of not more than One Hundred and Eighty (180) days (including any trust receipts / usance L/Cs / acceptances period), (i) from the date hereof until the Expiration Date (whether by acceleration or otherwise) at the rate per annum (the "Interest Rate") equal at all times to one quarter (0.25%) of one percentage point below the Prime Rate, as defined in the Credit Agreement; any changes in the Interest Rate shall take effect simultaneously with the corresponding change in the Prime Rate; (ii) from such maturity of the respective loans until paid and during the rollover period, the unpaid principal amount of the outstanding loans shall bear interest at the rate per annum equal to one-half of one (0.5%) percentage point in excess of the Interest Rate (the "Rollover Rate"); and (iii) after the Expiration Date or during the continuance of an Event of Default (as defined in Section 6.1 of the Credit Agreement), at the rate per annum equal to five (5%) percentage points in excess of the applicable Interest Rate (the "Default Rate").

Notwithstanding anything to the contrary contained herein, in no event shall the total of all charges payable under this note, and the Credit Agreement which are or could be held to be in the nature of interest, exceed the maximum rate permitted to be charged by applicable law. Should the Bank receive any payment which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall automatically be applied to reduce the principal balance outstanding on this Note.

This Note has been delivered by the Borrower to the Bank and shall be deemed to be a contract made under the laws of the State of New York and for all purposes shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of laws.

The Borrower expressly waives any presentment, demand, protest or notice in connection with this Note, now or hereafter, required by applicable law.

This Note is referred to in and issued subject to the Credit Agreement dated as of May 1, 2001 between the Borrower and the Bank to which reference is made hereinabove. In case an Event of Default shall occur and be continuing, the principal of and accrued interest on this Note may be declared to be due and payable in the manner and with the effect provided in the Credit Agreement.

The Borrower agrees to pay, and save the holder hereof harmless against any liability for the expenses arising in connection with the enforcement by the holder of any of its rights under this Note or the Credit Agreement.

BORROWER:

OCEAN DEVELOPMENT AMERICA, INC.

(Corporate Seal)

By: _____

Xiaomin Zhang                    President

By: _____

Ye Hua Wang              Chief Executive
                                Officer

SIGNATURE VERIFIED



## CREDIT AGREEMENT

## FIVE MILLION FIVE HUNDRED THOUSAND & 00/100 (US$5,500,000.00) DOLLARS

### OCEAN DEVELOPMENT AMERICA, INC.

having an office at:

13453-A Brooks Drive
Baldwin Park CA 91706

**as Borrower**

---

### BANK OF COMMUNICATIONS, NEW YORK BRANCH

having an office at:

One Exchange Plaza,
55 Broadway, 31st & 32nd Floor
New York, New York 10006-3008

**as Bank**

---

Date: May 1, 2001

## CREDIT AGREEMENT

CREDIT AGREEMENT dated as of the 1st day of May, 2001 between Ocean Development America, Inc., a California corporation having its principal place of business at 13453-A Brooks Drive, Baldwin Park CA 91706 (the "Borrower"), and BANK OF COMMUNICATIONS, NEW YORK BRANCH, having its principal place of business at One Exchange Plaza, 55 Broadway, 31st & 32nd Floor, New York New York 10006-3008 (the "Bank");

## WITNESSETH:

WHEREAS, subject to and upon the terms and conditions herein set forth the Bank is willing to make available to the Borrower an uncommitted credit facility which shall not exceed in the aggregate principal amount at any one time outstanding US$5,500,000.00 (the "Credit Facility").

NOW, THEREFORE, it is agreed:

### Section 1:    Definitions.

As used herein the following terms shall have the meanings herein specified and shall include in the singular number the plural and the plural number the singular:

"Affiliate" of any Person means any other Person directly or indirectly controlling, controlled by, or under common control with, such Person, whether through the ownership of voting securities, by contract or otherwise.

"Business Day" means every day except Saturday, Sunday and any other day which in New York, New York shall be legal holiday, and any day on which banking institutions in New York, New York are authorized by law to close.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Facility Letter" means the Bank's agreement to lend up to an aggregate principal amount of US$5,500,000.00 pursuant to this Agreement.

"Facility Letter Period" means the period beginning on the date hereof and ending on the earlier of (i) the Expiration Date as defined below, or (ii) the date on which the Bank terminates its Facility Letter after the occurrence of an Event of Default.

"Credit Instruments" shall have the meaning specified in Section 2.5.

"Current Assets" means the amount at any date which, in conformity with generally accepted accounting principles in the United States of America ("GAAP"), would be set forth opposite the caption "total current assets" (or any like caption) on a balance sheet of the Borrower at such date; provided, however, such amount shall in any event include all publicly quoted and readily marketable securities owned by the Borrower, valued at the lower of cost or market value.

"Current Liability" means the amount at any date which, in conformity with GAAP, would be set forth opposite the caption "total current liabilities" (or any like caption) on a balance sheet of the Borrower at such date (including all payments of principal on the Loans due within twelve months of such date).

"Current Ratio" shall have the meaning specified in Section 4.5.

"**Direct Debt**" means any financing of a Letter of Credit, acceptance under usance of Letter of Credit, trade advance, any other advance or any and all loans and credits or otherwise of the Borrower.

"**Dollars**" and the sign "$" means lawful money of the United States of America.

"**Drawing**" means a payment made under a Letter of Credit or a payment of an acceptance.

"**Expiration Date**" means **March 1, 2002.**

"**Event of Default**" is defined in Section 6.1.

"**Indebtedness**" means (i) indebtedness for borrowed money, (ii) obligations evidenced by bonds, debentures, notes or other similar instruments, (iii) obligations to pay the deferred purchase price of property or services, (iv) obligations as lessee under leases which shall have been or should be, in accordance with generally accepted accounting principles, consistently applied, recorded as capital leases (v) obligations under direct or indirect guarantees in respect of, and obligations (contingent or otherwise) to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, indebtedness or obligations of others of the kinds referred to in clauses (i) through (iv) above.

"**Letter of Credit**" shall have the meaning specified in Section 2.2.

"**Letter of Credit Outstandings**" means, at any time, the sum of (i) the aggregate Stated Amount of all outstanding Letter of Credit and (ii) the aggregate amount of all Unpaid Drawings.

"**Net Worth**" means, as at any date, the sum of the capital stock and paid-in surplus, plus retained earnings (or minus accumulated deficit) of the Borrower, determined in accordance with GAAP.

"**Prime Rate**" means the rate announced by the Bank from time to time as being in effect at its New York office as its floating base lending rate for domestic commercial loans within the United States; any change of interest rate resulting from a change in the floating base lending rate to be effective on the effective date of each change in such floating base rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate actually charged to any customer.

"**Security Interest**" means both the "Specific Security Interest" and "General Security Interest". "**Specific Security Interest**" means for any and all equipment, machinery and factory fixtures, as more specifically described in the General Security Agreement, the first preferred and enforceable security interest covering such equipment, machinery and factory fixtures in favor of the Bank duly filed as required by the laws of the State the principal office of business of the Borrower located and any other jurisdiction that the Bank deems appropriate. "**General Security Interest**" means any perfected and enforceable security interest of the Bank in collateral, however arising, other than a Specific Security Interest. "**Collateral**" means all personal property and fixtures of the Borrower, whether now or hereafter existing or now owned or hereafter acquired and wherever located, of every kind and description, tangible or intangible, including, but not limited to, all goods, documents, instruments, chattel paper, accounts, contract rights and general intangibles and including the products and proceeds thereof and accessions thereto, constituting security for obligations of the Borrower, direct or contingent.

"**Subsidiary**" means a corporation with respect to which more than 50% of the outstanding shares of stock of each class having ordinary voting power (other than stock having such power only by reason of the happening of a contingency) is at the time owned by the Borrower or by one or more Subsidiaries of the Borrower or by the Borrower and one or more Subsidiaries of the Borrower.

"**Unpaid Drawing**" shall have the meaning specified in Section 2.4.

**Section 2:**     **Amount and Terms of Credit.**

**2.1.**     **The Loans and Credit Facility.**

2

(i)  Subject to and upon the terms and conditions set forth herein and to the Bank's review and customary overriding right of repayment on demand, the Bank is willing, at its sole and absolute discretion, to grant credit to the Borrower, on a revolving basis, at any time and from time to time on any Business Day during the Facility Period to and including March 1, 2002 (the "Expiration Date"), or such later date or dates as the Bank and the Borrower shall agree pursuant to Section 2.10. such amount granted (each a "Credit" or "Loan" and collectively the "Credits" or "Loans") and the total Credit Facility shall be evidenced by a revolving note (the "Note") as hereinafter provided:

Import Line:  up to $5,500,000.00 to be used for the issuance of Letters of Credit;

Within which:  up to $5,500,000.00 to be used for the issuance of Usance Letters of Credit / Trust Receipt / Acceptances for a period not exceeding 180 days;

up to $5,500,000.00 to be used for Cash Loan for trade settlements for a period not to exceed 180 days (including any trust receipt, usance and acceptance period);

up to $500,000.00 to be used for Cash Loan with supplier's invoice for a period not exceeding 180 days after deduction of number of days (rounded-up to the nearest 30 days) between invoice date and drawdown date.

At no time shall the overall aggregate amount of the Credit Facility exceed USD5,500,000.00.

**Special Conditions:**

a)  Loan proceeds drawn against supplier's invoice shall be paid to the supplier as per Borrower's remittance instruction, subject to satisfactory review by the Bank.

b)  Total combined Usance L/Cs / Trust Receipts / Acceptances and Loan period shall not exceed 180 days.

## 2.2.  Letter of Credit and Other Loans.

(i)  Subject to and upon the terms and conditions herein set forth, at any time and from time to time prior to the Expiration Date, at the Borrower's request, the Bank agrees to issue, for the account of the Borrower and for the benefit of any obligee of performance obligations of the Borrower on an offering and as available basis, documentary commercial letters of credit up to the limits or sub-limits under the Credit Facility payable upon sight or payable upon presentation of appropriate title documents to the Bank, in the form as customarily used by the Bank or in such other form as may be approved by the Bank (each a "Letter of Credit") in support of the Borrower's obligations to such obligee.

(ii)  The purpose of the Credit Facility shall be solely used to facilitate the Borrower's import and export of merchandise and goods carried in the ordinary course of its business and the Borrower's operating expenses on a transactional basis. The Bank reserves the right to suspend the availability of the Credit Facility, if, at the Bank's sole discretion the business of the Borrower is different from that conducted by the Borrower since the date of this Agreement or there has been a material or adverse change in the financial condition of the Borrower or its Guarantor.

(iii)  Notwithstanding the provisions of Section 2.2(i), no Letter of Credit shall be issued for an amount which', when added to the Letter of Credit Outstandings at such time and aggregate amount of all Loans then outstanding would exceed the Facility.

3

(iv)    Subject to and upon the terms and conditions herein set forth, the Bank agrees to make a revolving Loan to the Borrower in a principal amount of $5,500,000.00 for a period not exceeding **One Hundred Eighty (180)** days ( including any usance / trust receipts / acceptances period) at any time and from time to time prior to the Expiration Date. At the end of the One Hundred Eighty (180) days, the aggregate principal amount of such Loan and accrued interest shall be immediately due and payable.

### 2.3.    Letter of Credit Applications.

Whenever the Borrower desires that a Letter of Credit be issued for its account, the Borrower shall give the Bank prior written notice thereof. Each notice shall be in the form customarily used by the Bank or in such other form as may be approved by the Bank (each a "Letter of Credit Application"). The Letter of Credit Application must be accompanied by a completed set of trade documents, copies of which must include, but are not limited to, sales contracts, export Letter of Credit, purchase orders, invoices, billings, export license (if any are required), Trust Receipt duly signed, a copy of the Bill of Lading and a signed statement indicating that there is no double financing involved in the underlying transaction.

### 2.4.    Agreement to Repay Letter of Credit Drawings.

(i)    Upon any payment or disbursement made by the Bank under any Letter of Credit (each such amount so paid or disbursed until reimbursed, an "Unpaid Drawing"), such amount shall be treated as a Loan under Section 2.1 hereof to the Borrower and the Borrower agrees to reimburse the Bank such amount in immediately available funds in accordance with Section 2.9 hereof. In the event that any Unpaid Drawing cannot be treated as a Loan under Section 2.2 because of the limitations set forth therein, such Unpaid Drawing shall become immediately due and payable to the Bank in immediately available funds in accordance with Section 2.9 hereof.

(ii)    The Borrower's obligations under this Section 2.4 (ii) to reimburse the Bank with respect to Unpaid Drawings (including, in each case, interest thereon) shall be absolute and unconditional under any and all circumstances and irrespective of any set-off, counterclaim or defense to payment which the Borrower may have or have had against the Bank, including, without limitation, any defense based upon the failure of any drawing under a Letter of Credit (each a "Drawing") to conform to the terms of the Letter of Credit or any non-application or misapplication by the beneficiary of the proceeds of such Drawing; provided, however, that the Borrower shall not be obligated to reimburse the Bank for any wrongful payment made by the Bank under a Letter of Credit as a result of acts or omissions constituting willful misconduct or gross negligence on the part of the bank.

(iii)    Documents which are free from major discrepancies presented by the overseas suppliers under an import letter of credit issued by the Bank shall be paid by the Borrower within three (3) business days after the said documents arrive at the Bank's counter. The Bank is hereby authorized to debit and apply any and all deposit accounts of the Borrower at any time held by the Bank to or for the credit or the account of the Borrower against such payments unless the Bank is instructed otherwise by the Borrower within three (3) business days.

### 2.5.    Revolving Note.

A Note shall be executed by the Borrower substantially in the form of Exhibit A hereto. At the time of the making of each Loan and at the time of the making of each payment of principal on the Note, the Bank shall either make a notation on Schedule I of the Note or shall keep a computer record, specifying the date and the amount of the related Loan or payment. If it is necessary to evidence an extension of the Expiration Date or any other change in the provisions of this Agreement relating to the Note and agreed to in writing by the Bank and the Borrower, the Borrower shall furnish a new Note to the Bank in substitution for but not in discharge of the liability represented by the prior Note. The first notation made by the Bank on the schedule to the replacement Note or a computer print out from the Bank relating to such amount shall be the last outstanding principal balance evidenced by the replaced Note. Such Note may be payable on demand or on a term basis or on a combination thereof, and may

4

evidence single, multiple or revolving advances of the Credits and Loans hereunder. All instruments, documents and agreements now or hereafter executed evidencing or creating any obligation of the Borrower to the Bank or in respect of any notes, acceptances, Letters of Credit, drafts or bills of exchange drawn, or to be drawn, upon the Bank for the account of, or to be charged to, the Borrower pursuant to this agreement, including, but not limited to, any applications for acceptances of Letters of Credit, any note evidencing a credit, a Loan or other extension of Credit or Loan under the Credit Facility are referred to hereunder as the "Credit Instruments".

2.6.    **Interest Rate.**

(i)    The unpaid principal amount of the outstanding Loan evidenced by the Note shall bear interest at a rate per annum (the "Interest Rate") equal at all times to **one quarter (0.25%) of one percentage point below the Bank's Prime Rate**, such rate will change as and when the Bank's Prime Rate shall change.

(ii)    After the maturity of the respective Credits or Loans under the Credit Facility as specified in Section 2.2 (iv), and from such maturity until paid and during the rollover period, which shall not be more than thirty (30) days, the unpaid principal amount of the outstanding Loan shall bear rollover interest equal at all time to one-half of one (0.5%) percentage point above the interest Rate (the "Rollover Rate").

(iii)    Interest under this Section 2.6 shall be computed for the actual number of days elapsed on the basis of a year of 360 days. Interest shall accrue from and including the date of any payment or disbursement to, but not including the date of any repayment thereof and shall be due and payable on the dates provided in the relevant Credit Instruments, unless extended pursuant to Section 2.10, or if not stated, due and payable on the maturity date of the promissory note, provided, however, that if any interest payment date is not a Business Day, the interest shall be due and payable on the next succeeding Business Day and the amount of interest due shall be computed accordingly.

(iv)    After the Expiration Date or during the continuance of an "Event of Default" as specified in Section 6.1 of this Agreement, the rate of interest hereunder shall be five (5%) percentage points per annum in excess of the Interest Rate (the "Default Rate").

2.7.    **Manner of Borrowings.**

Unless otherwise specifically provided in this Agreement, upon a drawing made under a Letter of Credit issued by the Bank, the Borrower shall promptly receive written, telex, tele-copier or telephonic notice of such drawing from the Bank. Upon receipt of such notice, the Borrower shall immediately advise the Bank by telex, tele-copy or telephonic notice whether such Borrower requires a Loan or whether it shall be responsible for payment under the Letter of Credit. In the event that the Borrower requires a Loan, the Bank shall at its sole and absolute discretion make a Loan on the terms set forth in this Agreement. If any other Loans are made to the Borrower other than financing against trust receipts and draws on Letter of Credit, the Borrower shall give the Bank at least three (3) Business Days prior written, telex, tele-copier, or telegraphic notice of its intention to borrow hereunder, specifying the date and the total amount of the proposed Loan. No later than 11:00 A.M. New York time on the Business Day prior to the date of the proposed Loan, the Borrower will deliver to the Bank at the Bank's offices first above written a Note evidencing the Loan unless the Loan is to be noted on a previously delivered Note, together with such other documents and papers as are required under this Agreement. Upon receipt of the Note and such other documentation, in form satisfactory to the Bank, the Bank shall at its sole and absolute discretion make the proceeds of such Loan available to the Borrower on the date of the proposed Loan by crediting the account of the Borrower.

2.8.    **Pricing for the Credit Facility.**

The Borrower shall pay to the Bank an arrangement fee of US$5,500.00 of the Credit Facility and such other fees, expenses and charges in respect of each Letter of Credit, negotiation of a Letter of Credit, refinancing of a Letter of Credit by acceptance or Loan, or such other amount as computed at the rate pursuant to the Bank's standard fee schedule currently in effect at the time of such drawing to be the administrative charge which the Bank is making for drawings on Letter of Credit, Loans and other

refinancings. The Bank reserves the right at its sole and absolute discretion, to change such fees, commissions and expenses from time to time without any prior notice.

### 2.9.    Payments.

All payments of principal, interest and any other fees, shall be made by the Borrower in lawful money of the United States of America in immediately available funds, at the office of the Bank, or at such other office as may be designated in writing to the Borrower by the Bank, or any successor thereto. The Borrower shall repay to the Bank the unpaid principal amount of all Loans made by the Bank hereunder, together with interest due or accrued thereon, on the Expiration Date. All interest and fees will be paid in accordance with Section 2.6 and Section 2.8 hereof.

Any repaid portion of outstanding principal made by the Borrower during the term of the Credit Facility may, at the Bank's sole and absolute discretion, proportionately be converted for the availability of the Borrower's financing for the issuance of Letters of Credit and/or financing of Trust Receipts hereunder.

The Bank is hereby authorized to debit and apply any and all deposit accounts of the Borrower at any time held by the Bank to or for the credit or the account of the Borrower against any and all of the payments, interest, charges and fees of the Borrower now or hereafter existing under this Agreement or the Note.

### 2.10.    Extension of Expiration Date.

If agreed in writing by the Bank and the Borrower prior to thirty (30) days before the Expiration Date or any extension thereof, the Expiration Date may be extended for one (1) year. However, no extension shall be granted beyond the maturity date of the Certificate of Deposit assigned and pledged to the Bank pursuant to Section 3.11, if any. Unless so extended, all outstanding Loans or Credits shall be subject to the Bank's customary overriding right of repayment on demand on the Expiration Date. However, the Loans for financing the Trust Receipts for a period of 180 days shall not be extended, the outstanding principal amount and accrued interest thereon shall be payable in full immediately upon their maturity. Any extension of the Expiration Date shall be made at the Bank's sole and absolute discretion, upon satisfactory experience with the performance and financial condition of the Borrower. Unless so extended, no Loans or Credits shall be made after the Expiration Date but such termination shall not affect any Loans outstanding on the Expiration Date which have a maturity date thereafter, which Loans shall continue to be governed by the terms and conditions of this Agreement.

### 2.11.    Nature of Duties and Indemnification.

The Borrower shall assume all risks of the acts, omissions or misuse of any Letter of Credit by the beneficiary. The Bank shall not be responsible if applicable, and at the sole discretion of the Bank: (i) for the form, validity, sufficiency, accuracy, genuineness or legal effect of any Letter of Credit or any document submitted by any party in connection with the application for and issuance of a Letter of Credit, even if it should in fact prove to be in any or all respects invalid, insufficient, inaccurate, fraudulent or forged; (ii) for the validity or sufficiency of any instrument transferring or assigning or purporting to transfer or assign a Letter of Credit or the rights or benefits thereunder or proceeds thereof in whole or in part, which may prove to be invalid or ineffective for any reason; (iii) for failure of the beneficiary to comply fully with the conditions required in order to draw upon a Letter of Credit; (iv) for errors, omissions, interruptions or delays in transmission or delivery of any messages, by mail, cable, telegraph, telex or otherwise, whether or not they be in cipher; or (v) for any loss or delay in the transmission or otherwise of any document or draft required in order to make a draw under a Letter of Credit or of proceeds thereof. None of the above shall affect, impair, or prevent the vesting of any of the rights or powers granted the Bank hereunder. In furtherance and extension and not in limitation of the specific provisions hereinabove set forth, any action taken or omitted by the Bank, under or in connection with a Letter of Credit or the related drafts or documents, or the Loan and Credit granted by the Bank, if taken or omitted in good faith, shall be binding upon the Borrower and shall not put the Bank under any resulting liability to the Borrower. The Borrower hereby agrees at all times to protect, indemnify and save harmless the Bank from and against any and all claims, actions, suits and other legal proceedings, and from and against any and all losses, claims, demands, liabilities, damages, costs, charges, reasonable counsel fees and other reasonable expenses which the Bank may, at any time, sustain or incur by reason of or in consequence of or arising out of the issuance of a Letter of Credit; it being the intention of the

parties that this Agreement shall be construed and applied to protect and indemnify the Bank against any and all risks involved in the issuance of the Letter of Credit and the granting of the Loan and Credit by the Bank, all of which risks are hereby assumed by the Borrower, including, without limitation, any and all risks of the acts or omissions, whether rightful or wrongful, of any present or future de jure or de facto government or governmental authority (all such acts and omissions, herein called "Government Acts"); provided, however, that the Borrower shall not be required to indemnify the Bank for any claims, damages, losses, liabilities, costs or expenses to the extent, but only to the extent, caused by the willful misconduct or gross negligence of the Bank in not honoring any demand for payment under a Letter of Credit after the timely presentation to it by a beneficiary of drawing documents strictly complying with the terms and conditions of such Letter of Credit. The Bank shall not, however, in any way, be liable for any failure by the Bank or anyone else to pay any draft under a Letter of Credit as a result of any Government Acts or any other cause beyond the control of the Bank. If and to the extent that the obligations of the Borrower under this Section 2.11 are unenforceable for any reason, the Borrower hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable law. The obligations of the Borrower under this Section 2.11 shall survive the termination of this Agreement.

### 2.12. Increased Costs.

If at any time the introduction of or any change in applicable law, rule or regulation or in the interpretation or administration thereof by any governmental authority charged with the interpretation or administration thereof, or compliance by the Borrower with any request or directive by any such authority (whether or not having the force of law) shall either (i) impose, modify or make applicable any reserve, deposit or similar requirement against the Credit Facility granted by the Bank under this Agreement or other Credit Instruments or (ii) shall impose on the Bank any other conditions affecting this Agreement or any Letter of Credit; and the result of any of the foregoing is to increase the costs to the Bank of issuing or maintaining any Letter of Credit, or reduce the amount of any sum received or receivable by the Bank hereunder, then upon demand to the Borrower by the Bank, the Borrower shall pay to the Bank such additional amount or amounts as will compensate the Bank for such increased cost or reduction. A certificate submitted to the Borrower by the Bank, setting forth the basis for the determination of such additional amount or amounts necessary to compensate the Bank as aforesaid, shall be conclusive and binding on the Borrower absent manifest error.

### Section 3:    Conditions Precedent.

The obligation of the Bank to grant, issue, make or extend Credits, Letter of Credit, acceptances, Loans or other form of credit to the Borrower hereunder is subject to the satisfaction of the following conditions:

### 3.1.    Note.

There shall have been delivered to the Bank an appropriate Note duly completed and executed, in form and substance satisfactory to the Bank.

### 3.2.    Change in the Borrower's Condition.

There shall not have occurred or be threatened at the Bank's sole and absolute discretion (i) any material or adverse change in the financial condition of the Borrower or the Personal Guarantor or the Corporate Guarantor or (ii) any condition, event or act which would materially and adversely affect the Borrower's business or its ability to repay any Loan.

### 3.3.    Authorization and Validity.

The Borrower has full legal right, requisite, power and authority to borrow from the Bank under this Agreement and to execute, deliver and perform its obligations under this Agreement, the Note and all instruments, documents and agreements to which it is or will be a party and it has duly authorized by all requisite corporate action the execution, delivery and performance of this Agreement, the Note and all such instruments, documents and agreements to which it is a party.

7

### 3.4. No Conflicts.

The execution, delivery and performance by the Borrower of this Agreement and the Note and the payment by the Borrower of principal, interest and any other sums that may become due and owing under this Agreement and the Note do not: (i) conflict with the certificate of incorporation or by-laws of the Borrower; (ii) violate any provision of law, regulations, judgment, award, decree, order, writ, injunction or permit applicable to the Borrower; (iii) conflict with or result in default of the performance, observance or fulfillment of the material obligations, covenants, or agreements contained in any agreement or instrument to which the Borrower is a party or by which it or any of its properties or assets is bound; or (iv) constitute a breach of any restriction materially adversely affecting its business, operation, creation or imposition of any lien, security interest, charge or encumbrance upon any property or assets of the Borrower.

### 3.5. No Adverse Pending Actions.

There are no actions, suits or proceedings before any court, arbitral tribunal, governmental agency or administrative body pending or, to the best of the Borrower's knowledge, threatened against or affecting it which if adversely determined would materially adversely affect the financial condition of the Borrower or its operations or would materially impact any of its right or abilities to perform its business as now conducted or as contemplated to be conducted or the financial ability of the Borrower to pay, when due, the principal of and interest on the Loan and any other sums that may become due and owing under this Agreement, the Note or any other document or instrument to which it is a party.

### 3.6. Representation and Warranties; No Default.

The representations and warranties contained in Section 7 shall be true on and as of the date of each granting of Credit; there shall exist on the date of each granting of Credit no event of default, as specified in Section 6.1 ("Event of Default"); and the Borrower shall have immediately delivered to the Bank an officer's certificate, dated the date of each granting of Credit and upon the date of each occurrence of Event of Default to both such effects.

### 3.7. Accountant's Letter.

The Bank shall reserve the right, at any time and from time to time, to request the accountant's letter from a C.P.A. firm approved by the Bank, addressed to the Bank, stating that such firm has reviewed the provisions for federal, state and other income taxes of the Borrower and its Subsidiaries contained in the financial statements furnished to the Bank pursuant to Section 7.2 and that, in the opinion of such firm, the consolidated balance sheets included in such financial statements include a reasonably adequate provision for all unpaid federal, state and other income taxes for the fiscal year most current and for all fiscal years prior thereto which have not been examined and reported on by the taxing authorities or closed by applicable statute. It is expressly agreed that the Borrower shall execute an irrevocable letter in such form and substance satisfactory to the Bank, to its accountant to instruct, permit and authorize its accountant for the Bank's direct access to the Borrower's financial information, including financial statements and books and records.

### 3.8. Credits Permitted by Applicable Laws.

The Credits from the Bank to the Borrower on the terms and conditions herein provided (including the use of the proceeds of the Credits by the Borrower) shall not violate any applicable law or governmental regulation (including, without limitation, Regulations G, T, U and X of the Board of Governors of the Federal Reserve System) and shall not subject the Bank to any tax, penalty, liability or other onerous condition under or pursuant to any applicable law or governmental regulation, and the Bank shall have received such certificates or other evidence as it may request to establish compliance with this condition.

### 3.9. Proceedings.

All corporate and other proceedings taken or to be taken in connection with the transactions contemplated hereby and all documents incident thereto shall be satisfactory in substance and form to the

8

Bank, and the Bank shall have received all such counterpart originals or certified or other copies of such documents as the Bank may reasonably request.

### 3.10. Security.

As security for Credit under this Agreement there shall have been delivered to the Bank for the duration of the Credit Facility the following:

(i)     A General Security Agreement on all assets of the Borrower with appropriate financing statements necessary to perfect the Security Interest granted thereunder, filed by the Bank, so that the Bank has a security position on such assets, only subject to the UCC liens existing as of this date; and

(ii)     Certificate of Deposits in the amount of not less than US$2,000,000.00 in the name of Borrower to be assigned and pledged to the Bank for the term of the Revolving Credit Facility or until the Note has been paid in full.

### Section 4:    Affirmative Covenants.

The Borrower covenants and agrees that so long as this Agreement is in effect and until the Note, together with interest and all other obligations of the Borrower incurred hereunder, are paid in full, the Borrower will:

### 4.1. Financial Statements.

Deliver to the Bank:

(i)     as soon as practicable and in any event within **120 days** after the end of each fiscal year, a consolidated profit and loss statement of the Borrower for such year, and a consolidated balance sheet of the Borrower as at the end of such year, all shall be presented in reasonable details and satisfactory in scope to the Bank, and must be **audited by independent certified public accountants** of recognized standing selected by the Borrower whose certificate shall be in scope and substance satisfactory to the Bank; and

(ii)     as soon as practicable and in any event within **90 days** after the end of each semi-annual period in each fiscal year, a profit and loss statement for the period from the beginning of the current fiscal year to the end of such period, shall be prepared by an authorized financial officer of the Borrower, subject to changes resulting from year-end adjustments; and

(iii)     as soon as practicable and in any event within **20 days** at the end of each monthly period in each fiscal year, the monthly accounts receivable aging report shall be provided to the Bank; and

(iv)     as soon as practicable and in any event within **20 days** at the end of each quarterly period in each fiscal year, the quarterly inventory report shall be provided to the Bank; and

(v)     promptly upon receipt thereof, a copy of any other report submitted to the Borrower by independent accountants in connection with any annual, interim or special audit made by them of the books of the Borrower shall be provided to the Bank; and

(vi)     promptly upon transmission, thereof, copies of all such financial statements, proxy statements, notices and reports as the Borrower shall send to its stockholders and copies of all registration statements (without exhibits) and all reports which it files with the Securities and Exchange Commission (or any

governmental body or agency succeeding to the functions of the Securities and Exchange Commission) if applicable shall be provided to the Bank; and

(vii)    with reasonable promptness, such other financial data as the Bank may reasonably request.

### 4.2.    Inspection of Property.

Permit any person designated by the Bank in writing if at the Borrower's expense, at least once a year, to visit and inspect the operation and any of the properties of the Borrower, including, but not limited to, the examination of the corporate books, inventory, accounts receivable, and accounting and financial records of the Borrower and its Subsidiaries and make copies thereof or extracts therefrom and to discuss the affairs, finances and accounts of any of such corporations with the principal officers of the Borrower, at reasonable times.

### 4.3.    Secure Notes Equally.

If the Borrower creates or assumes any lien upon any of its property or assets, whether now owned or hereafter acquired, other than liens excepted by the provisions of Section 5.1 (unless prior written consent to the creation or assumption thereof shall have been obtained pursuant to Section 8.2), makes or causes to be made effective provisions whereby the Notes will be further secured by such lien equally and ratably with any and all other debt thereby secured, then the Credit or the Loan under the Note shall also be so secured.

### 4.4.    Net Worth.

Maintain at all times during the term of this Agreement, a minimum tangible Net Worth of not less than ___N/A___. The dollar amount so removed must be replaced by a form of capital acceptable to the Bank.

### 4.5.    Current Ratio.

Maintain at all times during the term of this Agreement, a Current Ratio not less than _N/A_. Current Ratio shall mean the ratio of (i) the Current Assets of the Borrower, to (ii) the Current Liabilities of the Borrower.

### 4.6.    Other Loans.

All loans made to the Borrower prior to or subsequent to the date of this Agreement, including, but not limited to, the shareholders' loan, shall be subordinated to the Bank's Security Interest in the Borrower's assets.

### 4.7.    Litigation.

Promptly notify the Bank of any litigation or judgment (including, without limitation, derivative actions), investigations, arbitration proceedings or governmental proceedings pending or threatened against the Borrower which would, if adversely determined by the Bank at its sole and absolute discretion, adversely affect the financial condition or continued operations of the Borrower.

### 4.8.    Name, Address.

Promptly provide written notice to the Bank if either the name or address of the Borrower is to be changed.

**Section 5:    Negative Covenants.**

The Borrower covenants and agrees that so long as this Agreement is in effect and until the Note, together with interest and all other obligations of the Borrower incurred hereunder are paid in full, the Borrower will not, and will not permit any Subsidiary without the Bank's prior written consent to:

### 5.1.  Lien Restrictions.

Create, assume or suffer to exist any mortgage, pledge, security interest, encumbrance, lien or charge of any kind (other than to or in favor of the Bank) on or with respect to any of its property or assets, whether now owned or hereafter acquired (whether or not provision is made for the equal and ratable securing of the Note in accordance with the provision of Section 4.3 hereof), except

(i)      liens for taxes not yet due or which are being actively contested in good faith by appropriate proceedings,

(ii)     other liens incidental to the conduct of its business or the ownership of its property and assets which were not incurred in connection with the borrowing of money or the obtaining of advances or credit, and which do not in the aggregate materially detract from the value of its property or assets or materially impair the use thereof in the operation of its business,

(iii)    liens on property or assets of a Subsidiary to secure obligations of such Subsidiary to Borrower or another Subsidiary,

(iv)     any lien existing on any property of any corporation at the time it becomes a Subsidiary, or existing prior to the time of acquisition upon any property acquired by the Borrower or any Subsidiary through purchase, merger or consolidation or otherwise, whether or not assumed by the Borrower or such Subsidiary, or placed upon property at the time of acquisition by the Borrower or any Subsidiary to secure a portion of the purchase price thereof, provided that any such lien shall not encumber any other property of the Borrower or such Subsidiary,

(v)      any lien renewing, extending or refunding any lien permitted by clause (iv) above, provided that the principal amount secured is not increased, and the lien is not extended to other property, and

(vi)     liens now or hereafter required by this Agreement.

### 5.2.  Mergers, Consolidations, Sales.

Be a party to any merger or consolidation, or purchase or otherwise acquire all or substantially all of the assets or stock of any class of, or any partnership or joint venture interest in, any other person or entity, or, except in the ordinary course of its business, sell, transfer, convey or lease all or any substantial part of its assets, or sell or assign with or without recourse any receivable, except for any such merger or consolidation, sale, transfer, conveyance, lease or assignment of or by any wholly-owned Subsidiary into the Borrower or into, with or to any other wholly-owned Subsidiary.

### 5.3.  Guaranties, Loans or Advances.

Become or be a Personal Guarantor or surety of, or otherwise become or be responsible in any manner directly, contingently or otherwise (whether by agreement to purchase any obligations, stock, assets, goods or services, or to supply or advance any funds, assets, goods or services, or otherwise) with respect to, any undertaking of any other person or entity, or make or permit to exist any loans or advances to any other person or entity, except for those existing prior to the date of this Agreement.

### 5.4.  Dividends, Etc.

Declare or pay any dividends, purchase or otherwise acquire for value any of its capital stock now or hereafter outstanding, or make any distribution of assets or making loans or advances in any form to its Shareholders as such, or permit any of its Subsidiaries to purchase or otherwise acquire for value

11

any stock of the Borrower, if the result would create a breach of any of the terms and conditions set forth in this Agreement.

### 5.5.    Financing or Capital Investments.

Provide any financing to any of its shareholders, principals, related parties, Subsidiaries or Affiliates, or make any capital investments in any fiscal year during the term of this Agreement.

### Section 6.    Events of Default.

### 6.1.    Events of Default.

If any of the following events shall occur and be continuing for any reason whatsoever (and whether such occurrence shall be voluntary or involuntary or come about or be affected by operation of law or otherwise), all outstanding liabilities owed to the Bank, including but not limited to the outstanding principal balance of any Letter of Credit, Acceptances, Loans or other credits and the accrued interest and fees thereon, shall become due and payable in full immediately without any further demand, protest, or notice of any kind:

(i)     the Borrower defaults in the payment of the principal of the Note or any loans, Drawings, advances and other indebtedness when the same shall become due, either at maturity or by acceleration or otherwise as herein provided; or

(ii)    the Borrower defaults in the payment of any interest on the Note or any loans, Drawings, advances and other indebtedness or of any fee when the same shall become due; or

(iii)   the Borrower or any Subsidiary or any the Personal Guarantor defaults in any payment of principal of or interest on any other obligation for money borrowed (or any obligation under conditional sale or other title retention agreement or any obligation issued or assumed as full or partial payment for property whether or not secured by purchase money mortgage or any obligation under notes payable or drafts accepted representing extension of credit) beyond any period of grace provided with respect thereto, or defaults in the performance or observance of any other agreement, term or condition contained in any agreement under which any such obligation is created (or if any other default under any such agreement shall occur and be continuing) and the effect of such default is to permit the holder or holders of such obligation (or a trustee on behalf of such holder or holders) to cause such obligation to become due prior to its stated maturity; or

(iv)    any representation or warranty made by the Borrower herein or in any writing furnished in connection with or pursuant to this Agreement shall contain material omissions or be false in any material respect on the date as of which made; or

(v)     the Borrower defaults in the performance or observance of any other agreement, term or condition contained herein and such default shall not have been remedied within 30 days after written notice thereof shall have been received by the Borrower from the Bank; or

(vi)    the Borrower, any Subsidiary or the Personal Guarantor makes an assignment for the benefit of creditors or is generally not paying its debts as such become due; or

(vii)   any order, judgment or decree is entered under the bankruptcy, reorganization, compromise, arrangement, insolvency, readjustment of debt, dissolution or liquidation or similar laws (herein called the "Bankruptcy Laws") of any jurisdiction adjudicating the Borrower, any Subsidiary or the Personal Guarantor bankrupt or insolvent; or

(viii)  the Borrower, any Subsidiary or the Personal Guarantor petitions or applies to any tribunal for, or consents to, the appointment of, or taking possession by, a trustee, receiver, custodian, liquidator or similar official, of the Borrower or any Subsidiary, or of any substantial part of the assets of the Borrower or any Subsidiary, or commences a

voluntary case under the Bankruptcy Law of the United States or any proceedings (other than proceedings for the voluntary liquidation or dissolution of a Subsidiary) relating to the Borrower or any Subsidiary under the Bankruptcy Law of any other jurisdiction, whether now or hereafter in effect; or

(ix)    any such petition or application is filed, or any such proceedings are commenced, against the Borrower or any Subsidiary or the Personal Guarantor and the Borrower or any Subsidiary or the Personal Guarantor by any act indicates its approval thereof, consent thereto or acquiescence therein, or an order for relief is entered in an involuntary case under the Bankruptcy Law of the United States, as now or hereafter constituted, or an order, judgment or decree is entered appointing any such trustee, receiver, custodian, liquidator or similar official, or approving the petition in any such proceedings, and such order, judgment or decree remains unstated and in effect for more than 30 days; or

(x)    any order, judgment or decree is entered in any proceedings against the Borrower decreeing the dissolution of Borrower and such order, judgment or decree remains unstated and in effect for more than 30 days; or

(xi)    failure to supply the Bank promptly with any information, documentation or agreement it may reasonably require; or

(xii)    failure to perform any agreement or obligation owing to a third party or to pay when due any Indebtedness to any third party for which the Borrower is liable, contingently or otherwise, whether such Indebtedness is accelerated or is required to be paid prior to its stated maturity, the non-performance or non-payment of which could have at the Bank's sole and absolute discretion adverse effect on the business, operations or financial status of the Borrower or the ability of the Borrower to perform obligations under this Agreement, or any lien is levied against the Borrower's assets; or

(xiii)    the Bank for any reason ceases to have a valid, enforceable and perfected security interest and lien upon any of the property of the Borrower described herein; or

(xiv)    the Borrower or the Personal Guarantor ceases to exist, dissolves, dies or becomes incompetent, or any action is commenced by or against the Borrower or the Personal Guarantor to accomplish any of the foregoing; or

(xv)    any adverse change in the security of the Credit Facility or in the financial condition of the Borrower or the Personal Guarantor or the ability of the Borrower or the Personal Guarantor to perform their obligations under this Agreement, in the sole opinion of the Bank; or

(xvi)    any letter of credit that is the subject of the Credit Facility shall be transferred, canceled or amended without the Bank's approval.

### 6.2.    Remedies.

Upon the occurrence of any Event of Default, the principal of and interest on the Note, and any other obligation of the Borrower (whether under the Note or otherwise) shall forthwith be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower. In addition, upon the occurrence and during the continuance of an Event of Default, the Bank may take any one or more of the following actions:

(i)    Immediately terminate the Credit Facility, upon which no further utilization of the Credit Facility shall be permitted and all direct debts, whether matured or unmatured, shall thereupon become immediately due and payable;

(ii)    Set-off against, appropriate and apply to any obligation of the Borrower to the Bank any debt owing from the Bank to the Borrower (whether or not then due), including without limitation, any deposit by the Borrower with the Bank (including any of its branches);

(iii)    Exercise any other remedy available to the Bank by law or in equity.

The Borrower shall pay all expenses of the Bank incurred in connection with the enforcement of this Agreement and collection and enforcement of the Note, including without limitation the fees and expenses of any counsel, consultants or advisors for the Bank. The rights and remedies provided the Bank hereunder are cumulative and not exclusive of any other rights or remedies available to the Bank under law. To the extent permitted by law, the Bank's rights and remedies may be exercised concurrently or separately and the exercise of any one remedy shall not be deemed to be an exclusive election of such remedy or to preclude the exercise of any other remedy. The Borrower waives trial by jury in any litigation (whether or not arising out of or relating to the Note, this Agreement or any of the matters contained in the Note or this Agreement) in which the Bank shall be an adverse party and the Borrower, in addition, waives the right to interpose any defense based upon any statute of limitations or any claim of laches and any set-off or counterclaim of any nature or description in any such litigation.

### 6.3.    Remedies Cumulative.

Each and every power and remedy herein specifically given to the Bank or otherwise in this Agreement or any other agreements shall be cumulative and shall be in addition to any other power and remedy herein specifically given or now or hereafter existing at law, in equity, or by statute and each and every power and remedy whether specifically in this Agreement or in any other agreements, given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Bank and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be an election of such power or remedy to the exclusion of any other, or a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by the Bank in the exercise of any right or power or in the pursuance of any remedy accruing upon any Event of Default shall impair any such right, power or remedy or be construed to be a waiver of any such event of default or to be an acquiescence therein; nor shall the acceptance by the Bank of any security or of any payment of or on account of any installment of principal of or interest on the Note maturing after any Event of Default or of any payment on account of any past Event of Default be construed to be waiver of any right to take advantage of any future Event of Default or of any past Event of Default not completely cured thereby. The Bank may waive any Event of Default by written notice to that effect to the Borrower, but no such waiver shall extend to or affect subsequent or other Event of Default or impair any rights or remedies consequent thereon.

### Section 7:    Representations, Covenants and Warranties.

The Borrower represents, covenants and warrants:

### 7.1.    Organization and Qualification.

The Borrower is a corporation duly organized and existing in good standing under the laws of the State of New York, each Subsidiary, if applicable, is duly organized and existing in good standing under the laws of the jurisdiction in which incorporated and the Borrower and each Subsidiary has the corporate power to own its respective property and to carry on its respective business as now being conducted.

### 7.2.    Financial Statements.

The Borrower will furnish the Bank with the financial statements, the balance sheet of the Borrower and its Subsidiaries, and profit and loss and surplus statements of the Borrower and its Subsidiaries for the year ended on such date, audited by a C.P.A. firm. Such financial statements (including any related schedules and/or notes) are true and correct in all material respects (subject, as to interim statements, to changes resulting from year-end adjustments) and are prepared in accordance with generally accepted accounting principles consistently followed throughout the periods involved and show all liabilities, direct and contingent, of the Borrower and its Subsidiaries required to be shown in accordance with such principles. The balance sheets fairly present the condition of the Borrower and its Subsidiaries as of the dates thereof, and the profit and loss and surplus statements fairly present the results of the operations of the Borrower and its Subsidiaries for the periods indicated. There has been

14

no material adverse change in the business, condition or operations (financial or otherwise) of the Borrower and its Subsidiaries since the date of this Agreement.

### 7.3.    Actions Pending.

There is no action, suit, investigation or proceeding pending or, to the knowledge of the Borrower, threatened against the Borrower or any of its Subsidiaries, or any properties or rights of the Borrower or any of its Subsidiaries before any court, arbitrator or administrative or governmental body which might result in any material adverse change in the business, condition or operations of the Borrower and its Subsidiaries.

### 7.4.    Title to Properties.

The Borrower has and each of its Subsidiaries has good and marketable title to all of its respective properties and assets, including the properties and assets reflected in the balance sheet hereinabove described (other than properties and assets disposed of in the ordinary course of business) subject to no lien of any kind. The Borrower and its Subsidiaries enjoy peaceful and undisturbed possession of all leases necessary in any material respect for the operation of their respective properties and assets, none of which contains any unusual or burdensome provisions which might materially affect or impair the operation of such properties and assets. All such leases are valid and subsisting and are in full force and effect.

### 7.5.    Taxes.

The Borrower has, and each of its Subsidiaries, if any, has filed all federal, state and other income and other tax returns which, to the best knowledge of the officers of the Borrower, are required to be filed, and each has paid all taxes as shown on said returns and on all assessments received by it to the extent that such taxes have become due. There is no tax, levy, impost, deduction, charge or withholding imposed by any governmental or taxing authority either (a) on or by virtue of the execution or delivery of this Agreement or the Note, or any other document to be furnished hereunder or, (b) on any payment of principal, interest, fees or other amounts to be made pursuant to this Agreement.

### 7.6.    Conflicting Agreements and Other Matters.

Neither the Borrower nor any of its Subsidiaries is a party to any contract or agreement or subject to any charter or other corporate restriction which materially and adversely affects its business, property or assets, or financial condition. Neither the execution nor delivery of this Agreement or the Note, nor fulfillment of, nor compliance with the terms and provisions hereof and of the Note will conflict with, or result in a breach of the terms, conditions or provisions of, or constitute a default under, or violate any covenants of, or result in any violation of, or result in the creation of any lien upon any of the properties or assets of the Borrower or any of its Subsidiaries, any agreement (including any agreement with shareholders), or any award of any arbitrator, instrument, order, judgment, decree, statute, law, rule or regulation to which the Borrower or any of its Subsidiaries is subject. Neither the Borrower nor any Subsidiary is a party to, or otherwise subject to any provision contained in, or instrument evidencing Indebtedness of the Borrower or such Subsidiary, any agreement relating thereto or any other contract or agreement (including its charter) which restricts or otherwise limits the incurring of the debt to be evidenced by this Agreement or the Note.

### 7.7.    Securities Acts.

Neither the Borrower nor any agent acting on its behalf has, directly or indirectly, taken or will take any action which would subject the issuance of the Note to the provisions of Section 5 of the Securities Act of 1933, as amended, or to the provisions of any securities or Blue Sky Law of any applicable jurisdiction.

### 7.8.    Regulation G, Etc.

Neither the Borrower nor any Subsidiary is engaged principally, or as one of its important activities, in the business of, extending credit for the purpose of purchasing or carrying margin stock (within the meaning of Regulation G or U of the Board of Governors of the Federal Reserve System).

Neither the Borrower nor any agent acting on its behalf has taken or will take any action which might cause this Agreement or the Note to violate Regulation G, T, U, or X or any other regulation of the Board of Governors of the Federal Reserve System or to violate the Securities Exchange Act of 1934, in each case as in effect now or as the same may hereafter be in effect.

### 7.9. Governmental Consent.

Neither the nature of the Borrower or of any Subsidiary, nor any of their respective businesses or properties nor any relationship between the Borrower or any Subsidiary and any other person, nor any circumstance in connection with the Loans or the issuance and delivery of the Note is such as to require any consent, approval or other action by or any notice to or filing with any court or administrative or governmental body (other than routine filings after the date of any closing with the Securities and Exchange Commission and/or State Blue Sky authorities) in connection with the execution and delivery of this Agreement, any Credit granted under this Credit Agreement, or the issuance and delivery of the Note or fulfillment or compliance with the terms and provisions hereof or of the Note.

### 7.10. Holding Company Status.

The Borrower is not a holding company, or a subsidiary or affiliate of a holding company, or a public utility, within the meaning of the Public Utility Holding Company Act of 1935, as amended, or a public utility within the meaning of the Federal Power Act, as amended.

### 7.11. Investment Company Status.

The Borrower is not an "investment company" or a company "controlled" by an "investment company" within the meaning of the Investment Company Act of 1940, as amended or an "investment adviser" within the meaning of the Investment Advisers Act of 1940, as amended.

### 7.12. Encumbrances.

Except for the security interest held by existing creditor(s), none of the properties or assets of the Borrower is subject to any encumbrance and no obligations of the Borrower have any priority, or are subject to any preferential arrangement, whether or not constituting a security agreement, in favor of any creditor or class of creditors, the repayment of principal or interest, or the right to receive income or revenue.

### Section 8:    Miscellaneous.

### 8.1. Expenses.

The Borrower agrees, whether or not the transactions hereby contemplated shall be consummated, to pay, and save the Bank harmless against liability for the payment of, all out-of-pocket expenses arising in connection with this transaction, all taxes, together in each case with interest and penalties, if any, and any income tax payable by the Bank in respect of any reimbursement therefor, which may be payable in respect of the execution, delivery and performance of this Agreement or the execution, delivery, acquisition and performance of any Note or Letter of Credit issued under or pursuant to this Agreement (excepting only any tax on or measured by net income of the Bank determined substantially in the same manner, other than the rate of tax, as net income is presently determined under the Code), all printing costs and the reasonable fees and expenses of any special counsel to the Bank in connection with this Agreement and any subsequent modification thereof or consent thereunder and in connection with the enforcement of this Agreement. The obligations of the Borrower under this Section 8.1 shall survive payment of all amounts due under the Note or any Letter of Credit.

### 8.2. Consent to Amendments.

This Agreement may be amended, and the Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if the Borrower shall obtain the Bank's prior written consent to such amendment, action or omission to act. Each holder of the Note at the time

16

or thereafter outstanding shall be bound by any consent authorized by this Section 8.2, whether or not such Note shall have been marked to indicate such consent, but any note or borrowings under the Note issued thereafter may contain a reference, or bear a notation referring, to any such consent. No course of dealing between the Borrower and the holder of the Note nor any delay in exercising any rights hereunder or under the Note shall operate as a waiver of any rights of any holder of such Note. As used herein and in the Note, the term "this Agreement" and references thereto shall mean this Agreement as it may, from time to time, be amended or supplemented.

### 8.3. Survival of Representations and Warranties.

All representations and warranties contained herein or made in writing by the Borrower in connection herewith shall survive the execution and delivery of this Agreement and of the Note and payment of the Note, regardless of any investigation made by the Bank or on its behalf.

### 8.4. Successors and Assigns.

All covenants and agreements in this Agreement contained by or on behalf of either of the parties hereto shall bind and inure to the benefit of the respective successors and assigns of the parties hereto, whether so expressed or not.

### 8.5. Accounting Terms.

All accounting terms not specifically defined herein shall be construed in accordance with generally accepted accounting principles consistently applied, except as otherwise stated herein.

### 8.6. Notices.

Any notice required or permitted to be given hereunder shall be in writing and shall be personally delivered, or transmitted by any prepaid reputable overnight courier, or transmitted by postage prepaid registered mail, or transmitted by telex or tele-copy (with postage mail confirmation) as follows:

to the Bank:

> Bank of Communications, New York Branch
> One Exchange Plaza,
> 55 Broadway, 31st & 32nd floor
> New York, New York 10006
> Attention: General Manager

to the Borrower:

> Ocean Development America, Inc.
> 13453-A Brooks Drive
> Baldwin Park CA 91706
> Attention: President

All notices and other communications shall be deemed to have been duly given on the date of receipt if delivered personally or by overnight courier, the date three days after posting if transmitted by mail, or the date of transmission if transmitted by telex or tele-copy, whichever shall first occur. Either party may change its address for purposes hereof by notice to the other party.

### 8.7. Descriptive Headings.

The descriptive headings of the several Sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

### 8.8. Right of Set-off.

17

Upon the occurrence and during the continuance of any Event of Default, the Bank is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final), at any time held and other Indebtedness at any time owing by the Borrower to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note and although such obligations may be unmatured. The Bank agrees to promptly notify the Borrower after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application. The rights of the Bank under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Bank may have.

### 8.9.   Satisfaction Requirement.

If any agreement, certificate or other writing, or any action taken or to be taken, is by the terms of this Agreement required to be satisfactory to the Bank, the determination of such satisfaction shall be made by the Bank in its sole and exclusive judgment exercised in good faith.

### 8.10.   Third Party Claims.

In case of the assertion in writing of any claim initiated or asserted by any person, firm, governmental authority or corporation other than the Bank (a "Third Party Claim") or the commencement of any litigation asserting a Third Party Claim which may give rise to any obligation of the Borrower to the Bank under the provisions of this Section 8.10, the Bank shall give notice thereof as provided hereunder as promptly as practicable after the Bank's receipt of such written assertion or the commencement of such litigation unless the failure to give such notice would not materially prejudice the Borrower (such notice to be given by the Bank not later than would materially prejudice the Borrower if it chose to defend such litigation as hereinafter provided). If the Borrower demonstrates to the Bank that the Borrower will be able to pay the full amount of potential liability in connection with any Third Party Claim, the Borrower may, at its sole cost and expense, upon written notice given to the Bank within thirty (30) days after its receipt of the Bank's notice under this Section 8.10, assume the defense, with counsel reasonably satisfactory to the Bank, of any such Third Party Claim or litigation, provided that the Borrower confirms in writing to the Bank the applicability of its indemnity to such Third Party Claim and the Borrower's sole liability (as between the Bank and the Borrower) with respect to all material elements of such Third Party Claim. If the Borrower assumes the defense of any such claim or litigation, the obligations of the Borrower hereunder as to such claim or litigation shall be limited to taking all steps necessary in the defense or settlement thereof and to holding the Bank harmless from and against any and all losses, liabilities, expenses and damages caused by or arising out of any settlement approved by the Borrower or any judgment in connection with such claim or litigation and the Bank shall make available to the Borrower such books and records in the Bank's possession as the Borrower may reasonably require in connection with such defense.   Except with the express prior written consent of the Bank, the Borrower shall not consent to the settlement or entry of any judgment arising from any such claim or litigation which in each case does not include as an unconditional term thereof the giving by the claimant or plaintiff, as the case may be, to the Bank of any unconditional release from all liability in respect thereof unless the Borrower has actually paid the full amount of any such settlement or judgment. The Bank shall be entitled to be consulted about (but not control) the defense of, and receive copies of all pleadings and other material papers in connection with, any such claim or litigation. If the Borrower does not assume the defense of any such claim or litigation, the Bank may defend the same in such manner as it may deem appropriate, including but not limited to, settling such claim or litigation after giving reasonable notice of the same to the Borrower on such terms as the Bank may deem appropriate, and the Borrower will promptly reimburse the Bank in accordance with the provisions of this Section 8.10, provided that the Bank shall provide the Borrower with copies of all pleadings and other material documents in connection with any such claim or litigation and that the Borrower is consulted about (albeit not in control of ) such litigation. Anything contained in this Section 8.10 to the contrary notwithstanding, (a) the Borrower shall not be entitled to assume the defense of any such claim or litigation if the Third Party Claim seeks an order, injunction or other equitable relief against the Bank; and (b) the Bank may defend any Third Party Claim to which the Bank may have a defense or counterclaim which the Borrower is not entitled to assert to the extent necessary to assert and maintain such defense or counterclaim, provided that, in either event, the Bank shall provide the Borrower with copies of all pleadings and other material documents in connection with any such claim or litigation and that the Borrower is consulted about (albeit not in control of) such litigation.

18

### 8.11. Governing Law.

This Agreement shall be construed in accordance with and governed for all purposes by the substantive law and public policy of the State of New York applicable to contracts made and to be wholly performed in that State. Each of the parties hereto submits to the venue and jurisdiction of the United States District Court for the Southern District of New York and the Supreme Court of the State of New York, New York County, for the purposes of adjudicating any dispute or controversy arising out of or in connection herewith. Each of the parties agrees that all controversies based upon, related to, arising from or in connection with the subject matter of this Agreement shall be litigated only in courts situated in the City and County of New York, State of New York and each party waives, to the fullest extent permitted by law any objection which it may at any time have as to the venue or forum of any such proceeding. Each party agrees that service of process in any such action may be made upon it in accordance with the provisions of Section 8.6 and that such service shall be as effective to confer personal jurisdiction as service by any other means or manner authorized by otherwise applicable provisions of law.

### 8.12. Delay.

No delay or omission by the Bank in the exercise of any right or power or in the pursuance of any remedy accruing upon any Event of Default shall impair any such right, power or remedy or be construed to be a waiver of any such event of default or to be an acquiescence therein; nor shall the acceptance by the Bank of any security or of any payment or on account of any installment of principal of or interest on the Note maturing after any Event of Default or of any payment on account of any past Event of Default be construed to be a waiver of any right to take advantage of any future Event of Default or of any past Event of Default not completely cured thereby. The Bank may waive any Event of Default by written notice to that effect to the Borrower, but no such waiver shall extend to or affect any subsequent or other Event of Default or impair any rights or remedies consequent thereon.

### 8.13. Severability.

Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or enforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

### 8.14. Offsets, Counterclaims and Defenses.

The Borrower will not claim or demand or be entitled to any offsets, counterclaims or defenses of any nature whatsoever which the Borrower may have against the Bank and no such offsets, counterclaims or defenses shall be interposed or asserted by the Borrower in any action or proceeding brought by the Bank and any such right to interpose or assert any such offsets, counterclaims or defenses in any such action or proceeding is hereby expressly waived by the Borrower.

### 8.15. Cross Default.

Either the Borrower or the Personal Guarantor or the Corporate Guarantor may from time to time have other loan obligations to the Bank. All loans and/or credit facility between the Borrower and the Bank shall be cross-defaulted so that a default in any loan obligation to the Bank shall be a default in all loan obligations to the Bank. The Bank shall have the right, at its sole and absolute discretion, to hold or withhold the mortgages or the security interest hereunder, until the full payment and satisfaction of all loans and/or credit facility between the Borrower or the Personal Guarantor or the Corporate Guarantor and the Bank.

### 8.16. Counterparts.

This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

### 8.17. Further Assurances.

The Borrower shall execute and deliver all such other documents and agreements and take all such other actions at its own cost and expense as the Bank or its counsel shall from time to time request in order to assure the Bank of the benefits of the rights granted to the Bank under this Agreement or any other agreements.

**8.18.    Entire Agreement.**

This Agreement and the documents referred to herein constitute the entire agreement of the parties hereto with respect to the subject matter hereof and shall supersede any prior expressions of intent or understandings with respect to this transaction.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed and delivered by their respective duly authorized officers as of the date and year first above written.

BANK:

**BANK OF COMMUNICATIONS,
NEW YORK BRANCH**

BY: _____
Li, De Cai
General Manager

BY: _____
Anders Lai
SVP & Senior Manager

(Corporate Seal)

BORROWER:

**OCEAN DEVELOPMENT AMERICA, INC.**

BY: _____
Xiaomin Zhang
President

SIGNATURE VERIFIED

20

BY: _____

Ye Hua Wang
**Chief Executive Officer**

SIGNATURE VERIFIED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x

BANK OF COMMUNICATIONS, NEW YORK BRANCH     Index No.

                 Plaintiff,

      -against-                            **VERIFIED COMPLAINT**

OCEAN DEVELOPMENT AMERICA, INC.,

                 Defendant.
-----------------------------------------------------------------x

Plaintiff, complaining of the Defendants, by its attorneys, Wu & Kao, P.L.L.C., respectfully alleges, upon information and belief, as follows:

## THE PARTIES

1.     That at all times hereinafter mentioned, Plaintiff, Bank of Communications, New York Branch ("Bank"), is and continues to be a federal branch of a foreign bank which is fully authorized to conduct banking business in the State of New York, having a place of business at 55 Broadway, New York, New York 10006.

2.     That at all times hereinafter mentioned, upon information and belief, Defendant, Ocean Development America, Inc. ("ODA") was and continues to be a California corporation having its principal place of business at 13453-A Brooks Drive, Baldwin Park, CA 91706.

## THE TRANSACTION

3.     On or about May 1, 2001, ODA executed and delivered a Revolving Note ("Note") to the Bank in the principal amount of five million five hundred thousand and 00/100 ($5,500,000.00) dollars with interest at a fluctuating rate equal at all times to one quarter (0.25%) of one percentage point per annum below the Prime Rate announced by the Bank from time to time

for the loan (the "Interest Rate") and the default rate of five percent (5%) per annum in excess of the applicable Interest Rate ("Default Rate") (a copy of the Note is annexed hereto and made a part hereof as Exhibit "A").

4.      The Bank is the holder of the Note at issue. The Note, as described above, names the Bank as payee, and was delivered to the Bank by Defendant ODA pursuant to the Credit Agreement dated May 1, 2001 ("Credit Agreement") (a copy of which is annexed hereto as Exhibit "B").

## AS AND FOR A FIRST CAUSE OF ACTION

5.      Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 4 above with the same force and effect as if set forth herein at length.

6.      Pursuant to the terms of the Credit Agreement, and Note executed by ODA through Xiaomin Zhang ("Zhang") and Ye Hua Wang ("Wang"), Defendant consented and agreed that the Credit Agreement, and Note shall be deemed contracts made under the laws of the State of New York and shall be governed by and construed in accordance with the laws of the State of New York. Furthermore, by executing these documents Defendant ODA, has consented to the personal jurisdiction of the courts of the State of New York to resolve disputes arising out of said documents (See section 8.11 of the Credit Agreement in Exhibit B).

7.     Defendant has failed to comply with the terms and conditions of the Credit Agreement and Note by failing and omitting to pay the principal sum of $3,618,791.55 as of August 23, 2003, together with interest thereon, due on the Note since March 1, 2002. Although payments have been duly demanded, Defendant has failed and refused to pay such payment.

8.    Annexed as Exhibit "C" is a statement by Plaintiff showing the amount of default loan due by ODA under the Credit Agreement with calculation of the interest applied thereto, the accrued regular interest charges, accrued default interest charges, and the total amount outstanding and due from the defendant.

9.    There is now due and owing to Plaintiff the principal sum of three million six hundred eighteen thousand seven hundred ninety-one and 55/100 ($3,618,791.55) dollars, plus unpaid accrued interest, default interest and late charges (e.g., from September 29, 2001 on the defaulted loan of $1,432,023.14 and from January 18, 2001 on the defaulted loan of $2,186,768.41 to August 21, 2003) in the amount of $852,621.83, totaling the sum of four million four hundred seventy-one thousand, four hundred thirteen and 38/100 ($4,471,413.38) dollars, as of August 21, 2003, together with interest, expenses and charges accruing to the date of judgment.

10.    No action has been commenced at law or otherwise for the recovery of any part of the sums due under the Credit Agreement and the Note.

11.    This is a valid claim and there is no defense to the aforesaid cause of action.

12.    None of the above-named defendants are infants or incompetents.

## AS AND FOR A SECOND CAUSE OF ACTION

13.    The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 12 as if fully set forth herein at length.

14.    The Credit Agreement further provides in its Section 6.2 that in the event the Bank requires immediate payment in full, and the lender brings a lawsuit against the Borrower(s), it will have the right to collect the costs as allowed by law as well as reasonable attorneys' fees (See Exhibit B).

3

15.    Defendant defaulted under the terms of the Note and Credit Agreement by not paying payments after due demand. As a result of defendant's default, plaintiff has been forced to retain counsel and commence the instant action for collection and enforcement.

16.    Pursuant to Section 6.2 of the Credit Agreement, defendant is liable for the costs and attorney's fees in connection with this action in a sum not yet determined.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A.    On the First Cause of Action, in the sum of four million four hundred seventy-one thousand, four hundred thirteen and 38/100 ($4,471,413.38) dollars, together with interest thereon to the date of judgment;

B.    On the Second Cause of Action in a sum not yet determined;

C.    Granting plaintiff such other and further relief as to this Court may seem just, proper, and equitable.

Dated: New York, New York
      September 19, 2003

ALLEN WU, ESQ.
WU & KAO, P.L.L.C.
Attorneys for Plaintiff
747 Third Avenue, 22nd Floor
New York, New York 10017
(212) 755-8880

AW/sz
W&K/G:\Banking Lit\BOCM-3-8263–Ocean Development\Verified Complaint\091903\18

WU & KAO, P.L.L.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK; COMMERCIAL DIVISION
------------------------------------------------------------------X

BANK OF COMMUNICATIONS,
NEW YORK BRANCH,

Index No. 603101/03

                      Plaintiff,

JUDGMENT

     -against-

OCEAN DEVELOPMENT AMERICA, INC.

                    Defendant.
------------------------------------------------------------------X

     This action having been commenced by the filing of a Summons and Verified Complaint on

October 2, 2003, under the above-referenced index number, the Complaint being verified on 17th

day of September, 2003; and the Summons and Verified Complaint having been sewed on the

defendant on October 6, 2003, and proof of service having been filed with the Clerk of this Court;

and the Verified Complaint alleging two causes of action; the first for payment of $5,500,000.00

due on Revolving Note, dated May 1, 2001; and a second cause of action for the costs and reasonable

attorneys's fees for incurred in bringing this action; and the Defendant having failed to answer the

Complaint or appear in this action;

     And the Plaintiff having received for the entry of a Default Judgment was made returnable

on April 12, 2004, oral argument was held on April 29, 2004, and the motion was submitted on June

7, 2004, and the court having rendered a decision and order, dated September 29, 2004 and entered

in the Office of Clerk on October 6, 2004, granted Default Judgment on Plaintiff's first cause of

action in the amount of $4,471,413.38, together with interest as prayed for allowable by law,

accruing from August 21, 2003 until the date of entry of Judgment, as calculated by the Clerk, and

thereafter at the statutory rate, together with cost and disbursements to be faxed by the Clerk upon

Submission of an appropriate bill of costs, and ordering the second cause of action which seeks

attorney's fees, is severed and referred to a Referee to hear and report as to the reasonable amount

of Plaintiff's attorney's fees and a referenced hearing having been on December 8, 2004, before the

Honorable Lancelot B. Hewitt, Special Referee, and Special Referee Hewitt having rendered a

report, dated February 9, 2005, and filed February 15, 2005, finding that the Plaintiff is entitled to

an award of attorney's fees in the sum of $12,534.75.

Now, on motion of Wu & Kao, P.L.L.C., attorneys for Plaintiff, it is

ADJUDGED that Plaintiff, Bank of Communications, New York Branch, with an office at

55 Broadway / One Exchange Plaza, New York, NY 10006, shall recover from Defendant, Ocean

Development America, Inc., 13453-A Brooks Drive, Baldwin Park, California 91706, the amount

$4,471,413.38, together with interest from August 21, 2003, in the sum of $ 402,427.20, together

with costs and disbursements to be taxed by the Clerk, in the amount of $~~570.00~~, for a total sum of

$4,874,210.58, and that Plaintiff shall have execution therefor.

Judgement entered this _14_ day of August 2006

_(signature)_

Clerk

FILED

AUG 14 2006

COUNTY CLERK'S OFFICE
NEW YORK

## PROPERTY SEARCH AGAINST

AP: 8535-024-003 Unit: 1
Address: 13453-A Brooks Dr
City: Baldwin Park
State: CA

**Fee Title Vested in:** HONGMING LI, and XIAOMIN ZHANG, husband and wife, as Joint Tenants, who acquired title by deed made by OCEAN DEVELOPMENT AMERICA, INC., dated June 24, 2004 and recorded August 17, 2004 in Instrument No. 04-2111649 in the Office of the Clerk of Los Angeles County.

### PARTIES SEARCHED

Hongming Li
Xiaomin Zhang

### RETURNS

| SEARCH | RETURNS | NONE FOUND |
|---|---|---|
| Judgments and liens (County) | | X |
| Federal Tax Liens | | X |
| County UCC | | X |
| Bankruptcies | | X |

## LAST DEED OF CONVEYANCE

This page is part of your document - DO NOT DISCARD

04 2111649

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
08/17/04 AT 08:00am

**TITLE(S):**  **DEED**

L E A D   S H E E T

FEE

FEE $10   SS
2

D.T.T
57.-

CODE
20

CODE
19

CODE
9

SURVEY, MONUMENT FEE $10, CODE 9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

8535 · 024 · 003          001

THIS FORM NOT TO BE DUPLICATED

InterTitle_PIST

Order: 26278468F Doc: CA:LA:DYI;2004.2111649    1 of 3 -

8/17/04

04 2111649

2

RECORDING REQUESTED BY
**INVESTORS TITLE COMPANY**
AND WHEN RECORDED MAIL TO

HONGMING LI
13453-A BROOKS DRIVE,
BALDWIN PARK, CA 91706

A P N  8535-024-003          Order No  14024911-9          Space Above This Line for Recorder's Use Only
                                                           Escrow No  2021383-RT

## CORPORATION GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS COUNTY $572.00
computed on full value of property conveyed, or
computed on full value less value of liens or encumbrances remaining at time of sale,
unincorporated area,  ☒ City of Baldwin Park, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
OCEAN DEVELOPMENT AMERICA, INC., A CALIFORNIA CORPORATION

organized under the laws of the State of California

hereby GRANT(S) to HONGMING LI, AND XIAOMIN ZHANG, HUSBAND AND WIFE AS JOINT TENANTS

the following described property in the City of Baldwin Park, County of Los Angeles State of California,

Legal description as per Exhibit "A" attached hereto and made a part hereof.


OCEAN DEVELOPMENT AMERICA, INC , A
CALIFORNIA CORPORATION

By  _Xiaomin Zhang_
     XIAOMIN ZHANG, President

Document Date  June 24, 2004

STATE OF CALIFORNIA
COUNTY OF Los Angeles  }ss
On 28th of June 2004  before me, MARY E. BELL
personally appeared  XIAOMIN ZHANG
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature  _[signature]_
              MEB

[notary seal: MARY E. BELL
Comm. #1457982
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires Sept 1, 2006]

Mail Tax Statements to  SAME AS ABOVE or Address Noted Below

InterTitle_PIST

8/17/04    Page No 9
            File No 14824911

3

**Exhibit A**
**LEGAL DESCRIPTION**

All that certain real property situate in the County of LOS ANGELES, State of California, described as follows

**PARCEL 1A**

AN UNDIVIDED 10 2553 PERCENT INTEREST IN AND TO PARCEL 5 OF PARCEL MAP NO 1228, IN THE CITY OF BALDWIN PARK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 239, PAGES 76 AND 77 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

**PARCEL 1B**

AN UNDIVIDED 45 3 PERCENT INTEREST IN AND TO ALL OF PARCELS 1 AND 6 OF PARCEL MAP NO 1228, AS SHOWN UPON A MAP FILED IN BOOK 239, PAGES 76 AND 77 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT THEREFROM ALL THOSE PORTIONS SHOWN AND DEFINED AS UNIT(S) 1 AND 2 NO THE CONDOMINIUM PLAN RECORDED MARCH 22, 1991 AS INSTRUMENT NO 91-408192 AND AMENDED APRIL 25, 1991 AS INSTRUMENT NO 91-592944, BOTH OF OFFICIAL RECORDS

**PARCEL 1C**

UNIT 1 AS SHOWN AND DEFINED IN THE CONDOMINIUM PLAN REFERRED TO ABOVE

APN No   8535-024-003

04 2111649



# MORTGAGES OF RECORD

# Mortgage Schedule

Title No.: KTA-X-36277-CA-LA

# 1.  Mortgage made by HONGMING LI, and XIAOMIN ZHANG, to FAR EAST NATIONAL BANK, in the amount of $500,000.00, dated 11/14/2005 and recorded 11/29/2005 in Instrument No. 05-2895466.

# 2.  Assignment of Leases and Rents between HONGMING LI, and XIAOMIN ZHANG, to FAR EAST NATIONAL BANK, Assignee, dated 11/14/2005 and recorded 11/29/2005 in Instrument No. 05-2895467.

# BANKRUPTCIES

# U.S. Party/Case Index

## Bankruptcy Name Search Results

**0 Total Party matches for selection ZHANG, XIAOMIN for ALL COURTS**

Search Complete

**Thu Feb 16 08:59:49 CST 2006**

**No Matches Found**

● Download (1 pages $ 0.00)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/16/2006 08:59:49 | | | |
| PACER Login: | kr0794 | Client Code: | |
| Description: | Bankruptcy srch pg. 1 | Search Criteria: | ZHANG, XIAOMIN |
| Billable Pages: | 1 | | |

### U.S. Party/Case Index - Home

**Search:** All Court Types | Appellate | Bankruptcy | Civil | Criminal
**Reports:** Court Code List | Date Range | Courts not on Index | Statistical Reports
**User Options:** Change Client Code | New Login | Billing History | PSC Home Page |
E-Mail PSC | Logout

?₂?? Help

U.S. Party/Case Index Bankruptcy Name Search Results

# U.S. Party/Case Index

## Bankruptcy Name Search Results

0 Total Party matches for selection LI, HONGMING for ALL COURTS
Search Complete
Thu Feb 16 08:59:28 CST 2006
No Matches Found

●Download (1 page $ 0.00)

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 02/16/2006 08:59:28 | | |
| PACER Login: | kr0794 | Client Code: |
| Description: | Bankruptcy srch pg 1 | Search Criteria: | LI, HONGMING |
| Billable Pages: | 1 | | 1 |

**U.S. Party/Case Index - Home**
Search: All Court Types | Appellate | Bankruptcy | Civil | Criminal
Reports: Court Code List | Date Range | Courts not on Index | Statistical Reports
User Options: Change Client Code | New Login | Billing History | PSC Home Page |
E-Mail PSC | Logout

??? Help

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BANK OF COMMUNICATIONS,                                    Case No.
NEW YORK BRANCH,

                              Plaintiffs,

        - against -

OCEAN DEVELOPMENT AMERICA, INC,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG,

                              Defendants.
------------------------------------------------------------X

## RULE 7.1 DISCLOSURE STATEMENT

        I hereby certify, pursuant to Rule 7.1, that plaintiff Bank of Communications, New York
Branch, does not have any corporate or other parents, subsidiaries, or affiliates, securities or other
interests which are publicly held.

                                        Respectfully submitted,

                                        WU & KAO

                                By: _____
                                        Jacob Ginsburg (JG 8981)
                                        Of Counsel
                                        747 Third Avenue, 22nd Floor
                                        New York, New York 10017
                                        (212) 755-8880

                                        Attorneys for Plaintiff
                                        Bank of Communications,
                                        New York Branch

# EXHIBIT B

California Business Search

# California Business Portal

Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of JUN 15, 2007 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
| --- | --- | --- |
| OCEAN DEVELOPMENT AMERICA, INC. | | |
| **Number:** C1476586 | **Date Filed:** 2/7/1990 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 13453A BROOKS DR | | |
| BALDWIN PARK, CA 91706 | | |
| **Agent for Service of Process** | | |
| PHILIP K YEUNG | | |
| 240-A S GARFIELD AVE | | |
| MONTEREY PARK, CA 91755 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# EXHIBIT C

AO 440  (Rev. 8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | 6/26/2007 |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| GONZALO PALACIOS | REGISTERED PROCESS SERVER |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant.  Place where served:

   240 S. GARFIELD AVE., STE. A, MONTEREY PARK, CA 91755, BY SERVING SUKI XIAO PERSON AUTHORIZED ON BEHALF OF PHILIP K. YEUNG- PRINCIPAL & AGENT

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | $49.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____6/26/2007_____        _____
                        Date                        Signature of Server

                        CC Solutions & Attorney Services
                        2511 W. 3RD ST., STE. 209, LOS ANGELES, CA 90057
                        Address of Server

_____
(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me(1) | DATE | 6/26/2007 |
| NAME OF SERVER (PRINT)<br>GONZALO PALACIOS | TITLE<br>REGISTERED PROCESS SERVER | |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where served:

      240 S. GARFIELD AVE., STE. A, MONTEREY PARK, CA 91755, BY SERVING SUKI XIAO PERSON
      AUTHORIZED ON BEHALF OF PHILIP K. YEUNG- PRINCIPAL & AGENT

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
    discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

**DECLARATION OF SERVER**

      I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    6/26/2007         _____
           Date              Signature of Server

                  CC Solutions & Attorney Services
                  2511 W. 3RD ST., STE. 209, LOS ANGELES, CA 90057
                  Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _6/26/07_, before me, _D. Azmi Notary Public_
Date                        Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Gonzalo Palacios_
                                          Name(s) of Signer(s)

D. AZMI
Commission # 1532632
Notary Public - California
Orange County
My Comm. Expires Dec 23, 2008

Place Notary Seal Above

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature of Notary Public

———————————————— **OPTIONAL** ————————————————
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____     Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org      Prod. No. 5907      Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT D

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me(1) | DATE | 6/21/2007 |
|---|---|---|

| NAME OF SERVER *(PRINT)*<br>GONZALO PALACIOS | TITLE<br>REGISTERED PROCESS SERVER |
|---|---|

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where served:

    13453- A BROOKS DR., BALDWIN PARK, CA 91706 BY SERVING PHIL LI- C.E.O.

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL<br>$49.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    6/22/2007                                
             Date                            *Signature of Server*

                            CC Solutions Process & Attorney Services
                            2511 W. 3RD ST., STE. 209, LOS ANGELES, CA
                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _6/22/07_, before me, _D. Azmi Notary Public_
Date                                 Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Gonzalo Palacios_
                                          Name(s) of Signer(s)

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence

**D. AZMI**
Commission # 1532632
Notary Public - California
Orange County
My Comm. Expires Dec 23, 2008

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above                         Signature of Notary Public

─────────────── **OPTIONAL** ───────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _____

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**
Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827