# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BANK OF COMMUNICATIONS,            07 civ. 4628 (TPG)
NEW YORK BRANCH,

                    Plaintiffs,

     -against-

OCEAN DEVELOPMENT AMERICA, INC.,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG,

                  Defendants

------------------------------------------------------------x

## MEMORANDUM OF LAW OF DEFENDANTS HONGMING LI AND XIAOMING ZHANG IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)

LAW OFFICES OF BING LI, LLC
1350 Broadway, Suite 1001
New York, NY 10018-0947
(212) 967-7690
(212) 658-9788 (facsimile)

Daniel P. Levitt, Esq. (DL 6020)
Co-Counsel
145 Griffen Avenue
Scarsdale, NY 10583
(914) 698-8193

Attorneys for Defendants Hongming Li
and Xiaoming Zhang

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. iv

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    A. Procedural History ............................................................................................. 2

    B. Factual Background ........................................................................................... 5

ARGUMENT

    Point I
    The Judgment Is Void As A Matter Of Law For Lack
    Of In Personam Jurisdiction Over The Defendants. ............................................... 10

    A.    Standard governing Rule 60(b)(4) motions ............................................... 10

    B.    Personal jurisdiction over non-domiciliaries ............................................. 11

    C.    New York law ............................................................................................ 11

    Point II
    The Judgment Is Void As A Matter Of Law For
    Insufficiency Of Service of process. ...................................................................... 13

    A.    New York law ............................................................................................ 15

    B.    California law ............................................................................................. 16

    C.    Plaintiff's proof of service under California law ........................................ 16

    Point III
    The Court Should Vacate The Default Judgment On
    The Ground That The Default Was Excusable And
    There Is A Meritorious Defense. ............................................................................ 19

    A.    The moving defendants' default was not willful. ....................................... 20

    B.    The moving defendants have a meritorious defense. .................................. 21

C.       There is no prejudice to plaintiff. ............................................................. 24

Point IV
The Court Should Set Aside The Judgment On The
Ground That It Was Obtained Through Misrepresentation
And Concealment Of Information From The Court. ............................................ 24

A.       Plaintiff has made misrepresentations to the Court. ................................... 25

B.       Plaintiff has concealed information from the Court. ................................. 27

C.       Plaintiff failed to make reasonable inquiry into
         the law and facts. ...................................................................................... 29

Point V
The Court Should Set Aside The Judgment To Accomplish Justice. ................... 29

CONCLUSION ................................................................................................................ 30

# TABLE OF AUTHORITIES

## Statutes and Court Rules

28 U.S.C. § 1404 ........................................................................................................ 23

California Civil Code § 3449 ................................................................................. 21, 23

California Civil Code of Procedure § 392 ................................................................. 23

California Civil Code of Procedure § 415.20 (b) ..................................................... 16

California Civil Code of Procedure § 416.90 ........................................................ 16, 18

California Civil Code of Procedure § 1713 ............................................................. 27

Federal Rules of Civil Procedure Rule 4(e) ........................................................... 14, 15

Federal Rules of Civil Procedure Rule 55(c) ..................................................... 1, 19, 20, 24

Federal Rules of Civil Procedure Rule 60(b) ......................................................... 1, 24, 29

Federal Rules of Civil Procedure Rule 60(b)(1) ..................................................... 1

Federal Rules of Civil Procedure Rule 60(b)(3) ..................................................... 1, 24

Federal Rules of Civil Procedure Rule 60(b)(4) ..................................................... 1, 10, 11, 13, 19

Federal Rules of Civil Procedure Rule 60(b)(6) ..................................................... 1

McKinney's Civil Practice Law and Rules 302 ....................................................... 11, 12, 13, 24

McKinney's Civil Practice Law and Rules 308 ....................................................... 15

McKinney's Civil Practice Law and Rules 507 ....................................................... 23

McKinney's Civil Practice Law and Rules 5301 ..................................................... 27

McKinney's Debtor and Creditor Law § 278 .......................................................... 21, 23

Uniform Fraudulent Conveyances Act .................................................................... 21, 23

Uniform Foreign Money-Judgment Recognition Act ............................................. 27

## Cases

A.I. Trade Finance, Inc. v. Petra Bank
989 F.2d 76 (2d Cir.1993) ....................................................................................... 24

American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.
92 F.3d 57 (2d Cir.1996) ........................................................................................ 20

Aquascutum of London v. S.S. American Champion
426 F.2d 205 (2d Cir.1970) .................................................................................... 13

Arbitron, Inc. v. Marathon Media, LLC
07 Civ.2099 (DC), 2008 WL 892366
(S.D.N.Y. April 1, 2008) (Chin, J.) ........................................................................ 14

Bensusan Restaurant Corp. v. King
126 F.3d 25 (2d Cir. 1997) ..................................................................................... 13

Commercial Bank of Kuwait v. Rafidain Bank
15 F.3d 238 (2d Cir.1994) ...................................................................................... 20

Eastern Financing Corp v. JSC Alchevsk Iron & Steel Works
No. 04 Civ. 8112(RPP), 2008 WL 2518700
(S.D.N.Y., 2008 June 24, 2008) .............................................................................. 25

Domond v. Great American Recreation, Inc.
116 F.Supp.2d 368 (E.D.N.Y. 2000) ...................................................................... 11

Dorrough v. Harbor Securities, LLC
99 CV 7589 (ILG), 2002 WL 1467745
(E.D.N.Y. May 10, 2002) (Glasser, J.) ................................................................... 19

Enron Oil Corp. v. Diakuhara
10 F.3d 90 (2d Cir.1993) ........................................................................... 10, 19, 20, 24

Espindola v. Nunez
199 Cal.App.3d 1389, 245 Cal.Rptr. 596 (1998) ................................................... 16, 18

F.D.I.C. v. O'Connor
94 Civ. 4218 (RWS), 2008 WL 88294
(S.D.N.Y. Jan. 3, 2008) (Sweet, J.) ........................................................................ 15

Fleming v. New York Univ.
865 F.2d 478 (2d Cir.1989) .................................................................................... 24

Jazini v. Nissan Motor Ltd.
148 F.3d 181 (2d Cir.1998) ...................................................................................... 11

Judith Ripka Creations, Inc. v. Rubinoff Imports, Inc.
03 Civ. 9377 (BSJ), 2004 WL 1609338
(S.D.N.Y. July 16, 2004) ...................................................................................... 24

Landoil Resources Corp. v. Alexander & Alexander Services, Inc.
918 F.2d 1039 (2d Cir.1990) ................................................................................. 13

Leab v. Streit
584 F.Supp. 748 (S.D.N.Y. 1984) ......................................................................... 11

Local 78, Asbestos, Lead & Hazardous Waste Laborers,
AFL-CIO v. Termon Construction, Inc.
01 Civ. 5589 (JGK), 2003 WL 22052872
(S.D.N.Y. Sept. 2, 2003) (Koeltl, J.) ...................................................................... 14

Neshewat v. Salem
365 F.Supp.2d 508 (S.D.N.Y. 2005) ....................................................................... 21

New York v. Green
420 F.3d 99 (2d Cir.2005) ...................................................................................... 20

Quevedo v. Postmaster, U.S. Postal Service
774 F.Supp. 837 (S.D.N.Y. 1991) ....................................................................... 29-30

Roberts v. Keith
04 Civ. 10079 (CSH), 2007 WL 2712853,
(S.D.N.Y. Sep. 18, 2007) (Haight, J.) ...................................................................... 10

S.E.C. v. McNulty
137 F.3d 732 (2d Cir.1998) .................................................................................... 20

In re Sharp International Corp.
403 F.3d 43 (2d Cir.2005) ...................................................................................... 22

Stafford v. Mach
64 Cal.App.4th 1174, 75 Cal.Rptr.2d 809 (1998) ................................................... 16

Triad Energy Corp. v. McNell
110 F.R.D. 382 (S.D.N.Y. 1986) ........................................................................ 11, 14

## Treatises

1 James Wm. Moore et al., Moore's Federal Practice § 4.03[1] (3d ed. 2000) ...... 19

37 Am.Jur.2d, Fraudulent Conveyances and Transfers § 173 (May 2008) ............ 24

Siegel, CPLR 302 McKinney Commentary, 302:6 (June 2008) ............................ 12-13

## PRELIMINARY STATEMENT

Defendants, Hongming Li and Xiaoming Zhang (the "moving defendants"), husband and wife, through their undersigned attorneys, respectfully submit this Memorandum of Law in support of their motion for an order pursuant to Rule 55(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Rule 60(b):

(i)     pursuant to Rule 60(b)(4) declaring that the judgment (in the form of an Order) entered in this action on March 10, 2008 in the amount of $4,874,210.58 (the "judgment") as against Ocean Development America, Inc. ("Ocean") and the moving defendants is void for lack of in personam jurisdiction;

(ii)    pursuant to Rule 60(b)(4) declaring the judgment void for lack of proper service of the summons and complaint;

(iii)   pursuant to Rule 55(c) and Rule 60(b)(1) setting aside the judgment based on the moving defendants' excusable neglect and the existence of a meritorious defense;

(iv)    pursuant to Rule 60(b)(3) setting aside the judgment based on plaintiff's misrepresentation and concealment of material facts from the Court;

(v)     pursuant to Rule 60(b)(6) setting aside the judgment because there exists other reasons justifying relief from the judgment; and

(vi)    granting the moving defendants such other and further relief as the Court deems just and proper.

For purposes of this motion, the Declaration of Xiaoming Zhang made the 15th day of July, 2008 ("Zhang Decl."), the Declaration of Hongming Li made the 15th day of July, 2008 ("H. Li Decl."), and the Declaration of Bing Li made the 15th day of July, 2008 ("B. Li

Decl."), together with the exhibits annexed thereto, are incorporated hereto by reference as if fully set forth herein.

## STATEMENT OF FACTS

The moving defendants are husband and wife and, at all relevant times, resided and still reside at 216 Linwood Avenue, # 3, Monrovia, CA 91016. (Zhang Decl., ¶ 6; H. Li Decl., ¶ 5) Ocean Development America, Inc. ("Ocean"), at all relevant times, was a California corporation and a fully owned subsidiary of a Chinese company. (Zhang Decl., ¶ 27) Plaintiff, Bank of Communications, New York Branch ("BOCNY"), is a branch banking institution located in the City and State of New York, which was, at all relevant times, a fully owned subsidiary of Bank of Communications of China ("BOC"). (B. Li Decl., Ex. K; Zhang Decl., Exs. P-R)

### A. Procedural History

According to plaintiff's complaint ("Compl.") filed in this Court, plaintiff in May 21, 2001 entered into a loan agreement with Ocean for a revolving credit facility of $5,500,000 (the "Loan Agreement"). Ocean subsequently defaulted on the Loan Agreement and in October 2003 BOCNY commenced a legal action against Ocean in Supreme Court, New York County, Index No. 603101/03. When Ocean failed to respond in the New York action, the court entered a default judgment in the amount of $4,874,210.58 (the "NY Judgment"). (A copy of the complaint filed in this action is annexed to the B. Li Declaration as Exhibit C.)

Plaintiff commenced the present action on June 1, 2007. The compliant shows that plaintiff's First Cause of Action was against Ocean seeking relief of "Entry of a Federal Judgment" based on the NY Judgment. Plaintiff's Second Cause of Action was against the individual defendants based on allegations that they had transferred a piece of real property of

- 2 -

Ocean located at 13453-A Brooks Drive, Baldwin Park, California (the "Property"). Plaintiff

alleged that on June 24, 2004 "defendant Xiaoming Zhang unlawfully and fraudulently

conveyed the [Property] to defendants Hongming Li and Xiaoming Zhang, husband and wife

as joint tenant." Plaintiff also alleged that in November 2005, the moving defendants

"unlawfully and fraudulently mortgaged the [Property] in the amount of $500,000" (the

"Mortgage"). There were no other allegations as to why the Mortgage was "unlawfully and

fraudulently" taken. Based on this allegation, plaintiff invoked New York Debtor and

Creditor Law for relief against the individual defendants, specifically, Section 273

(conveyance without fair consideration), 273-a (conveyance without fair consideration

knowing the transferor was a defendant in an action seeking money judgment), and 276

(actual intent to hinder, delay and defraud transferor's creditors). Plaintiff sought judgment

setting aside the conveyance of the Property and the Mortgage and a money judgment "for the

rental value of the [Property] and interest on the [Mortgage] while [the moving defendants]

actually had the use of the fraudulently conveyed [Property] and [Mortgage]."

By letter undated but acknowledged on July 23, 2007, the moving defendants jointly

wrote to the Clerk of this Court, stating that (i) on July 18, 2008 they had sent a letter to the

Court; (ii) they had heard there was a lawsuit filed by BOCNY against Ocean and the moving

defendants; (iii) they "did not receive any Summons documents from the plaintiff or plaintiff's

attorney at law now"; (iv) they "were not owners or stocks shareholders of [Ocean]"; (v) that

"Shantou Ocean Audio-Video General Corporation in China" was the 100% shareholder of

Ocean; and (vi) they "are the [sic.] California residents" and "have not been [sic.] lived in

New York State before." (Zhang Decl., Ex. A)

- 3 -

According to plaintiff's letters submitted to the Court and an Affirmation of Attorney Allen Wu, the Court on August 13, 2007 forwarded the moving defendants' letters to plaintiff for response. (B. Li Decl., Exs. E, G-H) Further according to its submissions, plaintiff's counsel represented that they sent a letter dated August 14, 2008 to the moving defendants, which they aver was not received. (Zhang Decl., ¶ 15) In addition, plaintiff's counsel submitted that they attempted to contact the moving defendants by making "several (over 10) calls to Defendants and left voicemail messages" and subsequently four additional calls, but received no further responses.

By Notice dated October 12, 2007, plaintiff filed a motion for default judgment. (B. Li Decl., Ex. E) The motion for default judgment was supported solely by an affirmation of Attorney Allen Wu, a member of the law firm Wu & Kao, counsel of record for plaintiff, dated October 12, 2007, a proposed "Order," and four exhibits--Ex. A, a copy of the complaint; Ex. B, a California Business Portal of Ocean; Ex. C, a Return of Service dated June 26, 2007; and Ex. D, another Return of Service dated June 21, 2007. On March 10, 2008, the Court signed plaintiff's proposed Order. (B. Li Decl., Ex. B)

Since their submission of the letters in July 2007, the moving defendants had not received any court documents or papers in this action. On June 17, 2008, four months after the default judgment, the moving defendants received a letter dated June 11, 2008 from plaintiff's attorney, notifying them of the default judgment and stating that "[plaintiff's counsel] have full intention to enforce the Judgment against any real property [the moving defendants] own." (Zhang Decl., ¶ 14, Ex. B)

Upon receipt of the June 11 letter, the moving defendants immediately contacted and retained counsel in New York.

**B. Factual Background**

The moving defendants declare as true in support of this motion the following facts:
They first came to the United States in 1994 and since 1996 have always lived and worked in
California, at 216 Linwood Avenue, #3, Monrovia, California 91016. In October 1994, the
couple visited New York on a 2-3 day tour and in May 2000 the husband and wife visited
New York again on a 3-4 day tour. Aside from these two visits, the moving defendants have
never visited New York; never lived anywhere in New York; never worked anywhere in New
York; have never conducted business in their individual capacities anywhere in New York (or
in California); have never conducted or transacted any business in New York; have never
made any contracts in New York to be performed in or outside New York; have never owned
real property located anywhere in New York. While Xiaoming Zhang signed the Loan
Agreement on May 1, 2001, she did so as a representative of Ocean and did so in California.
(Zhang Decl., ¶¶ 6-9; H. Li Decl., ¶ 5)

The moving defendants further declare that they had never been served with plaintiff's
summons and complaint, personally or "by substitute service" on "June 21, 2007" or at any
other time. Despite the fact that the moving defendants had provided in their letters the
address of their actual residence in California, the record shows that plaintiff did not attempt
service at this residence or send any other court papers, including its motion for default
judgment to this address. (B. Li Decl., Exs. E-F)

Regarding the alleged fraudulent transfer of the Property, the moving defendants state
as follows: The fair market value of the Property in June 2004 was about $560,000. At the
time of its transfer, Ocean had a mortgage loan secured by the Property in the amount of
$409,944. The moving defendants purchased the Property for $520,000, in light of the fact

that a real estate agent was not involved thereby saving a broker's commissions of about $33,600. Initially, the Property was appraised at $550,000, but after the sales contract was signed, it was re-appraised for $560,000. The moving defendants took a loan from Standard Saving Bank for $364,000. At the closing, the moving defendants paid off Ocean's existing mortgage of $409,944.61, and paid Ocean a check in the amount of $78,442.96. The transfer of the Property was in compliance with the authorization of Ocean's Chinese parent company to wind up Ocean's business. In November 2005, the moving defendants took a mortgage loan for $500,000 from Far East National Bank as a refinanced loan. The rentals from the Property were about $20,000 a year. (Zhuang Decl., ¶¶ 22-26, Exs. C-K)

The moving defendants further describe the relationship between plaintiff and Ocean's parent company in China. Ocean was a California corporation incorporated in 1990. SANTOU OCEAN AUDI-VIDEO GENERAL CORPORATION ("Shantou Ocean") was, in 1991, a company located in Shantou City, Guangdong Province, the People's Republic of China, and was and had always been a fully owned enterprise of the Shantou City Government. From Ocean's inception, Shantou Ocean was and had always been the sole owner of Ocean, owning 100% of its issued and outstanding stock. In January 1991, the Government of Guangdong Province approved the name change of Shantou Ocean to SHANTOU OCEAN ENTERPRISES (GROUP) COMPANY. (the "Group") without change in operations or ownership. When Ocean was formed, Mr. Guo Jun Wei was president in charge of the business operations of Ocean. In 1996, Xiaoming Zhang was employed by Ocean as its Office Manager. She was first promoted to the position of Vice President in 1997 and in 1998 to the position of President, responsible for its daily business operations in the U.S. (Zhang Decl., ¶¶ 21-32, Exs. L, M and N)

In 1991, Ocean purchased a warehouse located at 13453 Brooks Drive, Unit A, City of Baldwin Park, CA 91706 (the "Property"). Plaintiff was aware that the objective for forming Ocean in the United States was to facilitate raising capital for the Group and to process international account receivables and account payables. Plaintiff (BOCNY) and its parent Bank of Communications in China (BOC) were and have always been state-owned banking institutions of the People's Republic of China. In the years leading up to May 1, 2001, the senior managements of BOC and the Group had been in talks about a business credit loan of multiple million dollars. In 1998, BOCNY had already approved a revolving credit line of $3,000,000. In 1999, the Group directed Ocean to submit an application to BOCNY, for an increase of the credit line by another $3,000,000. BOC eventually approved an aggregate credit line of $5,500,000, on condition that the Group make a Promissory Note and agree to deposit at BOC Shantou Branch, China, no less than 20,000,000 Chinese Yuan each month (the conversion ratio between Yuan and Dollar was then about 9:1). As a result, even before the Credit Agreement was entered into on May 1, 2001, BOCNY had been paying outstanding invoices for the Group, including two dated September 23 and 26, 2000, respectively, issued by SK Global Co., Ltd. of South Korea for Styrene Monomer sold to the Group and its domestic subsidiaries in the amount over four million dollars. In May 2001, the Group directed Xiaoming Zhang to sign a Credit Agreement with the BOCNY, which provides for a revolving line of credit of $5,500,000. Xiaoming Zhang complied and signed the Agreement as President of Ocean. Wang Ye Hua, who was then Assistant to the General Manager of the Group, signed the Credit Agreement as "Chief Executive Officer." The revolving line of credit was secured by a cash collateral of $2,000,000 put forth by the Group. (Zhang Decl., ¶¶ 33-37, Ex. P)

Despite the Credit Agreement and any pre-existing loan agreement between BOC and

the Group, the Group was unable to provide Ocean with adequate funds to pay to BOCNY,

causing Ocean to be in default of the Credit Agreement. By November 11, 2001, the total

outstanding balance on the credit line was approximately $3,620,000. The Group explained

to BOCNY that the Group's indebtedness was included in the Group's global debt

restructuring undergoing at that time. By letter dated November 1, 2001, BOCNY's Loan

Department complained about the slow process of the Group's loan restructuring as follows:

> ... Regarding the serious delinquency of your company in repaying the loan of $3,620,000.00, the restructuring work progresses very slowly, a lot of materials are yet to be provided by your parent company Shantou Ocean Enterprises (Group) Company, as your parent company is a guarantor of the loan and should participate and support the restructuring work of the overdue loan.
> ...

Six days later, by letter dated November 7, 2001, BOCNY objected to the

restructuring proposals made by the Group, stating as follows:

> ...
> 1. The problems with the U.S. company's business operations were caused by the Parent Company's misappropriation of funds and its deferring payments on the loan. The loan proceeds were directly paid to overseas suppliers of raw materials in accordance with the terms of the loan agreement, and the raw materials purchased were directly shipped by the suppliers to China, for use by your company and your subsidiaries. In this whole process, the U.S. company was just an intermediary, did not directly get involved in the loan proceeds. Your subsidiary companies did not return the loan proceeds to the U.S. company, which, in turn, caused its cash flow problems and its inability to pay the loan proceeds on time. On this issue, your company should not and cannot brush away your responsibilities.
>
> 2. At the time this loan facility was established, your company promised to be the guarantor of the loan and issued guaranty letter. This guarantee responsibility is continuous, that is to say, as long as Ocean Development America owes this Bank any loan amount, this guarantee responsibilities will continue to be effective. No matter how your company will reform itself, your written promise of loan guarantee will not be terminated.
>
> ...

(Zhang Decl., ¶¶ 38-43, Exs. Q-R)

To alleviate the cash flow problems and financial crisis facing Ocean around the time of its default, the Group authorized Xiaoming Zhang to refinance an existing mortgage loan of Ocean with Bank of China, Los Angeles Branch. On October 20, 2001, Far East National Bank approved a mortgage of $429,000. However, the financial situation of the Group did not improve. Moreover, the mounting costs and expenses in maintaining the business operations of Ocean, including payment of salaries, added new problems to the Group. Since 2003, Ocean did not have funds to pay employees' full salaries, including the moving defendants. As a result, the Group decided to wind up Ocean's business. (Zhang Decl., ¶¶ 44-45, Ex. E)

From the beginning, BOCNY had always been aware of Ocean's ownership of the Property and since as early as November 2001 Ocean had defaulted on the credit line facility. However, BOCNY did not commence any legal action until the end of 2003, and has not done anything to collect payment from the Group. In fact, the Group is still active and doing business in China. BOCNY, also a state-owned banking institution, could have taken any number of legal or non-legal actions to collect its loan, if it had really intended to. Having no intention to commence action in the U.S. or China against a fellow state-owned enterprise, BOCNY has wrongfully resorted to take down the moving defendants, who had nothing to do with the application for the loan, with the use of the loan and with the guarantees. (Zhang Decl., ¶¶ 46-47)

For the reasons stated herein, the Court is requested to grant the moving defendants the relief sought herein.

## ARGUMENT

### POINT I

### THE JUDGMENT IS VOID AS A MATTER OF LAW FOR LACK OF IN PERSONAM JURISDICTION OVER THE DEFENDANTS.

#### A.  Standard governing Rule 60(b)(4) motions

Rule 60(b), made applicable by Rule 55(c) regarding setting aside default judgments, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; ... (6) any other reason that justifies relief."

Motions to vacate default judgments are to be granted liberally, in order that trials on the merits may be had and justice done. See e.g., Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir.1993) (failure to answer second amended complaint should be held not willful where pro se defendant, who had timely answered prior complaints, noticed the plaintiff and the court in writing that he did not receive second amended complaint). In considering such a motion, all doubts must be resolved in favor of the defaulting party. Id., at 96. Motions to vacate default judgments are usually addressed to the sound discretion of the trial judge. Roberts v. Keith, 04 Civ. 10079 (CSH), 2007 WL 2712853, at *2 (S.D.N.Y. Sep. 18, 2007) (Haight, J.). "It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits." Id. "'[D]efaults are generally disfavored and are reserved for rare occasions. ...' Thus doubts must ordinarily be resolved in favor of the defaulting party." Id.

But when a judgment entered against the defaulting party is void, the Court has no

discretion and is compelled to grant the motion because a void judgment cannot be enforced.

See e.g., Domond v. Great American Recreation, Inc., 116 F.Supp.2d 368, 375 (E.D.N.Y.

2000) (vacating default judgment for lack of personal jurisdiction under New York long-arm

jurisdiction statute) (citations omitted).  See also Triad Energy Corp. v. McNeil, 110 F.R.D.

382, 385 (S.D.N.Y. 1986) ("A 'void' judgment is one where, *e.g.,* the Court lacked personal or

subject matter jurisdiction or the entry of the order violated due process."); Leab v. Streit, 584

F.Supp. 748, 760-61 (S.D.N.Y. 1984) ("A judgment rendered without in personam

jurisdiction is void. [citations omitted] The Court has no choice but to vacate a void

judgment pursuant to Rule 60(b)(4).")

## B. Personal jurisdiction over non-domiciliaries

Personal jurisdiction over a non-resident defendant in a federal diversity action is

determined by the law of the forum state.  Jazini v. Nissan Motor Ltd., 148 F.3d 181, 183-4

(2d Cir.1998) (affirming district court's grant of Japanese automobile manufacturing

corporation's motion to dismiss for lack of personal jurisdiction, holding that plaintiffs had

failed to make a prima facie showing that the foreign corporation was subject to personal

jurisdiction in New York based on the presence in New York of its American subsidiary).  As

a result, the court must look to New York law to determine whether a plaintiff has made a

prima facie showing of personal jurisdiction.

## C. New York law

Section 302(a)[1] of the New York Civil Practice Law and Rules ("CPLR") provides for

the long-arm jurisdiction over non-domiciliaries.[2]

---

[1] CPLR 302(b) provides for additional grounds in matrimonial actions.

Plaintiff BOCNY does not specify the particular jurisdictional theory it believes applies in this case and fails to make a prima facie showing of jurisdiction in its complaint. In fact, in plaintiff's Second Cause of Action directed only to the moving defendants, plaintiff admits that the alleged fraudulent transfer of the Property in June 2004 and the mortgage taken in November 2005 "occurred in California" and "form[ed] the basis for this cause of action." (Compl. ¶ 16)

Nor will plaintiff be able to establish any prima facie showing of in personam jurisdiction over the moving defendants under CPLR 302(a)(1) through (4).[2] The moving defendants aver, nor can plaintiff show otherwise, that the only times they ever set foot in New York were as tourist in 1994 on a 2-3 day tour and in 2000 on a 3-4 day tour. They have never conducted business in their individual capacities anywhere in New York (or in California); never transacted any business within New York; never solicited business in any form in New York; never made any contract anywhere "to supply goods or services" in New York; and never "own[ed], use[d] or possess[ed] any real property situated within the state." (Zhang Decl., ¶¶ 7-8; H. Li Decl., ¶ 5) See Siegel, CPLR 302 McKinney Commentary, 302:6

---

[2] The text of CPLR § 302(a) reads as follows:

> 302. Personal jurisdiction by acts of non-domiciliaries.
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered. in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.
>
> ...

(June 2008) ("The first prong of CPLR 302(a)(1) provides a basis of long-arm jurisdiction over a defendant who, in person or through an agent, transacts any business within the state if the plaintiff's claim arises from the transaction.") See also Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1044-45 (2d Cir.1990) (stating that if a foreign corporation engages in substantial solicitation in New York State, courts have engaged in a "solicitation-plus" analysis for purposes of determining whether presence jurisdiction exists); Aquascutum of London v. S.S. American Champion, 426 F.2d 205, 209-10 (2d Cir.1970) (explaining the "solicitation-plus" doctrine, stating that "all the cases we have discovered which find personal jurisdiction under the 'solicitation-plus' rubric have involved either some financial or commercial dealings in New York").

Furthermore, CPLR 302(a)(2) and (3) do not apply to plaintiff's claim of fraudulent transfer as it was not "a tortious act" within the meaning of the statute. See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir.1997), stating that CPLR § 302(a)(3) extends jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to persons or property within the state" but only if the defendant engages in certain level of business activity in the state.

Accordingly, the Court is requested to grant the moving defendants' motion pursuant to Rule 60(b)(4) and declare the judgment void for lack of in personam jurisdiction.

## POINT II

### THE JUDGMENT IS VOID AS A MATTER OF LAW FOR INSUFFICIENCY OF SERVICE OF PROCESS.

The procedural requirement of effective service of process must be satisfied before a court can assert personal jurisdiction over a defendant. A judgment obtained in the absence of personal jurisdiction is void within the meaning of Rule 60(b)(4). "Hence, a default judgment

- 13 -

entered against the defendant by means of improper service is void under Rule 60(b)(4)."
Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Construction,
Inc., 01 Civ. 5589 (JGK), 2003 WL 22052872 at *2 (S.D.N.Y. Sept. 2, 2003) (Koeltl, J.)
(declaring a default judgment void upon finding that the local union failed to effect valid
service of process of summons and complaint on the employer).  See also McNell, 110 F.R.D.
at 385 (setting aside a default judgment for improper service, notwithstanding defendants'
constructive or actual notice of suit); Leab, 584 F.Supp. at 760-61 (finding service of
summons on defendant's aunt ineffective who was also receptionist at defendant's purported
place of business, although on person of suitable age and discretion under New York personal
service statute).

Service of summons and complaint issued by a federal district court on individuals
within a judicial district of the United States is governed by Fed.R.Civ.P. 4(e).[3]  Under Rule
4(e)(1), service of a summons and complaint may be served either in compliance with New
York law or California law.  Arbitron, Inc. v. Marathon Media, LLC, 07 Civ.2099 (DC),
2008 WL 892366 (S.D.N.Y. April 1, 2008) (Chin, J.).

As more fully appears herein, plaintiff's purported service on the individual defendants
was defective as a matter of both New York and California law.

---

[3] The text of Rule 4(e) reads as follows:

  (e) Serving an Individual Within a Judicial District of the United States.
  Unless federal law provides otherwise, an individual -- other than a minor, an incompetent person, or a
  person whose waiver has been filed -- may be served in a judicial district of the United States by:
  (1) following state law for serving a summons in an action brought in courts of general jurisdiction in
  the state where the district court is located or where service is made; or
  (2) doing any of the following:
    (A) delivering a copy of the summons and of the complaint to the individual personally;
    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable
    age and discretion who resides there; or
    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of
    process.

### A. New York law

In F.D.I.C. v. O'Connor, 94 Civ. 4218 (RWS), 2008 WL 88294 at *1 (S.D.N.Y. Jan. 3,

2008) (Sweet, J.), the Court, vacating a default judgment entered 13 years ago upon finding

improper service, succinctly stated the requirements for service of summons and complaint

under Rule 4(e) and CPLR 308, as follows:

> Under Fed.R.Civ.P. 4(e), service may be effected pursuant to New York state
> law; by personally delivering a copy of the summons and complaint to the
> individual, leaving copies of the summons and complaint "at the individual's
> dwelling house or usual place of abode with some person of suitable and
> discretion then residing therein"; or by serving an authorized agent of the
> individual.
>
> New York allows service to be effected by: (1) personal service; (2) delivery of
> the summons "to a person of suitable age and discretion at the actual place of
> business, dwelling place or usual place of abode of the person to be served"
> and mailing a copy of the summons to the person's last known residential
> address or actual business address; (3) service upon a designated agent; (4)
> **where service by the first and second methods "cannot be made with due**
> **diligence** ... by affixing the summons to the door of either the actual place of
> business, dwelling place or usual place of abode" of the person and mailing a
> copy of the summons to the person's last known residential address or actual
> business address (often called "nail and mail" service); and (5) other manner
> directed by the court.  N.Y.C.P.L.R. § 308 (Consol.2007).

Emphasis added.

Here, plaintiff represented that service on the individual defendants was effected by

"substitute service" on June 21, 2008. (Li Decl., Ex. E, ¶¶ 5-6).  However, because no

certification was submitted to show that service by the first and second methods under CPLR

308(1) and (2) "cannot be made with due diligence" (CPLR 308(4)), plaintiff's alleged

"substitute service" was facially defective under New York law.  It follows that an analysis of

service requirements under California law is necessary.

## B. California law

Section 415.20 (b) of the California Civil Code of Procedure ("CCP") provides for

substituted service as follows:

> If a copy of the summons and complaint cannot **with reasonable diligence** be
> personally delivered to the person to be served, as specified in Section ...
> 416.90, a summons may be served by leaving a copy of the summons and
> complaint at the person's dwelling house, usual place of abode, usual place of
> business, or usual mailing address other than a United States Postal Service
> post office box, in the presence of a competent member of the household or a
> person apparently in charge of his or her office, place of business, or usual
> mailing address other than a United States Postal Service post office box, at
> least 18 years of age, who shall be informed of the contents thereof, **and by**
> **thereafter mailing a copy of the summons and of the complaint by first-**
> **class mail, postage prepaid to the person to be served at the place where a**
> **copy of the summons and complaint were left.** Service of a summons in this
> manner is deemed complete on the 10th day after the mailing.

Emphasis added.

CCP § 416.90 provides that "[a] summons may be served on a person not otherwise

specified in this article by delivering a copy of the summons and of the complaint to such

person or to a person authorized by him to receive service of process."

The California courts have held that two or three attempts at personal service at a

proper place should satisfy the requirement of "reasonable diligence" under CCP § 415.20(b)

and allow substituted service to be made. Espindola v. Nunez, 199 Cal.App.3d 1389, 1392,

245 Cal.Rptr. 596 (1998); see also Stafford v. Mach, 64 Cal.App.4th 1174, 1182, 75

Cal.Rptr.2d 809 (1998).

## C. Plaintiff's service under California law

Here, as no certification was submitted to show that plaintiff's process server had

made the required "two or three attempts at personal service" on the individual defendants, the

service under California service statute is similarly defective. Nor is plaintiff's certification of

- 16 -

service legally sufficient to establish service on the individual defendants. The only evidence submitted by plaintiff in this action regarding service is Docket No. 3, filed on July 13, 2007. (B. Li Decl., Ex. D)  Docket No. 3 consists of six pages, appearing to be three Returns of Service. The first Return of Service ("Return # 1"), the first 2 pages of the composite document, shows that Gonzalo Palacios, a registered process server, stated under oath that on June 26, 2007 he "[s]erved personally upon the defendant" at "240 S. CARFIEDL AVE., STE A, MONTEREY PARK, CA 91755, BY SERVING SUKI XIAO PERSON AUTHORIZED ON BEHALF OF PHILIP K. YEUNG - PRINCIPAL & AGENT." However, the Process Server failed to identify **which** "defendant" he was serving. Additionally, "Philip K. Yeung" was not a defendant, and whether "Suki Xiao" was authorized to receive service on behalf of Philip K. Yeung is irrelevant to whether service was properly made on the individual moving defendants.

The second "Return of Process" ("Return # 2"), pages 3 and 4 of the composite document, shows that Gonzalo Palacios stated under oath that on June 21, 2007 he "[s]erved personally upon the defendant" at "13453-A BROOKS DR., BALDWIN PARK, CA 91706 BY SERVING PHIL LI - C.E.O." However, once again, the Process Server failed to identify **which** defendant he was serving at that time or that Phil Li was authorized to accept service for that individual defendant.

The third purported "Return of Process" ("Return # 3"), pages 5 and 6 of the composite document, is identical to Return # 1, except that the service fees of $49 was inserted in Return # 3.

In his Affirmation, Attorney Wu referred to Exhibit D as proof of service on defendant Hongming Li. Exhibit D attached to Attorney Wu's affirmation is in fact Return # 2 (dated

- 17 -

June 21, 2007, serving on "Phil Li - C.E.O."). Nowhere in Return # 2 does the Process Server state that service of the complaint was being made on Hongming Li. Nor did the Process server specify that Phil Li was authorized by Hongming Li to accept service on his behalf under CPP § 416.90 (requiring delivery of summons and complaint "to such person or to a person authorized by him to receive service of process"). Clearly, "Phil Li" was not and could not have been the "C.E.O." of Hongming Li.

In any event, plaintiff admits that the purported service on Hongming Li was by "substitute service." (Wu Aff., ¶ 5) As such, even more fatal to plaintiff's position is that plaintiff's California process server failed to make any attempts at personal service on Hongming Li **before** resorting to substituted service. CCP § 416.90; Espindola, 199 Cal.App.3d at 1392 (requiring two or more attempts at personal service before substituted service is allowed). Additionally, plaintiff's process server failed to aver that he mailed the summons and complaint to the individual defendants in the manner required by CCP § 415.20(b). Furthermore, both Returns of Service fail to satisfy CCP § 417.10(a), which requires proof of service to show "the time, place, and manner of service and facts showing that the service was made in accordance with this chapter."

With respect to proof of service on Xiaoming Zhang, Attorney Wu referred to a certain Exhibit E annexed to his affirmation. (Wu Aff., ¶ 6) However, there is **no** Exhibit E attached to Attorney Wu's Affirmation, and no such proof of service on Xiaoming Zhang exists.

Based on the Returns of Service, the best plaintiff can argue is that it may have served corporate defendant Ocean, first by serving on "Phil Li -C.E.O." on June 21, 2007 and then on "Philip K. Yeung - Principal & Agent" on June 21, 2007. However, the issue as to whether

- 18 -

the corporate defendant was served is not germane to the present motion for relief by the individual defendants.

Plaintiff may argue that the moving defendants had actual knowledge of the lawsuit, as shown by their letters to the Court in July 2007. But actual knowledge of a pending lawsuit is insufficient to cure plaintiff's failure to properly effect service. Dorrough v. Harbor Securities, LLC, 99 CV 7589 (ILG), 2002 WL 1467745 (E.D.N.Y. May 10, 2002) (Glasser, J.). See also 1 James Wm. Moore et al., Moore's Federal Practice § 4.03[1] (3d ed. 2000) ("Service that complies with Rule 4 ... may establish personal jurisdiction; **actual notice without compliance with the Rule does not.**") (emphasis added).

As plaintiff did not effect proper service on either of the moving defendants, the Court is requested to vacate the default judgment and declare the judgment void pursuant to Rule 60(b)(4).

## POINT III

### THE COURT SHOULD VACATE THE DEFAULT JUDGMENT ON THE GROUND THAT THE DEFAULT WAS EXCUSABLE AND THERE IS A MERITORIOUS DEFENSE.

Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Our Court of Appeals has established three criteria that must be assessed to decide whether to relieve a party from default or from a default judgment: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Enron, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure

was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Id.

Similarly, when deciding whether to relieve a party from default or default judgment under Rule 60(b)(1), courts consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted. Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir.1994) (relying on Fed.R.Civ.P. 55(c)).

Here, the facts and circumstances present a compelling case warranting vacation of the default judgment.

### A. The moving defendants' default was not willful.

Our Court of Appeals has held that willfulness, in the context of a default, requires "conduct that is more than merely negligent or careless," S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir.1998), "such as egregious or deliberate conduct," New York v. Green, 420 F.3d 99, 108 (2d Cir.2005), or conduct that was "egregious and was not satisfactorily explained," McNulty, 137 F.3d at 738. "[T]he degree of negligence ... is a relevant factor to be considered," yet even gross negligence "does not necessarily preclude relief." American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.1996).

Here, the moving defendants submitted on two occasions in July of 2007 informing the Court, among other things, that they had not received "any summons documents from the plaintiff or plaintiff's attorney at law"; they were not shareholders of defendant Ocean, the judgment debtor; and they had not "lived in New York State before." In these letters, the moving defendants requested that the Court dismiss the action or "remove" them from the action. (Zhang Decl., Ex. A) As in Enron, 10 F.3d at 98, where the Court found that "[the

defendant's] conduct and pro se correspondence [to plaintiff's counsel and the court] evidences his intent to fulfill his obligations as a litigant," the moving defendants' letters to the Court, raising both issues of lack of personal jurisdiction and improper service of process, showed the moving defendants' "intent to fulfill [their] obligations as a litigant." The default was not willful.

## B. The moving defendants have a meritorious defense.

The moving defendants have a meritorious defense to plaintiff's claim based on the alleged fraudulent conveyance of Ocean's Property.

First, the moving defendants are not and should not be held responsible for the full judgment against Ocean of $4,874,210.58, and an injunction should not apply beyond the Property that was alleged fraudulently transferred under the Uniform Fraudulent Conveyance Act, California Civil Code ("C.C.C.") § 3449 et seq., or New York Debtor & Creditor Law (N.Y.D.&C."), Article 10 (Fraudulent Conveyances).[4]

Under New York law, the creditor's remedy in a fraudulent conveyance action is "limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." Neshewat v. Salem, 365 F.Supp.2d 508, 521 (S.D.N.Y. 2005) (citations omitted). Section 278 of N.Y.D.&C. allows creditors who have established that a conveyance is fraudulent and have a mature claim against the debtor to seek an order from the Court to "set aside" the conveyance only "to the extent necessary to satisfy his claim" or to "[d]isregard the conveyance and attach or levy execution upon the property conveyed." Id.

---

[4] While the judgment does not expressly provide that the moving defendants are "jointly and severally" liable for the full judgment of Ocean, plaintiff may well take advantage of the ambiguity in the judgment, which may have been intentionally created by plaintiff, to enforce the judgment against the moving defendants, leading to harsh and irreparable injury to their life and property. In fact, plaintiff has already threatened to enforce the full judgment against the individual defendants, as shown in the June 11, 2008 letter, in which plaintiff's counsel informed them of plaintiff's "intention to enforce the Judgment against any real property you own." (Zhang Decl., Ex. B)

The purpose of the remedy is to grant the creditor the right "to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right." Id. Where the assets fraudulently transferred no longer exist or are no longer in possession of the transferee, a money judgment may be entered in an amount only up to the value of the fraudulently transferred assets. Id.

Here, the judgment in question vastly exceeds the plaintiff's limited right "to reaching the property which would have been available to satisfy the judgment had there been no conveyance." In addition, because the Property is still in the moving defendants'-transferees' possession, a money judgment is not available to plaintiff. Nor is the permanent injunction justified against all assets of the individual defendants, such as "any bank accounts, real property (including but not limited to the [Property]), as well as any other identifiable assets." (B. Li Decl., Ex. B)

Second, the alleged transfer in June 2004 was not "without consideration." Fair market value of the Property was appraised in July 2004 for $560,000. The moving defendants purchased the Property for $520,000, considering that they did not have to pay a broker's fees thereby saving about $33,600.00. (Zhang Decl., ¶ 22) Accordingly, the Property was transferred at essentially its appraised value. The moving defendants paid off an existing mortgage loan of $409,944.61 that Ocean had taken in August 2001, a claim that was superior to plaintiff's judgment in any event. (Zhang Decl., Exs. E-G) After deducting all closing related costs, the moving defendants paid to Ocean the balance of $78,442.96. (Zhang Decl., Ex. K) The moving defendants were never owners or shareholders of Ocean and the transfer was authorized by Ocean's Chinese parent company, the Group, to wind up Ocean's business operations. (Zhang Decl., ¶ 45) See In re Sharp International Corp., 403 F.3d 43 (2d

Cir.2005), holding that a conveyance which satisfied an antecedent debt while the debtor was insolvent was neither fraudulent nor otherwise improper under New York law, even if it was to prefer one creditor over another and the transferee's knowledge of the debtor's insolvency was of no significance.

Third, even assuming the transfer was fraudulent (it was not) within the meaning of the Uniform Fraudulent Conveyance Act, C.C.C. § 3449 et seq., or N.Y.D.&C., Article 10, a proceeding to challenge such a transfer is required to be commenced **in the county where the real property is located**. See C.C.P. § 392 ("(a) Subject to the power of the court to transfer actions and proceedings as provided in this title, the superior court in the county where the real property that is the subject of the action, or some part thereof, is situated, is the proper court for the trial of the following actions: (1) For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of that right or interest, and for injuries to real property. ...); see also CPLR 507 ("The place of trial of an action in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property shall be in the county in which any part of the subject of the action is situated.").

Last but not least, even assuming, arguendo, that an action to challenge a fraudulent conveyance of real property located in California may be brought in New York, the Superior Court of Los Angeles County, California, would still have been the more convenient forum. Significantly, all witnesses relating to the underlying conveyance, including the appraisers of the property, the joint escrow agents, the mortgage banks involved, are all in California. See 28 U.S.C. § 1404 ("(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.")

- 23 -

## C. There is no prejudice to plaintiff.

Setting aside the default judgment would not prejudice plaintiff. Delay standing alone does not establish prejudice. Enron, 10 F.3d at 98. Additionally, this action should not have been commenced in the first place due to the obvious procedural, substantive law and due process requirements. Furthermore, BOCNY has already obtained a judgment against Ocean and is legally positioned to obtain a valid judgment as against Ocean's parent company, the Group, based on the promissory note it had provided to BOCNY. (Zhang Decl., Ex. P) See A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 80 (2d Cir. 1993), holding that New York had long-arm jurisdiction over a Jordanian bank based on an "aval," i.e., guaranty, on promissory note payable to a New York trade financing firm pursuant to CPLR 302(a)).

Accordingly, the Court is requested to set aside the judgment pursuant to Rule 55(c) and Rule 60(b)(1).

### POINT IV

**THE COURT SHOULD SET ASIDE THE JUDGMENT ON THE GROUND THAT IT WAS OBTAINED THROUGH MISREPRESENTATION AND CONCEALMENT OF INFORMATION FROM THE COURT.**

To vacate judgment or order under Rule 60(b)(3), the moving party must demonstrate, by clear and convincing evidence, that material misrepresentations were made, which prevented the movant from fully and fairly presenting his case. Judith Ripka Creations, Inc. v. Rubinoff Imports, Inc., 03 Civ. 9377 (BSJ), 2004 WL 1609338 at * 2 (S.D.N.Y. July 16, 2004), citing Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir.1989). See also 21A Fed. Proc., L. Ed. § 51:145 (April 2008) ("... There is some disagreement about the meaning of 'fraud' or 'misconduct' in this context. One view is that the moving party must show that the adverse party committed a deliberate act that adversely impacted the fairness of the

- 24 -

relevant legal proceeding in question. The prevailing view is broader, however, and allows a motion for relief to be granted regardless of whether the adverse party acted with an evil, innocent or careless purpose. ...") (internal citations omitted).

In Eastern Financing Corp v. JSC Alchevsk Iron & Steel Works, No. 04 Civ. 8112(RPP), 2008 WL 2518700 (S.D.N.Y. June 24, 2008), Judge Patterson granted a motion to set aside a default judgment under Rule 60(d), finding that plaintiff's filing of a default judgment based on contract claims while knowing that the contract was not between plaintiff and the defaulting defendants was an act of fraud committed on the court and that plaintiff's concealment of the fact that its claim was the subject of a bankruptcy proceeding in Ukraine was "less than honest dealing with the Court" and constituted fraud on the Court.

Here, there is clear and convincing evidence to show that plaintiff has made misrepresentations to the Court about material facts; willfully concealed material facts from the Court to cover up the procedural and substantive legal flaws of plaintiff's action; failed to make reasonable inquiry into the law and facts before commencing this action and making the motion for default judgment; and improperly filed a fraudulent conveyance claim knowing that it had absolutely no chance of success.

### A. Plaintiff has made misrepresentations to the Court.

Consider these misrepresentations: Plaintiff states in its Complaint that jurisdiction and venue are proper in this judicial district because "this is plaintiff's place of business and is where a substantial part of the events or omissions giving rise to the claims occurred." (Compl. ¶ 5) This is false, and plaintiff knew that **no** part of any events or omissions occurred in New York that gave rise to the claims against the moving defendants.

Attorney Wu in his affirmation represented to the Court that the summons and

complaint were served on both individual moving defendants on June 21, 2007, but the proof of service does not show that any service was attempted on Hongming Li but rather a purported service only on "Phil Li - C.E.O." and the proof of service on Xiaoming Zhang (alleged Exhibit E) does not even exist (no Exhibit E attached to the Wu Affirmation).

In a letter dated January 8, 2008, plaintiff's counsel represented to the Court that "[d]efendants are merely trying to avoid enforcement of the New York Supreme Court Judgment in the amount of $4,874,210.58 entered on August 14, 2006, or avoid entry of a Default Judgment in the current action, but have no intention to participate in this or any other action." (B. Li Decl., Ex. G) Plaintiff's counsel intentionally used "Defendants" (plural form) to include the moving defendants when they knew well that the individuals were **not** defendants in the New York Supreme Court action and were **not** debtors on that judgment. As such, plaintiff's accusation that the moving defendants "avoid enforcement of the New York Court Judgment" was knowingly and willfully false.

In the same letter and in Attorney Wu's Affirmation, plaintiff's counsel represented to the Court that it sent the moving defendants a letter dated August 14, 2007 in response to their letters submitted to the Court. However, the moving defendants have never received that letter and plaintiff failed to submit that letter to the Court or include it in the motion papers.

In the same letter, plaintiff's counsel further represented that the moving defendants transferred title to the Property to themselves "to avoid enforcement of the [NY] Judgment" and that "Defendants" had changed the registered office of Ocean "several times."

Plaintiff has had a long-established business relationship with Ocean's Chinese parent company, the Group, and had, for years prior to the making of the loan agreement in May 2001, approved a credit line of $3,000,000. In addition, prior to the making of the May 2001

loan agreement, plaintiff had advanced and paid outstanding invoices of Ocean's parent company, the Group, for over four million dollars. Furthermore, plaintiff knew that Ocean's parent company, the Group, was a guarantor on the loan agreement between Ocean and plaintiff and had submitted a written Promissory Note in connection with plaintiff's approval of a credit line of $5,500,000.00. (Zhang Decl., ¶ 35, Exs. O-R) As such, plaintiff knew or should have known that Xiaoming Zhang, as a corporate officer of Ocean, did not have authority or power to transfer title to the Property to themselves or to change the registered office of Ocean without the Group's express authorization.

In a letter dated January 28, 2008, plaintiff's counsel represented to the Court that "Defendants have defaulted on their Bank of Communications loan for over four Million Dollars, and, in an effort to avoid repayment or satisfaction of a judgment, Defendants Li and Zhang have fraudulently transferred Ocean Development America Inc.'s premises to themselves as individuals." (B. Li Decl., Ex. H) Plaintiff's counsel once again misused the word "Defendants" to include the moving defendants, thus creating an impression that they were actually debtors on the judgment against Ocean and had been in control of Ocean to transfer asset to avoid paying plaintiff's judgment against Ocean.

## B. Plaintiff has concealed information from the Court.

The First Cause of Action in plaintiff's complaint seeks to convert a judgment against Ocean obtained from a New York court into a federal judgment against Ocean. In light of the Uniform Foreign Money-Judgment Recognition Act (C.C.P. §§ 1713 et seq.) (CPLR § 5301 et seq.), there is no need for such relief as converting the New York judgment into a California judgment against Ocean would have been just a matter of docketing it in California. The only reasonable and plausible explanation for plaintiff's commencing a plenary action for

- 27 -

this purpose was its hidden objective to cover up the apparent and insurmountable jurisdictional flaws over the moving defendants and the legal impossibility of holding them on plaintiff's judgment in a separately filed action.

Plaintiff states in the Complaint that Ocean "owned valuable real property ... and derived substantial rent and revenues from the Premises." (Compl. ¶ 17) The Complaint's Exhibit D is a "Property Search" report, including deed of conveyance, mortgages of record and bankruptcy filing searches. The supporting documents registered in Los Angeles County, together with the deed and mortgages including the closing statements, all show an appraised price of $560,000, a sales price of $520,000, payoff of Ocean's existing loan of $409,944.61, payoff of the moving defendants' loan of $342,000 and a new mortgage of $500,000. (Zhang Decl., Exs. C-K) Plaintiff's counsel purposefully and willfully concealed these facts so as to create an impression or implication that the individual defendants could have been unjustly enriched by the alleged fraudulent transfer.

Plaintiff had also concealed facts about its own relationship to Ocean's parent company, the Group, and failed to disclose the facts that (i) plaintiff advanced the loan solely to pay the suppliers of raw materials purchased by the Group; (ii) the Group was a guarantor on the loan; (iii) the moving defendants were not owners or in control of Ocean; (iv) the transfer of the Property in June 2004 was pursuant to the Group's decision to liquidate and wind up Ocean's business operation; (v) a substantial amount of the sales proceeds was used to pay off an existing mortgage loan of Ocean; and (vi) the fact that both the Group and BOCNY are state-owned enterprises of the People's Republic of China. (Zhang Decl., ¶¶ 40-45, Exs. E-G, O-R; B. Li Decl., Exs. J and K)

- 28 -

Furthermore, by October 12, 2007, when plaintiff's motion for default judgment was first submitted, plaintiff was already aware that the actual place of residence, "dwelling or usual place of abode" within the meaning of Rule 4(e)(2)(B) was **not** where the Property was located. Nevertheless, plaintiff did not serve its motion papers or other court papers at the actual place of residence. (B. Li Decl., Exs. E-F) But once they obtained the default judgment, plaintiff suddenly used this residence address for service of its June 11, 2008 letter notifying the moving defendants of the entry of the default judgment and threatening them with plaintiff's "intention to enforce the Judgment against any real property you own." (Zhuang Decl., Ex. B)

## C. Plaintiff failed to make reasonable inquiry into the law and facts.

Plaintiff failed to make reasonable inquiry into the law and facts before commencing the action and making the motion for default judgment. Plaintiff knew or should have known that it had absolutely no chance of success on the claim against the individual defendants as asserted in the complaint. Furthermore, despite receipt of the moving defendants' letters to the Court in July, 2007 raising both issues of lack of long-arm jurisdiction and lack of proper service, plaintiff continued pressing its baseless and frivolous claims by submitting more false statements to the Court, along with a proposed default judgment that was not support by New York or California law.

## POINT V

### THE COURT SHOULD SET ASIDE THE JUDGMENT TO ACCOMPLISH JUSTICE.

The savings clause of Rule 60(b) confers broad discretion on the Court to relieve a party from a final judgment or order. See e.g., Quevedo v. Postmaster, U.S. Postal Service, 774 F.Supp. 837, 839 (S.D.N.Y. 1991). "A court may exercise its discretionary power under

the rule whenever 'appropriate to accomplish justice.' [citations omitted] The Rule is properly invoked where there are 'extraordinary circumstances,' [citations omitted], or where the judgment may work an extreme and undue hardship, [citations omitted], and 'should be liberally construed when substantial justice will thus be served.'" [citations omitted]  Id.

The moving defendants respectfully submit that the facts of this case present the required extraordinary circumstances that warrant the Court's granting the moving defendants the relief they request.

## CONCLUSION

For the reasons stated in the foregoing, the moving defendants respectfully request that the Court grant their motion in its entirety and that the Court award them such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
July 16, 2008

LAW OFFICES OF BING LI, LLC
Attorneys for Defendants Hongming Li
and Xiaoming Zhang

By:_____
Bing L (BL 5550)

Daniel P. Levitt, Esq. (DL 6020)

_____
Co-Counsel for the moving defendants

- 30 -