LAW OFFICES OF BING LI, LLC
Bing Li, Esq. (BL 5550)
1350 Broadway, Suite 1001
New York, NY 10018-0947
(212) 967-7690
(212) 658-9788 (facsimile)
bli@blillc.com

Daniel P. Levitt, Esq. (DL 6020)
Co-Counsel
145 Griffen Avenue
Scarsdale, NY 10583
(914) 698-8193
Attorneys for Defendants Hongming Li
and Xiaoming Zhang

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
BANK OF COMMUNICATIONS,           07 civ. 4628 (TPG)
NEW YORK BRANCH,
                    Plaintiffs,

        -against-

OCEAN DEVELOPMENT AMERICA, INC.,
HONGMING LI a/k/a MICHAEL LI and
XIAOMING ZHANG,

                    Defendants
-----------------------------------------------------------x

## DECLARATION OF XIAOMING ZHANG
## IN SUPPORT OF MOTION FOR
## RELIEF FROM JUDGMENT

XIAOMING ZHANG, declares under penalty of perjury as follows:

1.  I am a resident and citizen of the State of California and an individual defendant named in the above-captioned action. The other individual defendant, Hongming Li, is my husband.

- 1 -

2. I had also served as Office Manager, Vice President and President of Ocean Development American, Inc. ("Ocean"), the corporate defendant herein.

3. I am personally familiar with the facts and circumstances set forth herein.

4. I respectfully submit this Declaration in support of my and my husband's motion for relief from a judgment entered on default in this action on March 10, 2008 to the extent as against me and my husband for the debt owed by Ocean to Bank of Communications, New York Branch ("BOCNY"), the plaintiff herein, and for such other relief as the Court may deem just and proper.

### A. CONTACT WITH THE STATE OF NEW YORK

5. My husband and I first came to the United States in 1994 and, since the later part of 1995, have always lived and worked in the State of California.

6. Since 1996 my husband and I have always lived at 216 Linwood Avenue, #3, Monrovia, California 91016.

7. In October 1994, my husband and I visited the City of New York for a 2-3 day tour. In May 2000, my husband and I visited the City of New York again on a 3-4 day tour.

8. Aside from these two visits, my husband and I have never been to New York; never lived anywhere in the City or State of New York; never worked anywhere in New York; have never conducted business in individual capacities anywhere in New York (or in California); have never conducted or transacted business in New York; have never made any contracts in New York to be performed in or outside New York; and have never owned any real property located anywhere in New York;

9. Although in May 2001 I signed the Credit Agreement with BOCNY, I did so as a representative of Ocean and did so in California.

- 3 -

## B. SERVICE OF THE SUMMONS AND COMPLAINT

10. My husband and I have never been personally served with plaintiff's summons and complaint issued from this action.

11. Contrary to plaintiff's representation to the Court, my husband and I have never been served "by substitute service on June 21, 2007" or at any other time by any other service menthods.

12. In a letter sent to the Court on July 18, 2007 and another letter to the Court on July 23, 2007, my husband and I stated to the Court that "we did not receive any Summons documents from the plaintiff or plaintiff's attorney at law now" and that we were "California residents" and have never lived in New York.

13. True copies of the July 18 and July 23, 2007 letters are submitted hereto as Exhibit A.

14. Since the time we submitted the July 18 and July 23, 2007 letters, we have never received any court papers or documents in this action, until June 17, 2008 when I received a letter dated June 11, 2008 from plaintiff's attorney. Upon receipt of this letter, my husband and I immediately contacted and retained attorney in New York.

15. I am advised that plaintiff's attorney represented to the Court that they sent us a letter dated August 14, 2007 in response to our letters. However, neither my husband nor I have ever received this letter.

16. I am further advised that plaintiff's attorney represented to the Court that my husband and I tried to avoid enforcement of a New York judgment against Ocean or avoid entry of a default judgment against us individually and that we had changed the registered office address of Ocean several times. This is not true. The New York judgment is not

against my husband and me individually and we have done nothing to avoid enforcement of the judgment. In addition, my husband and I have never been owners or shareholders of Ocean and would not have authority to change Ocean's registered address.

17. We provided our residence address in our letters to the Court, i.e., 216 Linwood Avenue, #3, Monrovia, California 91016. Nevertheless, plaintiffs had never attempted to serve us with any court papers or documents at this address, except for the June 11, 2008 letter.

18. A true copy of plaintiff attorney's June 11, 2008 letter is submitted hereto as Exhibit B.

### C. PLAINTIFF'S BASELESS LAWSUIT

19. My husband and I are advised that plaintiff's claim against us individually was based on its representation that on June 24, 2004 Ocean "unlawfully and fraudulently" transferred a piece of real property located at 13453-A Brooks Drive, Baldwin Park, California (the "Property") to ourselves and that on November 14, 2005 my husband and I "unlawfully and fraudulently" took a mortgage loan of $500,000 secured by the Property. Plaintiff stated to the Court that the transfer of the Property was made "without fair consideration" and the transfer and the mortgage were made "with actual intent to hinder, delay and defraud defendants' creditors and with the particular intent to defraud plaintiff Bank."

20. There are all false and misleading misrepresentations made by plaintiff for the purpose of creating a basis for our individual liability to which plaintiff knew it was not entitled.

21. My husband and I are advised that to the extent we were sued in this action as "fraudulent" "transferees" of Ocean's Property, our liability would have been limited to the value of the Property. As a result of plaintiff's misrepresentations, the judgment provides that "Bank of Communications, New York Branch, has judgment against Defendants, Ocean Development America, Inc., Hongming Li, a/k/a Michael Li and Xiaoming Zhang in the amount of $4,874,210.58." In the June 11 letter, plaintiff's attorney threatened to enforce the New York Judgment against any property we own.

### D. THE TRANSFER OF THE PROPERTY

22. The faire market value of the Property in 2004 was about $560,000. At the time of the transfer of the Property, Ocean had an existing mortgage loan secured by the Property in the amount of $409,944.00. My husband and I purchased the Property for $520,000. The difference between the market value and the purchase value was based on the fact that we did not use a real estate agent and did not need to pay the broker's commissions of 6% ($33,600.00). In fact, the property was first appraised at $550,000 at the time when we signed the purchase agreement but then re-appraised for $560,000. Our purchase of the Property was also financed with a bank mortgage loan in the amount of $364,000. The annual rental income at the time of the purchase was about $20,000 and was a part of the appraisal price and part of the consideration paid for the purchase.

23. Therefore, we purchased the Property at the appraised fair market value.

24. I submit to the Court the following documents regarding the transfer of the Property:

> Ex. C      Appraisal of Real Property dated July 14, 2004;
>
> Ex. D      Commercial Property Purchase Agreement and Joint Escrow Instructions dated June 17, 2008;

| | | |
|---|---|---|
| | Ex. E | Business Loan Agreement between Ocean and Far East National Bank dated August 20, 2001 for $429,000; |
| | Ex. F | Updated Payoff Demand Statement of Far East National Bank dated August 16, 2004, for $409,944.61; |
| | Ex. G | Full Reconveyance dated September 8, 2004 showing payoff of Ocean's loan to Far East National Bank; |
| | Ex. H | Loan Commitment of Standard Savings Bank dated August 6, 2004 for $364,000; |
| | Ex. I | Disbursement Request and Authorization of Standard Savings Bank dated August 6, 2004; |
| | Ex. J | Title Preliminary Report issued by Investors Title Company dated June 22, 2004; and |
| | Ex. K | Closing Statement of Central Escrow, Inc. dated August 17, 2004. |

25. As these transaction documents show, the transfer of the Property from Ocean to my husband and me in June 2004 was fully paid for and fully supported by consideration and was not fraudulent.

26. The mortgage loan of $500,000 that my husband and I took from Far East National Bank in November 2005 was a refinance of our mortgage with Standard Savings Bank and had nothing to do with the transfer.

### E. PLAINTIFF'S DEALINGS WITH OCEAN

27. Ocean was a California corporation incorporated in 1990.

28. SHANTOU OCEAN AUDI-VIDEO GENERAL CORPORATION ("Shantou Ocean") was, in 1991, a company located in Shantou City, Guangdong Province, the People's Republic of China, and was and has always been a fully owned enterprise by the Shantou City Government, Guangdong Province.

29. From the inception of Ocean, Shantou Ocean was and had always been the sole owner of Ocean, owning 100% of the issued and outstanding stock Ocean.

30. In January 1991, the Government of Guangdong Province approved the name change of Shantou Ocean to SHANTOU OCEAN ENTERPRISES (GROUP) COMPANY. (the "Group") without any change in operations or ownership.

31. At the time when Ocean was formed, Mr. Guo Jun Wei was president in charge of the business operations of Ocean. In 1996, I was employed by Ocean as its Office Manager. In 1997 I was first promoted to the position of Vice President and in 1998 the position of President, responsible for its daily business operations in the U.S.

32. I submit the following documents for the Court's consideration:

| | |
|---|---|
| Ex. L | Articles of Incorporation of Ocean filed with the California State of Secretary on February 7, 1990; |
| Ex. M | All issued and outstanding stock of Ocean (Certificate Numbers 1 and 2); and |
| Ex. N | Approval notice of the Guangdong Province Government of Shantou Ocean name change. |

33. In 1991, Ocean purchased a warehouse located at 13453 Brooks Drive, Unit A, City of Baldwin Park, CA 91706, which is the property that plaintiff alleged was fraudulently transferred.

34. The Group, Ocean's parent company, had made it very clear to BOCNY and its parent bank BOC and plaintiff was fully aware that the objective of forming Ocean in the United States was to facilitate raising capital for the Group and process international account receivables and account payables.

35. BOCNY and BOC have always been state-owned banking institutions of the People's Republic of China. In the years leading up to May 1, 2001, the senior managements

of BOC and the Group had been in talks about a business credit loan of multiple million dollars. In 1998, BOC had already approved a revolving credit line of $3,000,000. In 1999, the Group directed Ocean to submit an application to BOCNY for an increase of the credit line by another $3,000,000. BOC eventually approved an aggregate credit line of $5,500,000.00, on condition that the Group make a promissory note and agree to deposit at the BOC Shantou Branch no less than 20,000,000 Chinese Yuan each month (the conversion ratio between Chinese Yuan and U.S. Dollar was then about 9:1). As a result, before the Credit Agreement was even entered into on May 1, 2001, BOCNY had already been paying outstanding invoices for the Group, including two dated September 23 and 26, 2000 respectively issued by SK Global Co., Ltd. of South Korea for Styrene Monomer sold to the Group and its domestic subsidiaries for over four million dollars. The revolving line of credit was secured by a $2,000,000 cash collateral advanced by the Group.

36. A true copy of the Promissory Note dated September 20, 1999 is submitted hereto as Exhibit O and true copies of the invoices of SK Global Co., Ltd. as Exhibit P.

37. In May 2001, the Group directed me to sign a Credit Agreement with BOCNY, which provides for a revolving line of credit of $5,500,000. I complied and signed the Agreement as the President of Ocean. Wang Ye Hua, who was then Assistant to the General Manager of the Group, signed the Credit Agreement as "Chief Executive Officer." A true copy of the Credit Agreement is annexed to plaintiff's complaint as Exhibit A.

38. Despite the Credit Agreement and any pre-existing loan agreement between BOCNY, the Group was unable to provide Ocean with adequate funds to pay BOCNY, causing Ocean to be in default of the Credit Agreement. By November 11, 2001, the total outstanding balance on the credit line was approximately $3,620,000.

39. The Group explained to BOCNY that it was aware of the default and was undergoing a global debt restructuring, including BOCNY's loan.

40. By letter dated November 1, 2001, BOCNY's Loan Department complained about the slow process of the Group's loan restructuring as follows:

> ... Regarding the serious delinquency of your company in repaying the loan of $3,620,000, the restructuring work progresses very slowly, a lot of materials are yet to be provided by your parent company Shantou Ocean Enterprises (Group) Company, as your parent company is a guarantor of the loan and should participate and support the restructuring work of the overdue loan.
> ...

41. A copy of the November 1, 2001 letter is attached hereto as Exhibit Q.

42. Six days later, by letter dated November 7, 2001, BOCNY objected to the restructuring proposals made by the Group, stating as follows:

> ...
> 1. The problems with the U.S. company's business operations were caused by the Parent Company's misappropriation of funds and its deferring payments on the loan. The loan proceeds were directly paid to overseas suppliers of raw materials in accordance with the terms of the loan agreement, and the raw materials purchased were directly shipped by the suppliers to China, for use by your company and your subsidiaries. In this whole process, the U.S. company was just an intermediary, did not directly get involved in the loan proceeds. Your subsidiary companies did not return the loan proceeds to the U.S. company, which, in turn, caused its cash flow problems and its inability to pay the loan proceeds on time. On this issue, your company should not and cannot brush away your responsibilities.
>
> 2. At the time this loan facility was established, your company promised to be the guarantor of the loan and issued guaranty letter. This guarantee responsibility is continuous, that is to say, as long as Ocean Development America owes this Bank any loan amount, this guarantee responsibility will continue to be effective. No matter how your company will reform itself, your written promise of loan guarantee will not be terminated.
> ...

43. A true copy of this November 7, 2001 letter is annexed hereto as Exhibit R.

44. To alleviate the cash flow problems and financial crisis facing Ocean around the time of its default on the Bank of Communications loan, the Group authorized me to refinance an existing mortgage loan of Ocean with the Bank of China, Los Angeles Branch. On October 20, 2001, Far East National Bank approved a mortgage of $429,000. (Ex. E)

45. The financial situation of the Group did not improve. Moreover, the mounting costs and expenses in maintaining the business operations of Ocean added new problems to the Group. Since 2003, Ocean had been unable to pay employees' full salaries, including my husband and myself. As a result, the Group decided to wind up Ocean's business.

46. Since the very beginning, BOCNY had always been aware of Ocean's ownership in the Property and since as early as November 2001 Ocean had defaulted on the credit line facility. However, BOCNY did not commence any legal action until the end of 2003 and has not done anything to collect payment from the Group.

47. In fact, the Group is still active and doing business in China. BOCNY and BOC, as state-owned banking institutions, could take any number of legal or non-legal actions to collect its loan from the Group, also a state-owned enterprise, if it had really intended to. Having no intention to commence action in China against a fellow state-owned enterprise, BOCNY has wrongfully resorted to take down my husband and myself, who had nothing to do with the application for the loan, with the use of the loan and with the guarantee.

## F. CONCLUSION

48.     Therefore, the Court is respectfully requested to grant the relief sought in this proceeding and grant my husband and me such other and further relief as the Court deems just and proper.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on July 15th, 2008
Los Angeles, California

_Xiaomin Zhang_
XIAOMIN ZHANG