**EXHIBIT A**

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF NEW YORK
500 PEARL STREET,
NEW YORK, NY 10007

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery
                    AUG - 3 2007
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

   U.S.D.C. - S.D.N.Y.

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number          7007 1490 0002 0013 0932
   (Transfer from service label)

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

To: UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
   500 Pearl Street, New York, NY 10007

**Re: The Case No. 07 CIV 4628**

Dear J. MICHAEL McMAHON,

We (Hongming Li, Xiaomin Zhang) heard that there is a new case (#07 CIV 4628) which BANK OF COMUNICATIONS, NEW YORK BRANCH (Plaintiff) filed a lawsuit against OCEAN DEVELOPMENT AMERICA, INC and Xiaomin Zhang, Hongming Li (Defendants).

First, we (Hongming Li, Xiaomin Zhang) did not receive any Summons documents from the plaintiff or plaintiff's attorney at law now.

Second, we (Hongming Li, Xiaomin Zhang) were not the owner or stocks shareholders of OCEAN DEVELOPMENT AMERICA, INC. OCEAN DEVELOPMENT AMERICA, INC. is a California Corporation established in 1990, The SHANTOU OCEAN AUDIO-VIDEO GENERAL CORPORATION in China wholly owned 100% of the issued and outstanding stocks of OCEAN DEVELOPMENT AMERICA, INC. since 1990 till now.

Third, we (Hongming Li, Xiaomin Zhang) are the California residents; we have not been lived in New York State before.

Because of the above, we request UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK to **dismiss this case (case no.: 07 CIV 4628) or remove us (Hongming Li, Xiaomin Zhang) from this case (case no.: 07 CIV 4628) at this time.**

Look for your reply soon.

Sincerely,

Hongming Li,
Xiaomin Zhang.
(626) 303-8650   Xiaomin Zhang
216 Linwood Ave, #3, Monrovia, CA 91016. USA
07/16/2007

State of CAlifornia
County of los Angeles
Subscribed and sworn (or affirmed) to
by Hongming Li, Xiaomin Zhc
before me this 23 day of July, 2007
_____, Notary pul
(Signature of Notary)

LOURDES LONA
Commission # 1640146
Notary Public - California
Los Angeles County
My Comm. Expires Jan 22, 2010

To: UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
     500 Pearl Street, New York, NY 10007

Re: The Case No.: 07 CIV 4628

Dear the Clerk of the Court,

We have sent a letter by priority mail with certified label on 07/18/2007, then we have sent another letter by priority mail with certified label and return receipt on 07/23/2007(please see the attachments).

We request UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK to dismiss this Case (Case no.: 07 CIV 4628) or remove us (Hongming Li, Xiaomin Zhang) from this Case (Case no.: 07 CIV 4628) at this time. Because:

We (Hongming Li, Xiaomin Zhang) heard that there is a new Case (Case No.:07 CIV 4628) which BANK OF COMUNICATIONS. NEW YORK BRANCH (Plaintiff) filed a lawsuit against OCEAN DEVELOPMENT AMERICA, INC and Xiaomin Zhang, Hongming Li (Defendants).

First, we (Hongming Li, Xiaomin Zhang) did not receive any Summons documents from the plaintiff or plaintiff's attorney at law now.

Second, we (Hongming Li, Xiaomin Zhang) were not the owner or stocks shareholders of OCEAN DEVELOPMENT AMERICA, INC. OCEAN DEVELOPMENT AMERICA, INC. is a California Corporation established in 1990, The SHANTOU OCEAN AUDIO-VIDEO GENERAL CORPORATION In China wholly owned 100% of the issued and outstanding stocks of OCEAN DEVELOPMENT AMERICA, INC. since 1990 till now.

Third, we (Hongming Li, Xiaomin Zhang) are the California residents; we have not been lived in New York State before.

Because of the above, we request UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK to dismiss this Case (Case no.: 07 CIV 4628) or remove us (Hongming Li, Xiaomin Zhang) from this Case (Case no.: 07 CIV 4628) at this time.

Look for your reply soon.

Sincerely,

Hongming Li
Xiaomin Zhang
216 Linwood Ave, #3, Monrovia, CA 91016. USA        (626) 303-8650        07/31/2007

**EXHIBIT B**

# WU & KAO

ATTORNEYS AT LAW

747 THIRD AVENUE
22ND FLOOR
NEW YORK, NEW YORK 10017

FACSIMILE
(212) 755-8890
(212) 755-5049
www.wuandkao.com

(212) 755-8880

VIA REGULAR & CERTIFIED MAIL

June 11, 2008

Ocean Development America, Inc.
13453-A Brooks Drive
Baldwin Park, CA 91706

Hongming Li a/k/a Michael Li
216 Linwood Avenue, #3
Monrovia, California 91016

Xiaoming Zhang
216 Linwood Avenue, #3
Monrovia, California 91016

>            Re:    Bank of Communications v Ocean Development America, Inc.,
>                   Hongming Li a/k/a Michael Li and Xiaoming Zhang
>                   Index No. 07-CV-4628

Dear Mr. Li and Ms. Zhang:

We are the attorneys for Bank of Communications, New York Branch. As you already know, we have a Federal Court Judgment, dated 3/10/2008, against all of you for the amount of $4,874,210.58 (see enclosed). We are currently in the process of registering the Judgment in the Central District of California. We would like to inform you that once this is completed, we will diligently pursue enforcement of same against Mr. Li., Ms. Zhang, and Ocean Development America, Inc.

We understand that you have willfully and fraudulently transferred company assets into your own individual names, including the title to the premises belonging to Ocean Development America, Inc., in order to avoid enforcement of the aforementioned Judgment. Please be advised that we have the full intention to enforce the Judgment against any real property you own.

We urge you to immediately satisfy and pay the Judgment. It is to your benefit to accept this final opportunity to come forward with a reasonable payment plan.

We are sending this letter to you at both the premises address, as well as the residential address you yourselves provided to the Court.

Very truly yours,

WU & KAO

Anne Seelig

AS/nf
Encl.
W&K/G:/BOCM-Ocean/Hengming Li-ltr/081407/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

BANK OF COMMUNICATIONS,
NEW YORK BRANCH,                                              Case No. 07 CV 4628

                                        Plaintiffs,

                                                        **ORDER**  | USDC SDNY
        - against -                                             | DOCUMENT
                                                                | ELECTRONICALLY FILED
OCEAN DEVELOPMENT AMERICA, INC.,                                | DOC #:
HONGMING LI a/k/a MICHAEL LI and                                | DATE FILED: 3/10/08
XIAOMING ZHANG

                                        Defendants.
----------------------------------------------------------------X

        This action having been commenced on June 1, 2007 by the filing of the Summons and

Complaint; and a copy of the Summons and Complaint having been served on Defendant Ocean

Development America, Inc. on June 22, 2007, at 13453 A Brooks Avenue, Baldwin Park, California

91706 and also on Ocean Development America Inc.'s Registered Agent for Service of Process (as

of that date), Philip Yeung, at 240 S. Garfield Avenue, Monterey Park, CA 91755; and having been

served on Defendant Hongming Li a/k/a Michael Li by substitute service on June 21, 2007, at 13453

A Brooks Avenue, Baldwin Park, California 91706; and by substitute service on Xiaoming Zhang

on June 21, 2007 at 13453 A Brooks Avenue, Baldwin Park, California 91706. The Returns of

Service having been filed with the Court via ECF on July 13, 2007 and said Defendants not having

answered the Compliant or moved with respect to the Complaint and the time for answering the

Complaint having expired, now, on the application of Wu & Kao, attorneys for Plaintiff Bank of

Communications, New York Branch, it is hereby:

        ORDERED ADJUDGED AND DECREED that Plaintiff, Bank of Communications, New

York Branch, has judgment against Defendants, Ocean Development America, Inc., Hongming Li

a/k/a Michael Li and Xiaoming Zhang in the amount of $4,874,210.58, together with interest at the legal rate from August 14, 2006, plus the costs and disbursements of this action to be taxed; and

IT IS FURTHER ORDERED that Plaintiff, Bank of Communications, New York Branch have writ of attachment, and/or protective order and permanent injunction against Defendants Ocean Development America, Inc., Hongming Li a/k/a Michael Li and Xiaoming Zhang concerning their assets, including but not limited to any bank accounts, real property (including but not limited to the Premises located at 13453-A Brooks Drive, Baldwin Park, California 91706), as well as any other identifiable assets.

So Ordered this 10th day of March 2008

Thomas P. Griesa
United States District Judge

**EXHIBIT C**



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
13453 Brooks Drive #A
Baldwin Park, Ca. 91706

### FOR:
Standard Bank
228 W. Garvey Avenue
Monterey Park, Ca. 91754

### AS OF:
July 14, 2004

### BY:
Denny D. Shen

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 13453 Brooks Drive #A |
| | Legal Description | Please see the attached exhibit |
| | City | Baldwin Park |
| | County | Los Angeles |
| | State | Ca. |
| | Zip Code | 91706 |
| | Census Tract | 4049.01 |
| | Map Reference | 598-A4 |
| **SALES PRICE** | Sale Price | $ 550,000 |
| | Date of Sale | Pending |
| **CLIENT** | Borrower / Client | LI |
| | Lender | Standard Bank |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 7,010 |
| | Price per Square Foot | $ 78.46 |
| | Location | Average |
| | Age | 1990 |
| | Condition | Good |
| | Total Rooms | N/A |
| | Bedrooms | N/A |
| | Baths | 2 |
| **APPRAISER** | Appraiser | Denny D. Shen |
| | Date of Appraised Value | 7-14-2004 |
| **VALUE** | Final Estimate of Value | $ 580,000 |

**EXHIBIT D**

ATTN: Ms Robin Tu



CALIFORNIA
ASSOCIATION
OF REALTORS®

**COMMERCIAL PROPERTY PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 10/02)

*Revised*

Date _June 17, 2004_____, at ____ _BALDWIN PARK_____, California.

**1. OFFER:**

A. **THIS IS AN OFFER FROM** _HONGMING LI_____ ("Buyer").
☒ Individual(s), ☐ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, or ☐ Other _____

B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _13453 BROOKS DR #A BALDWIN PARK, CA 91706_, situated in _____, Assessor's Parcel No. _8535-029-003_____, California, ("Property").
County of _LOS ANGELES_____

C. **THE PURCHASE PRICE** offered is _FIVE HUNDRED TWENTY THOUSAND_____ Dollars $ _520,000.00_

D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ _60_ Days After Acceptance).

**2. FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2L or 2M is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.

A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of $ _____), by Personal Check    $ _2000.00_
to the agent submitting the offer (or to ☐ _____),
(or ☐ _____), made payable to _____
which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
or ☐ _____, with
Escrow Holder, or ☐ into Broker's trust account.

B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of .....    $ _150,000.00_
within _____ Days After Acceptance, or ☒ _DURING CLOSE ESCROW_____    $ _364,000.00_

C. **FIRST LOAN IN THE AMOUNT OF** .........................................................................    $
NEW First Deed of Trust in favor of ☐ Lender, ☐ Seller,
OR ☐ ASSUMPTION of (or ☐ "subject to") Existing First Deed of Trust
encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or
_____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in
_____ years, amortized over _____ years. (If checked: ☐ and with a margin not to exceed _____ %,
tied to the following index _____.) Buyer shall pay loan fees/points not to exceed _____
Additional terms _____

D. **SECOND LOAN IN THE AMOUNT OF** ......................................................................    $
NEW Second Deed of Trust in favor of ☐ Lender, ☐ Seller,
OR ☐ ASSUMPTION of (or ☐ "subject to") Existing Second Deed of Trust
encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or
_____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in
_____ years, amortized over _____ years. (If checked: ☐ and with a margin not to exceed _____ %,
tied to the following index _____.) Buyer shall pay loan fees/points not to exceed _____
Additional terms _____

E. **ADDITIONAL FINANCING TERMS:** _____    $

F. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of ......    $
to be deposited with Escrow Holder within sufficient time to close escrow.    $ _520,000.00_

G. **PURCHASE PRICE (TOTAL):** ...............................................................................    $ _520,000.00_

H. **LOAN APPLICATIONS:** Within 7 (or ☒ _40_ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified above.

I. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2H) shall, within 7 (or ☐ _____) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.

J. **LOAN CONTINGENCY REMOVAL:** (I) Within 17 (or ☐ _____) Days After Acceptance, Buyer shall, as specified in paragraph 17, remove the loan contingency or cancel this Agreement; OR (II) (if checked) ☐ loan contingency shall remain in effect until the designated loans are funded.

K. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. Buyer shall, as specified in paragraph 17, remove the appraisal contingency or cancel this Agreement when the loan contingency is removed (or, if checked, ☐ within 17 (or ☐ _____) Days After Acceptance).

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials _____ ( ) ( )
Seller's Initials _____ ( ) ( )

Reviewed by _____ Date _____

CPA REVISED 10/02 (PAGE 1 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 10)**

**6. SELLER DISCLOSURES:**

A. **NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 17, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

B. **ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 17, Seller shall provide to Buyer, in writing, the following disclosures, documentation and information:

   (1) **RENTAL SERVICE AGREEMENTS:** (i) All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.

   (2) **INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

   (3) ☒ **TENANT ESTOPPEL CERTIFICATES:** (if checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating the modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

   (4) **SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

   (5) **PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

   (6) **STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

   (7) **GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

   (8) **VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

   (9) **MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: (i) any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; (ii) any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy.

7. ☐ **ENVIRONMENTAL SURVEY** (if checked): Within _____ Days After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☒ Seller. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement.

8. **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

A. **SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or located in a planned unit development or other common interest subdivision.

B. If Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the OA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the OA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of OA minutes for regular and special meetings; and (v) the names and contact information of all OA's governing the Property. (Collectively, "CI Disclosures.") Seller shall itemize and deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 17.

9. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

10. **CHANGES DURING ESCROW:**

A. Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 17: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify, or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.

B. At least 7 (or ☐ _____ ) Days prior to any Proposed Changes, Seller shall give written notice to Buyer of any Proposed Changes.

11. **CONDITIONS AFFECTING PROPERTY:**

A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

B. SELLER SHALL, within the time specified in paragraph 17, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.

Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 3 OF 10)

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

commercial

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 10)**

Property Address: __13453-A BROOKS DR, BALDWIN    PARK, CA 91706__    Date: __June 17, 2004__

C. **NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. **NOTE TO SELLER:** Buyer has the right to inspect the Property and, as specified in paragraph 17, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

12. **ITEMS INCLUDED AND EXCLUDED:**

   A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 12B or C.

   B. **ITEMS INCLUDED IN SALE:**
   (1) All EXISTING fixtures and fittings that are attached to the Property;
   (2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms;
   (3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 17;
   (4) Seller represents that all items included in the purchase price are, unless otherwise specified, owned by Seller. Within the time specified in paragraph 17, Seller shall give Buyer a list of fixtures not owned by Seller;
   (5) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition; and
   (6) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

   C. **ITEMS EXCLUDED FROM SALE:** _____

13. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   A. Buyer's acceptance of the condition of, and any other matter affecting the Property is a contingency of this Agreement, as specified in this paragraph and paragraph 17. Within the time specified in paragraph 17, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) confirm the insurability of Buyer and the Property; and (iv) satisfy Buyer as to any matter of concern to Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector, or government employee, unless required by Law.

   B. Buyer shall complete Buyer Investigations and, as specified in paragraph 17, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make Property available for all Buyer Investigations. Seller shall have water, gas, electricity, and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

14. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

15. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

16. **TITLE AND VESTING:**

   A. Within the time specified in paragraph 17, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 17.

   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

   C. Within the time specified in paragraph 17, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

| Buyer's Initials ( _MM_ )( _____ ) |
| Seller's Initials ( _XX_ )( _____ ) |
| Reviewed by _____ Date _____ |



Copyright © 1999-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 4 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 10)**

commercial

Property Address: 13453-A BROOKS DR, BALDWIN PARK, CA 91706    Date: June 27, 2004

   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   E. Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**17. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form RRCR).

   A. **SELLER HAS: 7 (or ☐ _____** ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 5, 6A and B, 11B, 12B (3) and (4) and 16.

   B. **BUYER HAS: 17 (or ☐ _____** ) Days After Acceptance, unless otherwise agreed in writing, to:

     (1) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 6 and insurability of Buyer and the Property).

     (2) Within the time specified in 17B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

     (3) By the end of the time specified in 17B(1) (or 2J for loan contingency or 2K for appraisal contingency), Buyer shall remove, in writing, the applicable contingency (C.A.R. Form RRCR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 17A, then Buyer has 5 (or ☐ _____ ) Days after receipt of any such items, or the time specified in 17B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: (i) government-mandated inspections or reports required as a condition of closing; (ii) Common Interest Disclosures pursuant to paragraph 8B; (iii) a subsequent or amended disclosure pursuant to paragraph 9; (iv) Proposed Changes pursuant to paragraph 10B; and (v) environmental survey pursuant to paragraph 7.

   C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

     (1) **Seller right to Cancel: Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in the Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.

     (2) **Continuation of Contingency:** Even after the expiration of the time specified in 17B(1), Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 17C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 17C(1).

     (3) **Seller right to Cancel: Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2H; (iv) if Buyer fails to provide verification as required by 2I or 2M; (v) if Seller reasonably disapproves of the verification provided by 2I or 2M. Seller is not required to give Buyer a Notice to Perform regarding Close Of Escrow.

     (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel the Agreement or meet an 17C(3) obligation.

   D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility, and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

   E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award.

Buyer's Initials ( JML )( _____ )
Seller's Initials ( /\/ )( _____ )
Reviewed by _____ Date _____

Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 8 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 10)**

commercial

Property Address: 13453-A BROOKS DR, BALDWIN PARK, CA 91706    Date: June 17, 2004

18. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or ☐ _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

19. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

20. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

21. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT (C.A.R. FORM RID).**

| Buyer's Initials _HM_ / ____ | Seller's Initials _AG_ / ____ |
| --- | --- |

22. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 22B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.**

   B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 22B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**
   **(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
   **(3) BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 22A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

   **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

   **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

| Buyer's Initials _HM_ / ____ | Seller's Initials _AG_ / ____ |
| --- | --- |

| Buyer's Initials ( _HM_ )( _____ ) |
| --- |
| Seller's Initials ( _AG_ )( _____ ) |

| Reviewed by _____ | Date _____ |
| --- | --- |

Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 6 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 6 OF 10)**

commercial

Property Address: 13452-A BROOKS DR, BALDWIN PARK, CA 91706   Date: June 17, 2004

23. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.

24. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

25. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

26. **NOTICES:** Whenever notice is given under this Agreement, each notice shall be in writing, and shall be delivered personally, by facsimile, or by mail, postage prepaid. Notice shall be delivered to the address set forth below the recipient's signature of acceptance. Either party may change its notice address by providing notice to the other party.

27. **AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, ByLaws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

28. **GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.

29. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

30. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Form AS).

31. **MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

32. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

33. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

34. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

35. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

36. **OTHER TERMS AND CONDITIONS,** including attached supplements:
   A. ☐ Buyer Inspection Advisory (C.A.R. Form BIA)
   B. ☐ Seller Financing Addendum and Disclosure (C.A.R. Form SFA)
   C. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ ) _____
   D. ☐ Buyer Intent To Exchange Supplement (C.A.R. Form BES)
   E. ☐ Seller Intent to Exchange Supplement (C.A.R. Form SES)
   F.
      1. PURCHASE PRICE TO BE $550,000.00
      2. ESCROW TO BE CENTRAL ESCROW
      3.

Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 7 OF 10)

Buyer's Initials ( ___ )( ___ )
Seller's Initials ( ___ )( ___ )
Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 10)**

commercial

Property Address: 13453-A BROOKS DR, BALDWIN PARK, CA 91706          Date: June 17, 2004

**37. DEFINITIONS:** As used in this Agreement:

A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with this offer or a final counter offer.

B. **"Agreement"** means the terms and conditions of this accepted Commercial Property Purchase Agreement and any accepted counter offers and addenda.

C. **"C.A.R. Form"** means the specific form referenced, or another comparable form agreed to by the parties.

D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days, unless otherwise required by Law.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of the Agreement without the knowledge and consent of the other.

J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 17C(4)) to remove a contingency or perform as applicable.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications and retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

N. **Singular and Plural** terms each include the other, when appropriate.

**38. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.

**39. AGENCY:**

A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

Listing Agent _____ (Print Firm Name) is the agent

of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.

Selling Agent _____ (Print Firm Name) (if not same

as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.

Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**40. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 5, 16, 17E, 29, 30, 33 36B-F, 37, 40, 42, 45A, 46 and paragraph D of the section titled Real Estate Broker on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 42 or 45A, or paragraph D of the section titled Real Estate Broker on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 8 OF 10)

Buyer's Initials (_____)(_____)
Seller's Initials (_____)(_____)

Reviewed by _____ Date _____



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 10)**          commercial

Property Address: 13453-A BROOKS DR, BALDWIN PARK, CA91706 Date: June 17, 2004

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 42, 45A and paragraph D of the section titled Real Estate Broker on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 42 and 45A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (I) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (II) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**41. SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: Brokers: (i) do not decide what price Buyer should pay or Seller should accept; (ii) do not guarantee the condition of the Property; (iii) do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) shall not be responsible for identifying defects that are not known to Broker(s); (v) shall not be responsible for inspecting public records or permits concerning the title or use of the Property; (vi) shall not be responsible for identifying location of boundary lines or other items affecting title; (vii) shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS or PDS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; (viii) shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and (ix) shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform a real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**42. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**43. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**44. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____ , who is authorized to receive it by 5:00 PM on the third calendar day after this offer is signed by Buyer (OR, if checked ☐ by _____ (date), at _____ ☐ AM ☐ PM).

Buyer _____   Date _____
By _____
Name Printed _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Buyer _HONGMING LI_   Date 6/17/04
By _____
Name Printed _HONGMING LI_
Address _216 LINWOOD AVE #3_ City _MONROVIA_ State _CA_ Zip _91016_
Telephone _626 303 8650_ Fax _626 303 8650_ E-mail _OPALIMITED@YAHOO.COM_
Notice Address, If Different _____

Buyer's Initials ( HML ) ( _____ )
Seller's Initials ( ___ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1993-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 9 OF 10)

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 10)

commercial

Property Address: _13453-A BROOKS DR, BALDWIN PARK, CA 91706_ Date: _June 17, 2004_

**45. BROKER COMPENSATION FROM SELLER:**
  **A.** Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
  **B.** If escrow does not close, compensation is payable as specified in that separate written agreement.

**46. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
  ☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____

Seller _OCEAN DEVELOPMENT AMERICA, INC_     Date _6/22/04_
By _____
Name Printed _钱明珠 35 ( XIAOMIN ZHANG )_
Address _13453-A BROOKS DR_ City _BALDWIN PARK_ State _CA_ Zip _91706_
Telephone _(626)856 2183_ Fax _626 338 9194_ E-mail _ODA.INC@USA.COM_

Seller _____ Date _____
By _____
Name Printed _____ City _____ State _____ Zip _____
Address _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____

( ____/____ ) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent
  (initials)    on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
  **A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
  **B.** Agency relationships are confirmed as stated in paragraph 39 above.
  **C.** If specified in paragraph 2A, Agent who submitted offer for Buyer acknowledges receipt of deposit.
  **D.** COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS or PDS, provided Cooperating Broker is a Participant of the MLS or PDS in which the Property is offered for sale or a reciprocal MLS or PDS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _____ Date _____
By _____ City _____ State _____ Zip _____
Address _____ E-mail _____
Telephone _____ Fax _____

Real Estate Broker (Listing Firm) _____ Date _____
By _____ City _____ State _____ Zip _____
Address _____ E-mail _____
Telephone _____ Fax _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked,) ☐ a deposit in the amount of $ _2000,'_ _____),
counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 40 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____ Escrow # _2021383-R-7_
Escrow Holder _Central Escrow_ Date _____
By _Robin Liu  Escrow Officer #501_ City of Indur, CA 91706 (FAX)
Address _1601 Hammer Room_ _626, 913-6466 (FAX)_
Phone/Fax/E-mail _626 - 965-4433 x1260)_
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published by the
California Association of REALTORS®

Reviewed by _____ Date _____

commercial

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 10)

**EXHIBIT E**

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer CLI | Initials |
|---|---|---|---|---|---|---|---|
| $429,000.00 | 08-20-2001 | 09-01-2008 | | | | | X |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Ocean Development America, Inc
13453 Brooks Drive, Unit A
City of Baldwin Park, CA 91706

**Lender:**  Far East National Bank
105 E. Valley Boulevard
Alhambra, CA 91801

THIS BUSINESS LOAN AGREEMENT dated August 20, 2001, is made and executed between Ocean Development America, Inc ("Borrower") and Far East National Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of August 20, 2001, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until September 1, 2008.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require. 

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists: 

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 13453 Brooks Drive, Unit A, City of Baldwin Park, CA 91706. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of Borrower's articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used, or filed a financing statement under, any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of Borrower's Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; (3)

**EXHIBIT F**

08/16/2004   14:08   FENB NOTE DEPARTMENT → 16269135186

To: Michael

# RUSH

FAR EAST NATIONAL BANK
NORTH BROADWAY, SUITE #403
LOS ANGELES, CA. 90012
TEL: (213) 687-1333
FAX: (213) 626-0992

**UPDATED**
**PAYOFF DEMAND STATEMENT**

August 26, 2004

Investors Title Co.
101 E. Glenoaks Blvd.
Glendale, CA 91207
Attn: Charlie Vallono

Escrow # 2021383-RT
Instrument # 01-2218994

Title Order # 14024911
Loan # 649-43190/41207
Loan Name: Ocean Development America, Inc.
Property Address: 13053 Brooks Drive, Unit A, City of Baldwin Park, CA 91706

You are required to remit the following amount to our bank to payoff the above-mentioned loan:

| | |
|---|---|
| Principal balance | $409,944.61 |
| Interest from 8/1/04 To 6/16/04 | $1,345.13 |
| Breakage fee as of 8/16/04 | $19,408.84 |
| Forwarding and reconveyance fees | $45.00 |
| Demand fee (including $10.00 update fee) | $40.00 |
| TOTAL AMOUNT DUE | $430,783.58 |

For each day after 8/16/04, additional interest in the amount of $89.68 per day is required to be added to the interest of the loan until payment is received by this office on a regular banking day before noon. Payments received after 12:00 p.m. will be posted for the following business day. Interest will continue to accrue until the payoff is processed. Funds must be in the form of Cashiers or Certified Check and payable to Far East National Bank. FOR PAYMENT EXCEEDING $100,000.00, PLEASE REMIT FUNDS BY FEDWIRE AND CREDIT TO OUR ABA #1220-3410-3 AND THE ABOVE MENTIONED LOAN NUMBER.

We provide verbal update demand, please contact Janet Lam at 213-687-1336 to confirm the payoff figure before funding. Each written update demand requires additional charge of $10.00.

Upon receipt of the payoff funds, FENB will not forward the original documents to you, FENB will forward the original Note and Deed of Trust to the appointed agent T.D. Service to issue the Substitution of Trustee and Deed of Reconveyance or Full Reconveyance and send for recording. Payoff statement will be held on file for 30 days. If there is no activity during the 30-day period, the statement will be cancelled and a new written request is required.

c.c. Central Escrow, Inc. (Attn: Robin Tu)
1661 Hanover Road, Suite 201
City of Industry, CA 91748
(Via fax #626-913-5186)

Prepared by: _____   Title: Helen Lau, Note Dept.

_____   Title: Xin Qiao, Relationship Manager

Verified by: _____

Authorized by: _____   Title: Lynn Wu, Asst. Operations Officer

READ AND APPROVED

_____ NATIONAL BANK

**EXHIBIT G**

Recording Requested By:
**T.D. SERVICE COMPANY**

And When Recorded Mail To:
**OCEAN DEVELOPMENT
13453-A BROOKS DR
BALDWIN PARK, CA 91706-2299**

**04  2365643**

_____ Space above for Recorder's use _____

Customer#: 600   Service#: 2750212RL1   ‖║‖║‖ ║‖║ ║‖║‖ ║‖║ ║‖║ ║‖║║ ‖║║ ║‖ ║‖║‖ +

Loan#: 649-43190/41207

## FULL RECONVEYANCE

**FAR EAST NATIONAL BANK BY T.D. SERVICE COMPANY AS AGENT FOR THE TRUSTEE**, as Trustee, or Successor Trustee, Or Substituted Trustee, under Deed of Trust dated AUGUST 20, 2001, made by OCEAN DEVELOPMENT AMERICA, INC., Trustor and recorded as Instrument No. 01 2218394 on NOVEMBER 21, 2001, in Book No. —, at Page No. —, of Official Records of the County of LOS ANGELES, State of CALIFORNIA.

Having received from the holder of the obligations on the property described in said Deed of Trust, a written request to reconvey, do hereby reconvey without warranty, to the person or persons legally entitled thereto, the estate held thereunder.

Dated: SEPTEMBER 08, 2004
**FAR EAST NATIONAL BANK BY T.D. SERVICE COMPANY AS AGENT FOR THE TRUSTEE**

By: _____

M. Hess, Assistant Secretary

State of   **CALIFORNIA**                     }
County of  **ORANGE**                         } ss.

On SEPTEMBER 08, 2004 , before me, Brenda Cortez, personally appeared  M. Hess, Assistant Secretary personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
(Notary Name): Brenda Cortez



BRENDA CORTEZ
COMM. # 1459657
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires Jan. 1, 2008

This page is part of your document - DO NOT DISCARD

04 2365643

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
3:41 PM SEP 14 2004

**TITLE(S) :**


L E A D    S H E E T

FEE                                                      D.T.T

| FEE S7 | R |
|--------|---|
| DAF S2 |   |

CODE
20

CODE
19

CODE
9____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          Number of AIN's Shown


THIS FORM NOT TO BE DUPLICATED

**EXHIBIT H**



中興儲蓄銀行

**STANDARD SAVINGS BANK, fsb**    228 West Garvey Ave., Monterey Park, CA 91754 • 626-280-1688

## LOAN COMMITMENT

Date: _____08/06/04_____

Application No. ____10783-AL____

- O HONGMING LI
- O XIAOMIN ZHANG
- O 206 LINWOOD AVE., #2,
- O MONROVIA, CA 91016

Property Address
- O
- O
- O 13453 BROOKS DR., #A
- O BALDWIN PARK, CA 91706

Dear BORROWERS,

We are pleased to inform you that your application for a loan on the above referenced property has been approved upon the following terms:

| Loan Purpose | ☒ Pur | ☐ Ref | ☐ Other _____ |
|---|---|---|---|

| Property Type | ☐ SFD | ☐ Condo | ☐ 2-4 Units |
|---|---|---|---|
| | ☐ 5 or more | ☒ Comm'l | ☐ Other |

Fixed Rate ☐                              Adjustable Rate ☒ CURRENT PRIME RATE: 4.250%

Loan Amount          $364,000.00         Margin:        4.250% 0.750%
Interest Rate:       5.000% (PRIME + 0.750%)   Adj. Period:   EVERY MONTH
Loan Fee:            1.000%               Rate Cap/      FLOOR RATE: 5.000%
Term:                25/7 YRS DUE         Pmt. Cap:      N/A
Mo. P & I:                                Life Cap:      7.000%
                                          CEILING RATE: 12.000%

Minimum Cash Downpayment        $    158,000.00  _____

Prepayment Penalty              ☐ YES   ☒ NO

**BORROWER COPY**

Loan Approval is made subject to:

1) ESCROW AMT: L/R/T, VESTING, FINAL FUNDS RECEIPT   2) EVIDENCE OF INSURANCE
3) CERTIFIED G/D EXECUTED BY SELLER    4) TITLE SUPP.; PROPERTY TYPE
5) SEC# 4506    6) LEASE AGREEMENT W/OCEAN DEVELOPMENT AMERICA, INC.
7) AKA STATEMENT: MICHAEL LI    9) ENVIRONMENTAL ENDORSEMENT
10) EXPLAIN CHARGE OFF W/NATIONWIDE RECOVERY

This commitment will expire on_____08/13/_____, 20 04_____.

Please note that you must return the original signed copy of this commitment letter to the bank within 5 working days before we can continue to process your loan.

ACCEPTANCE:                              STANDARD SAVINGS BANK, fsb

BORROWER   HONGMING LI                   BY _____
                                              AMY LO

BORROWER   XIAOMIN ZHANG                 TITLE ___A.V.P. LOAN OFFICER___

DATE

**EXHIBIT I**

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $364,000.00 | 08-06-2004 | 09-01-2011 | 23710474-1 | | | 137A | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HONGMING LI
XIAOMIN ZHANG
216 LINWOOD AVENUE #3
MONROVIA, CA 91016

**Lender:** STANDARD BANK
228 West Garvey Avenue
Monterey Park, CA 91754

**LOAN TYPE.** This is a Variable Rate Nondisclosable Loan to 2 Individuals for $364,000.00 due on September 1, 2011. The reference rate (Bank of America Prime Rate, with an interest rate floor of 5.000%, and with an interest rate ceiling of 12.000%, currently 4.250%) is added to the margin of 0.750%, then rounded to the nearest 0.125 percent, resulting in an initial rate of 5.000.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ **Personal, Family, or Household Purposes or Personal Investment.**

☒ **Business (Including Real Estate Investment).**

**SPECIFIC PURPOSE.** The specific purpose of this loan is: TO PURCHASE A REAL PROPERTY LOCATED AT13453 BROOKS DRIVE #A, BALDWIN PARK, CA 91706.

**FLOOD INSURANCE.** As reflected on Flood Map No. 0601000001N dated 05-26-1978, for the community of BALDWIN PARK, the property that will secure the loan is not located in an area that has been identified by the Director of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance is required by law for this loan.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $364,000.00 as follows:

| | |
|---|---|
| **Amount paid to others on Borrower's behalf:**<br>$358,639.44 to Investors Title Company (est.) | $358,639.44 |
| **Other Disbursements:**<br>$5,360.56 Total Closing Cost (est.) | $5,360.56 |
| **Note Principal:** | $364,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| **Prepaid Finance Charges Paid in Cash:**<br>$65.00 Tax Service to Fidelity Nat'l Tax Services<br>$24.50 Flood Certificate to Trans Union (p.o.c.)<br>$350.00 Processing Fee to Standard Bank<br>$3,640.00 Loan Origination Fee to Standard Bank<br>$300.00 Environmental Report to REM (p.o.c.)<br>$960.56 Prepaid Interest | $5,340.06 |
| **Other Charges Paid in Cash:**<br>$2,000.00 Appraisal Fee to Denny Shen (p.o.c.)<br>$90.00 Credit Reports to FMCS (paid $45.00)<br>$300.00 Document Fee to Standard Bank | $2,390.00 |
| **Total Charges Paid in Cash:** | $7,730.06 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED AUGUST 6, 2004.

**BORROWER:**

X COPY
HONGMING LI

X COPY
XIAOMIN ZHANG

LASER PRO Lending, Ver. 5.24.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - CA C:\HARLAND\CFI\LPL\I20.FC TR-159 PR-15

**EXHIBIT J**



**PRELIMINARY REPORT**

<u>Branch:</u>
101 E. Glenoaks Blvd.
Glendale, CA 91207
(818) 476-4000
Fax (818) 500-9307

<u>Title Officer: Charlie Vollono - 09/pl</u>
**ORDER NO. 14024911-321- CV2**

**Ref. No: 2021383-RT**

**CENTRAL ESCROW**
**1661 HANOVER RD #201**
**CITY OF INDUSTRY, CA 91748**   &middot;
**Attn.: Robin Tu**

**Property Address:**
**13453 Brooks Drive #A**
**Baldwin Park, CA**
APN: **8535-024-003**

In response to the above referenced application for a policy of title insurance, this Company reports that it is prepared to issue, or cause to be issued. as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy Forms. The printed Exceptions and Exclusions from the coverage of said Policy or Policies are set forth in Exhibit B attached.

**Please read the exceptions shown or referred to below and the Exceptions and Exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.** This report (and any supplements hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The form of policy of title insurance contemplated by this report is:

## CLTA Owner's, ALTA Lender's issued by First American Title Insurance Company

Dated as of **June 22, 2004** at 7:30 a.m.

The estate or interest in the land hereinafter described or referred to covered by this Report is:

## A condominium in fee, as defined in section 783 of the California civil code.

Title to said estate or interest at the date hereof is vested in:

## OCEAN DEVELOPMENT AMERICA, INC., a California corporation

The land referred to in this Report is situated in the State of California, County of **Los Angeles** and is described as follows:
(See "Legal Description" Exhibit A attached)

Page No. 2
File No. 14024911

At the date hereof exceptions to coverage in addition to the printed exceptions and Exclusions contained in said policy would be as follows:

1.    General and special taxes for the fiscal year 2004-2005, a lien not yet due or payable.

1a.   Taxes for proration for the fiscal year 2003-2004.

        First half:           $4,417.08, paid.
        Second half:          $4,417.07, paid.
        Code area:            0012351.
        A. P. No.:            8535-024-003

1b.   An assessment in the original amount of $ (NOT SHOWN), filed in the Office of the Treasurer of THE CITY OF BALDWIN PARK.

        SERIES No.:           86-1
        Issued:               JANUARY 1, 1986
        For:                  AD 86-1A LITTLEJOHN

1c.   The lien of supplemental taxes, if any, assessed pursuant to chapter 3.5 commencing with section 75 of the California revenue and taxation code.

1d.   Assessments, for community facility districts, if any, affecting said land which may exist by virtue of assessment maps or notices filed by said districts.

2.    Water rights, claims or title to water, whether or not shown by the public records.

3.    Covenants, conditions and restrictions in the document recorded AUGUST 4, 1988 AS INSTRUMENT NO. 88-1226754 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, to the extent such covenants, conditions or restrictions violate title 42, section 3604(c), of the united states codes.

4.    Covenants, conditions and restrictions in the document recorded AUGUST 8, 1989 AS INSTRUMENT NO. 89-1270186 of Official Records, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, to the extent such covenants, conditions or restrictions violate title 42, section 3604(c), of the United States codes.

5.    Provisions, herein recited, of the dedication statement on the

      Map of:            PARCEL MAP NO. 1228
      Provisions:        AS FOLLOWS:

      PARCEL 5 IS A PRIVATE DRIVEWAY, FIRE LANE, RECIPROCAL INGRESS AND
      EGRESS, DRAINAGE AND UTILITY EASEMENT FOR THE BENEFIT OF PARCELS 1
      TO 4, INCLUSIVE.

      PARCELS 1 AND 6 MUST BE CONVEYED AS ONE UNIT AND CANNOT BE
      SEPARATED WITHOUT FURTHER ACTION OF THE ADVISORY AGENCIES.

      PARCELS 3 AND 7 MUST BE CONVEYED AS ONE UNIT AND CANNOT BE
      SEPARATED WITHOUT FURTHER ACTION OF THE ADVISORY AGENCIES.

      PARCELS 4 AND 8 MUST BE CONVEYED AS ONE UNIT AND CANNOT BE
      SEPARATED WITHOUT FURTHER ACTION OF THE ADVISORY AGENCIES.

6.    An easement for public utilities and incidental purposes, recorded DECEMBER 12, 1990 AS
      INSTRUMENT NO. 90-2054444 of Official Records.

      Affects:            PARCELS 1 TO 5 INCLUSIVE OF PARCEL MAP 1228

7.    Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and
      provisions in the document recorded MARCH 22, 1991 AS INSTRUMENT NO. 91-408193 of
      Official Records, which provide that a violation thereof shall not defeat or render invalid the
      lien of any first mortgage or deed of trust made in good faith and for value, but deleting any
      covenant, condition or restriction indicating a preference, limitation or discrimination based on
      race, color, religion, sex, handicap, familial status, or national origin, to the extent such
      covenants, conditions or restrictions violate title 42, section 3604(c), of the United States
      codes.

      A document declaring modifications thereof recorded APRIL 25, 1991 AS INSTRUMENT
      NO. 91-592945 of Official Records.

8.    An easement or lesser right, as disclosed by an inspection.

      For:                SEWER MANHOLES AND EDISON VAULTS, and incidental purposes.
      Affects:            SAID LAND.



A deed of trust to secure an original indebtedness of $429,000.00, and any other amounts or obligations secured thereby, recorded NOVEMBER 21, 2001 as instrument no. 01-2218394 of Official Records.

Loan no.:        (NOT SHOWN)
Dated:           AUGUST 20, 2001
Trustor:         OCEAN DEVELOPMENT AMERICA, INC.
Trustee:         STEWART TITLE OF CALIFORNIA, INC.
Beneficiary:     FAR EAST NATIONAL BANK

An assignment of RENTS recorded NOVEMBER 21, 2001 as instrument no. 01-2218395 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust recorded NOVEMBER 21, 2001 as instrument no. 01-2218394 of Official Records.



A deed of trust to secure an original indebtedness of $300,000.00, and any other amounts or obligations secured thereby, recorded NOVEMBER 21, 2001 as instrument no. 01-2218400 of Official Records.

Loan no.:        (NOT SHOWN)
Dated:           AUGUST 24, 2001
Trustor:         OCEAN DEVELOPMENT AMERICA, INC.,
Trustee:         STEWART TITLE OF CALIFORNIA, INC.
Beneficiary:     FAR EAST NATIONAL BANK

An assignment of RENTS recorded NOVEMBER 21, 2001 as instrument no. 01-2218401 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust recorded NOVEMBER 21, 2001 as instrument no. 01-2218400 of Official Records.

Note: in connection therewith, the following:

| | |
|---|---|
| Document entitled: | SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE |
| Dated: | APRIL 18, 2003 |
| Executed in the Name of: | FAR EAST NATIONAL BANK (MIMI YANG, FVP), SUCCESSOR TRUSTEE AND JENNY CHEN, OPERATIONS OFFICER, BENEFICIARY |
| Recorded: | MAY 5, 2003 AS INSTRUMENT NO. 03-1266338, OFFICIAL RECORDS |
| Returned to address: | OCEAN DEVELOPMENT, INC. 13453 BROOKS DR, UNIT A BALDWIN PARK, CA 91706 |

Upon receipt of evidence satisfactory to this company that the indebtedness and/or obligations secured by said deed of trust have been satisfied, we will supplement our report accordingly.

A lien for unsecured property taxes, evidenced by a certificate recorded by the tax collector of Los Angeles county, recorded AUGUST 19, 1996 as instrument no. 96-1333420 of Official Records.

| | |
|---|---|
| Debtor: | "ONE" OCEAN DEVELOPMENT AMERICA, LESSEE |
| Year & no.: | 95/49127836 |
| Amount: | $91.34, and any other amounts due thereunder. |

12.   Rights of parties in possession of said land by reason of any unrecorded leases.

Please submit any such leases to this company for our examination.