UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
      :
BANK OF COMMUNICATIONS     :
      :
     Plaintiff,     :   07 Civ. 4628 (TPG)
      :
   v.     :   **OPINION**
      :
OCEAN DEVELOPMENT AMERICAN,     :
INC., ET AL.,     :
      :
     Defendants.     :
      :
------------------------------------------------x

     Plaintiff Bank of Communications, New York Branch ("BOC"), brings this diversity action against defendants Ocean Development America, Inc. ("Ocean"), its former president Xiaomin Zhang ("Zhang"), an erstwhile Ocean employee Hongming Li ("Li"), and Zhang's husband. Plaintiff alleges that Ocean, through Zhang, fraudulently transferred corporate real estate to Zhang and Li as joint tenants to evade Ocean's creditors. Plaintiff seeks to unwind this transaction so that it may use the corporate property to satisfy unpaid judgments entered against Ocean.

     Plaintiff now moves for summary judgment on all of its claims. The motion is denied.

**Facts**

The following facts are not in dispute unless otherwise stated.

Ocean, a California corporation, is wholly owned by a Chinese entity, Shantou Ocean Enterprises (Group) Company ("Shantou").[1] Shantou manufactures and sells components for cassette tapes, which components Ocean distributed in America until it ceased to operate in 2004.

Ocean's struggles began in the first years of the 21st century as demand for its products weakened along with the economy. To stay afloat, Ocean borrowed nearly three million dollars from the Bank of China and refinanced the mortgage on its headquarters with Far East National Bank. In addition, on May 1, 2001, Ocean borrowed $5.5 million from BOC.

The proceeds from the BOC loan were routed to Shantou. This situation created serious cash-flow problems for Ocean, which was already strained by high debts and poor sales. Shortly thereafter, in November 2001, Ocean defaulted on the BOC loan.

In August 2003, BOC sued Ocean in New York Supreme Court to collect the unpaid balance on the loan. After engaging in preliminary settlement discussions,[2] Ocean stopped participating in the case. Consequently, on August 14, 2006, a default judgment was entered against Ocean in the amount of $4,874,210.58.

BOC then attempted to execute on Ocean's only remaining corporate asset, an office building and warehouse located at 13542-A Brooks Drive in

---

[1] Prior to 1991, the company was called Shantou Ocean Audio-Video General Corporation.
[2] Individual defendant Li sent the settlement letters.

2

Baldwin Park, California. But BOC soon discovered that the property had been conveyed to Zhang and Li in the summer of 2004 for the sum of $520,000. Plaintiff claims that the sale was conducted to put the property beyond the reach of BOC. The individual defendants, for their part, claim that Shantou decided to sell the Baldwin property due to the possibility of imminent foreclosure on it by Far East National Bank. The individual defendants have submitted a Payoff Demand Statement from Far East National Bank.

A real estate agent marketed the property for roughly two weeks, during which time two potential buyers expressed interest but were unable to arrange financing. The individual defendants claim that after learning that the sale could take up to six months, they decided to buy the property themselves in an attempt to keep Ocean alive as a going concern, if only temporarily.

The parties hotly dispute the value of the property as of the sale date. Plaintiff relies on an accountant's annual report from 2001 that valued Ocean's corporate real estate at $1,716,363.00. The individual defendants contend that this figure combined the value of three different parcels, two of which Ocean sold prior to 2004. They argue that the value of the Baldwin Park property alone was much lower. Indeed, the property was appraised at $560,000 just before its sale in 2004. The individual defendants then note that the discount to $520,000 reflected the fact that Ocean was able to avoid a 6.6% broker's fee ($36,960) by selling to Zhang and Li.

In any event, it is undisputed that Ocean had already disbursed the proceeds from the sale by the time BOC learned of the transaction. Most of the

3

money—$430,873.26—went to the mortgagee on the property, Far East National Bank. After paying miscellaneous transaction costs associated with the sale, Ocean was left with $78,442.96. The individual defendants claim that this residue was then distributed to employees whose salaries had not been fully paid in Ocean's lean years.[3] Thereafter, Ocean essentially ceased to exist.

On May 21, 2007, plaintiff filed the instant action against Ocean and the buyers of the corporate property, Zhang and Li. Defendants neglected to answer the complaint or otherwise appear in the case, so a default judgment was entered against them in the sum of $4,874,210.58 plus costs and interest from the date of the state court judgment. Thereafter, the individual defendants moved to vacate the default judgment against them. On March 4, 2009, after the individual defendants paid plaintiff $5,000 in sanctions for their dilatory conduct, this court vacated the default judgment.

The individual defendants then moved to dismiss the complaint. This court denied the motion on March 8, 2010. Thereafter, the individual defendants answered the complaint, and the parties began to engage in discovery. Plaintiff filed the instant motion for summary judgment on March 9, 2012.

### Plaintiff's Claims

Plaintiff asserts two claims in this action, only the second of which is germane to the instant motion. That claim alleges that Ocean's sale of the Baldwin Park property to the individual defendants was a fraudulent transfer

---

[3] The individual defendants have not itemized these payouts or specifically named the employees who allegedly received payouts.

4

in three respects. First, the transfer allegedly violated N.Y. Debt. & Cred. Law § 273, because the property was conveyed without fair consideration, and the transaction rendered Ocean insolvent. Second, the transfer allegedly violated N.Y. Debt. & Cred. Law § 273-a, because the property was conveyed without fair consideration during the pendency of an action for money damages against the seller. Third, the transfer allegedly violated N.Y. Debt. & Cred. Law § 276, because the property was conveyed with actual intent to hinder, delay, or defraud Ocean's creditors. Lastly, plaintiff seeks attorney's fees pursuant to N.Y. Debt. & Cred. Law § 276-a, which provides for such fees when a creditor succeeds in an action brought under § 276.

## Discussion

### Standard

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant has the burden of showing that no genuine factual dispute exists. Id. However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. Id. at 249.

5

Sections 273 and 273-a

N.Y. Debt. & Cred. Law § 273 states that every "conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."[4] Section 273-a states that every "conveyance made without fair consideration when the person making it is a defendant in an action for money damages...is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

In this case, it is undisputed that BOC was Ocean's creditor before the transfer at issue. It is also clear beyond question that a conveyance between Ocean and the individual defendants occurred when Ocean was insolvent. The individual defendants argue that material issues of fact exist on the question of insolvency, but the facts establish that Ocean had a veritable mountain of debt, much of it in default, and next to no assets after the sale. It is also a fact that the transaction occurred during the pendency of an action for money damages brought by BOC against Ocean and that a default judgment, as yet unsatisfied, was entered against Ocean in that action. Hence plaintiff's claims under Sections 273 and 273-a hinge entirely on whether Ocean received "fair consideration" in return for the Baldwin Park property.

---

[4] New York code elsewhere states that "a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271.

6

N.Y. Debt. & Cred. Law § 272 defines "fair consideration" for purposes of Section 273 and 273-a. It provides that:

Fair consideration is given for property, or obligation,

    a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

    b. When such property, or obligation, is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

To restate, fair consideration is given when 1) the recipient of the debtor's property either conveys property in exchange or discharges an antecedent debt; 2) the debtor receives the "fair equivalent" of the property conveyed; and 3) the exchange is undertaken in good faith. See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 53-54 (2d Cir. 2005).

Some question exists as to whether $520,000 was the fair price for the Baldwin Park Property, although it appears likely that the property was worth something closer to defendant's $560,000 figure than plaintiff's figure, which was drawn from an ambiguous accounting report that predated the transaction in question by more than three years.

However, "'fair consideration' requires not merely that the value of the consideration be roughly equivalent to the property in issue but also that there be good faith on the part of the parties involved in that conveyance." United States v. McCombs, 30 F.3d 310, 326 n.1 (2d Cir. 1994). Indeed, "the good faith of both transferor and transferee is…an indispensable condition in the definition of fair consideration…." Julien J. Studley, Inc. v. Lefrak, 412

7

N.Y.S.2d 901, 905 (2d Dep't 1979). Thus plaintiff can prevail on summary judgment if the parties to the transaction did not act in good faith—even if $520,000 was a fair price for the Baldwin Park property,

Good faith can be shown by "(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." Southern Indus. v. Jeremias, 411 N.Y.S.2d 945 (2d Dep't 1978). Moreover, "mere preference between creditors does not constitute bad faith...." Sharp, 403 F.3d at 54. "Nor does it matter that the preferred creditor knows that the debtor is insolvent." Id. "Nor is the transfer subject to attack by reason of knowledge on the part of the transferee that the transferor is preferring him to other creditors, even by virtue of a secret agreement to that effect." Id. at 54-55. All told, the question of whether a person has acted in good faith is a question of fact dependent on the circumstances of each particular case. See Atlantic Bank of New York v. Toscanini, 536 N.Y.S.2d 132, 133 (2d Dep't 1988).

Nonetheless, certain circumstances have been held to constitute bad faith as a matter of law. Most notably, "preferential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good faith requirement of the Debtor and Creditor Law." Farm Stores, Inc. v. School Feeding Corp., 477 N.Y.S. 2d 374, 378 (2d Dept. 1984), aff'd, 489 N.Y.S.2d 877.

Plaintiff argues that this rule applies to any transaction between an

8

insolvent corporation and a corporate insider. But this is too broad a reading of the case law. To be fair, certain cases contain language that appears to support plaintiff's position. See Hirsch v. Gersten (In re Centennial Textiles), 220 B.R. 165, 172 (Bankr. S.D.N.Y. 1998) ("under New York law, transfers from an insolvent corporation to an officer, director or major shareholder of that corporation are per se violative of the good faith requirement of DCL § 272 and the fact that the transfer may have been made for a fair equivalent is irrelevant."); Allen Morris Commercial Real Estate Servs. Co. v. Numismatic Collectors Guild, Inc., No. 90 Civ. 264, 1993 U.S. Dist. LEXIS 7052, at *28-30 (S.D.N.Y. May 26, 1993) ("it has been held that transfers from an insolvent corporation to an officer, director and major shareholder of that corporation are per se violative of the good faith requirement of Section 272."). These cases, however, concern payments to corporate insiders in exchange for the discharge of antecedent debts or for services previously rendered. Such payments clearly work a wrong on general creditors, because the corporation receives nothing of present value with which to satisfy its other debts. It follows that the Farm Stores rule does not apply where a corporate insider purchases an asset from an insolvent company at a fair price, because in this situation the creditors can be repaid from the proceeds of the transaction. See HBE Leasing Corp. v. Frank, 48 F.3d 623, 634-635 (2d Cir. 1995). Here, Ocean received over half a million dollars from Li and Zhang, most of which it promptly distributed to one of its many creditors. As such, the court cannot invalidate the transaction as a matter of law under Farm Stores.

9

Thus plaintiff can only prevail on summary judgment if the circumstances of the transfer otherwise suggest that the parties acted in bad faith. The factual record demonstrates that the individual defendants knew about the state court action against Ocean as well as the company's precarious financial condition. However, such evidence cannot alone prove that defendants acted in bad faith. See Miller v. Forge Mench P'ship, No. 00 Civ. 4314, 2005 U.S. Dist. LEXIS 1524, 18-19 (S.D.N.Y. 2005). Furthermore, countervailing evidence suggests that the individual defendants may have had a legitimate reason for conveying the Baldwin Park property to themselves. From the Payment Demand Statement from Far East National Bank, Zhang's deposition testimony, and the documentary history of the transaction, there is an argument that the individual defendants bought the Baldwin Park property to avoid foreclosure and buy Ocean more time to turn around its business. There are questions of fact on the question of good faith. Thus, the court denies plaintiff's motion for summary judgment with respect to plaintiff claims under N.Y. Debt. & Cred. Law §§ 273 and 273-a.

Section 276

N.Y. Debt. & Cred. Law § 276 provides that every "conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Unlike Sections 273 and 273-a, Section 276 creates a cause of action "even where fair consideration was paid and where the debtor remains solvent." Grumman Aerospace Corp. v.

10

Rice, 605 N.Y.S.2d 305 (2d Dep't 1993).

The key element to a claim under Section 276 is a transferor's "actual intent...to hinder, delay or defraud" creditors. But "fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established from the circumstances surrounding the allegedly fraudulent act." Marine Midland Bank v. Murkoff, 508 N.Y.S.2d 17, 21 (2d Dep't 1986). Thus creditors may rely on badges of fraud to establish an inference of fraudulent intent. Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011). Badges of fraud include:

> (1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control of property by the transferor after the conveyance.

MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 935 (S.D.N.Y. 1995).

Some of these factors are present in this case. There was certainly a close relationship between the parties—a corporation and its then-president. In addition, the transaction was concluded quite quickly and in unusual circumstances in the summer of 2004, and the parties to the transaction undoubtedly knew of Ocean's debt to BOC, the state court action, and Ocean's inability to pay either that debt or any resulting judgment. Lastly, given the fact that the individual defendants wanted Ocean to remain in business, they must have intended for the company to continue operating from the building.

On the other hand, the individual defendants arguably paid a fair price

11

for the property, the property was publically available for sale for some stretch of time, and no dummy parties were involved in the eventual sale. Furthermore, the haste of the transaction and its unusual nature can arguably be explained by Ocean's legitimate desire to avoid foreclosure on the Baldwin Park property. In short, some of the preceding factors support an inference of fraud, and others do not. This inconclusive state of affairs calls for a trial. Thus there are issues of fact, which prevent summary judgment on the claim.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied in its entirety.

This opinion will resolve docket item number 72.

So ordered.

Dated: New York, New York
November 8, 2012

Thomas P. Griesa
U.S. District Judge